UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

THE SATANIC TEMPLE

    Plaintiff

v.

ERIC HOLCOMB, in his capacity as
the Governor of Indiana; and
TODD ROKITA, in his
capacity as the Attorney General of
Indiana

    Defendants

Case No. 1:22-cv-1859

# COMPLAINT

Plaintiff The Satanic Temple ("TST") alleges as follows:

## Parties

1. TST is a religious association with its principal place of business in Salem, Massachusetts.

2. TST has over 1.5 million members worldwide, including over 11,300 members in Indiana.

3. TST venerates, but does not worship, the allegorical Satan described in the epic poem Paradise Lost - the defender of personal sovereignty against the dictates of religious authority.

4. Members in TST adhere to seven tenets (the "TST Tenets") commonly associated with secular humanism:

    A. Tenet I - One should strive to act with compassion and empathy toward all

creatures in accordance with reason.

B. Tenet II - The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions.

C. Tenet III - One's body is inviolable, subject to one's own will alone.

D. Tenet IV - The freedoms of others should be respected, including the freedom to offend. To encroach upon the freedoms of another willfully and unjustly is to forgo one's own.

E. Tenet V - Beliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs.

F. Tenet VI - People are fallible. If one makes a mistake, one should do one's best to rectify it and resolve any harm that might have been caused.

G. Tenet VII - Every tenet is a guiding principle designed to inspire nobility in action and thought. The spirit of compassion, wisdom, and justice should always prevail over the written or spoken word.

5. TST brings this action as the representative of female TST members residing in Indiana who are involuntarily pregnant ("Involuntarily Pregnant Women").

6. The TST members wish to remain anonymous due to the risk of violent retribution from domestic terrorists motivated by animosity to proponents of abortion and non-Christian religious beliefs.

7. An Involuntarily Pregnant Woman is a woman who:

  A. Is pregnant with an "unborn child" as that term is used in Indiana Code § 16-18-2-128.7; and

  B. The "unborn child" is not "viable" as that term is used in the Indiana Code; and

      C. Became pregnant without her consent due to:

          i. The legal inability to consent to sex (other than rape or incest); and/or

          ii. The failure of her Birth Control, as hereinafter defined.

8. Consistent with TST Tenets III and V, all of the Involuntarily Pregnant Women who are TST members believe the fetal tissue they carry in their uterus – from conception until viability - is part of their body and not imbued with any humanity or existence separate and apart from that of the Involuntarily Pregnant Woman herself.

9. Consistent with the TST Tenets III and V, none of the Involuntarily Pregnant Women who are TST members wants to carry an "unborn child" as that term is used in Indiana Code § 16-18-2-128.7 in her uterus and believes she should abort that "unborn child" if given the opportunity to do so safely and legally.

10. Pregnant TST members can and do get abortions, where they are legal, to terminate an unwanted pregnancy as an exercise of their religious beliefs pursuant to the Satanic Abortion Ritual, a copy of which is attached as Exhibit A.

11. Pregnant TST members in Indiana could and did get abortions pursuant to the Satanic Abortion Ritual prior to September 15, 2022.

12. The Satanic Abortion Ritual includes meditation on and recitation of Tenet III and Tenet V.

13. Involuntarily Pregnant Women are unable to engage in the Satanic Abortion Ritual due to the criminalization of abortions in Indiana pursuant to Indiana Code § 16-34-2-7(a) (the "Indiana Abortion Ban")

14. The Indiana Abortion Ban makes the act of aborting an unborn child a crime except in cases of serious health risk to the mother, to protect the life of the mother, a lethal fetal

anomaly or the pregnancy is the result of rape or incest.  Indiana Code § 16-34-2-1.  An unborn child who cannot be lawfully aborted is referred to herein as a Protected Unborn Child.

15. Defendant Eric Holcomb is the Governor of Indiana and responsible for enforcing the Indiana Abortion Ban.  Governor Holcomb is sued in his official capacity as Governor.

16. Defendant Todd Rokita is the Attorney General of Indiana and responsible for enforcing the Indiana Abortion Ban.  Attorney General Rokita is sued in his official capacity as Attorney General.

17. Defendants act under color of state law in violation of 42 U.S.C. § 1983 when they enforce the Indiana Abortion Ban against TST members who are Involuntarily Pregnant Women in deprivation of their rights under the U.S. Constitution.

## Jurisdiction and Venue

18. Count One seeks injunctive relief pursuant to 42 U.S.C. § 1983 for violations of the takings clause of the Fifth Amendment as applied to Indiana pursuant to the Fourteenth Amendment.

19. Count Two seeks injunctive relief pursuant to the Thirteenth Amendment prohibition of involuntary servitude, which is self-executing on the states.

20. Count Three seeks injunctive relief pursuant to 42 U.S.C. § 1983 for violations of the equal protection clause of the Fourteenth Amendment due to discrimination between women who get pregnant by accident and women who report they are pregnant by rape or incest.

21. Count Four seeks injunctive relief pursuant to 42 U.S.C. § 1983 for violations of the equal protection clause of the Fourteenth Amendment due to discrimination between women who get pregnant by having sex and women who get pregnant by in vitro fertilization.

22. The Court has jurisdiction to decide Counts One, Two, Three and Four pursuant to 28

USC § 1331 because the resolution of Plaintiff's claims presents questions of federal law.

23. Count Five seeks injunctive relief pursuant to Indiana Code § 34-13-9-1 et seq. (the "Religious Freedom Restoration Act" or "RFRA") for violation of the right of TST members in Indiana to partake in the Satanic Abortion Ritual.

24. The Court has jurisdiction to decide Count Five pursuant to 28 U.S.C. § 1367 because the claims made in Count Five are so related to claims made in Counts One, Two, Three and Four that they form part of the same case or controversy under Article III of the U.S. Constitution.

## Zygotes and Blastocysts

25. The most common method for creating an "unborn child," as that term is used in the Indiana Abortion Ban, starts with the deposit of a man's sperm inside a woman's vagina during the course of sex.

26. Once the man's sperm is deposited in the woman's vagina, it travels through her uterus and into her fallopian tubes where it may encounter an egg produced by her ovaries.

27. When a single sperm fuses with or fertilizes the woman's egg, the resulting cell is known as a zygote. The fertilization process takes about 24 hours and typically occurs about two (2) weeks after the end of the woman's last menstrual cycle. The end of the menstrual cycle prior to fertilization is the starting point for measuring the course of a pregnancy commonly known as the estimated gestational age ("EGA").

28. The zygote contains all of the genetic information (DNA) needed to become an adult human being. Half of the genetic information comes from the mother's egg and half from the father's sperm.

29. The zygote is an "unborn child" as that term is used in the Indiana Abortion Ban.

30. None of the Involuntarily Pregnant Women was aware of or consented to the creation of a zygote in her fallopian tubes at the time of fertilization.

31. After its creation, a zygote travels down the fallopian tube and divides to form a ball of cells known as a blastocyst.

32. A blastocyst is an "unborn child" as that term is used in the Indiana Abortion Ban.

33. The blastocyst reaches the uterus around five days after fertilization or three (3) weeks EGA. During this period, the blastocyst occupies empty space inside the fallopian tube or uterus.

34. Between six (6) and eleven (11) days after fertilization or three (3) to four (4) weeks EGA, the blastocyst implants into and occupies a layer of tissue in the uterus commonly known as the endometrium.

35. None of the Involuntarily Pregnant Women was aware of or consented to the implantation of a blastocyst into her uterus at the time it occurred.

36. Prior to implantation in the endometrium, the zygote and blastocyst derive nutrients from the woman's egg.

37. Once a blastocyst is implanted into and occupies the endometrium, it forms the cells necessary for a placenta and the development of bodily organs, e.g., heart, lungs, brain, etc.  This stage is known as the embryo.[1]

38. An embryo is an "unborn child" as that term is used in the Indiana Abortion Ban.

39. An embryo is entirely dependent on the woman whose uterus it occupies for all of its oxygen and other nutrients, as well as physical protection until it becomes a viable fetus.

---

[1] The word "embryo" is also commonly used to describe both the zygote and blastocyst.  For purposes of this action, Plaintiff refers to an "embryo" as the fetal development stage between blastocyst and fetus.

40. A pregnant woman's body produces the hormone progesterone, which is necessary for the endometrium to retain and nurture an embryo. If there is insufficient progesterone, the uterus will eject the embryo, i.e., miscarry, causing the death of the embryo.

41. During the first ten (10) weeks EGA, progesterone is produced by the Corpus Lutem, a cyst on the woman's ovaries. The embryo's placenta thereafter produces progesterone.

42. Between five (5) to ten (10) weeks EGA, the embryo has developed to the point of becoming a fetus and remains attached to the endometrium.

43. A fetus is an "unborn child" as that term is used in the Indiana Abortion Ban.[2]

44. A fetus is entirely dependent on the woman whose uterus it occupies for all of its oxygen and other nutrients, as well as physical protection until it becomes viable.

### Gestational Surrogacy

45. Since the mid-1980's, zygotes, blastocysts, and embryos have also been created outside a woman's body using in vitro fertilization ("IVF"). The man provides the sperm in a laboratory setting and the woman provides the egg in a laboratory setting. The sperm fertilizes the egg in a laboratory setting creating a zygote. The zygote develops into a blastocyst or embryo outside a woman's body in a laboratory setting.

46. The blastocyst or embryo created outside the woman's body using IVF is then surgically inserted into the empty space in a woman's uterus with the expectation it will implant in her endometrium. This process is commonly known as gestational surrogacy.

47. Gestational surrogacy occurs when one woman provides the egg for fertilization, and another woman provides the use of her uterus for the incubation of the blastocyst or embryo into

---

[2] Indiana Code § 16-18-2-128.7 defines "fetus" as "an unborn child, irrespective of gestational age or the duration of the pregnancy." This legislative definition covers the zygote, blastocyst, embryo, and fetus, as those terms are commonly defined and used in the medical literature.

7

a viable child.

48. The woman who provides the use of her uterus for the incubation of the blastocyst or embryo created in a laboratory into a viable fetus is commonly known as a gestational carrier.

49. Gestational surrogacy contracts are unenforceable in Indiana. Indiana Code § 31-20-1-2. However, gestational surrogacy is not illegal in Indiana.

50. Gestational carriers in Indiana can and do accept significant sums of money for providing the use of their uterus to incubate a blastocyst or embryo created by IVF into a viable fetus pursuant to lawful contracts entered into and governed by the laws of other states.

51. Indiana Code § 16-34-1-0.5 states that the Indiana Abortion Ban does not apply to "in vitro fertilization."

52. The only economic use for a uterus is being a gestational carrier.

53. An Involuntarily Pregnant Woman cannot be a gestational carrier because her uterus is already in use.

## Birth Control

54. The Involuntarily Pregnant Women used a variety of methods of contraception to avoid pregnancy ("Birth Control").

55. Each of the Involuntarily Pregnant Women reasonably believed the Birth Control she used would be effective.

56. The Birth Control used by Involuntarily Pregnant Women failed and they became pregnant without their consent.

## Count One:

## The Indiana Abortion Ban Unconstitutionally Takes the Property of Involuntarily Pregnant Women Without Just Compensation.

57. Plaintiff repeats and realleges ¶¶ 1 to 56.

58. The uterus of an Involuntarily Pregnant Woman is a tangible thing in which she has property rights, including without limitation, the property right to:

   A. Have her uterus removed for any purpose, including without limitation, changing her sex; or

   B. Rent it out to a third party as a gestational carrier; or

   C. Retain any blastocyst, embryo, or nonviable fetus in her uterus; or

   D. Exclude any blastocyst, embryo, or nonviable fetus from her uterus;

   E. Remove any blastocyst, embryo, or nonviable fetus from her uterus.

59. The property right of an Involuntarily Pregnant Woman to exclude or remove a Protected Unborn Child from her uterus cannot be taken by the State of Indiana without just compensation pursuant to the Takings Clause of the Fifth Amendment to the U.S. Constitution.

60. The property right to exclude or remove a Protected Unborn Child from a woman's uterus has substantial commercial value as established by over twenty-five years of experience with gestational surrogacy in Indiana.

61. The Indiana Abortion Ban makes the exclusion or removal of a Protected Child from the uterus of an Involuntarily Pregnant Woman a crime.

62. The Indiana Abortion Ban causes a taking of the property rights of an Involuntarily Pregnant Woman by preventing her from lawfully and safely exercising her property rights to exclude or remove a Protected Unborn Child from her uterus.

63. The Indiana Abortion Ban fails to provide just compensation to an Involuntarily

Pregnant Woman for the taking of her property rights in her uterus.

64. There is no procedure available under Indiana law for an Involuntarily Pregnant Woman to obtain just compensation for the taking of her property rights in her uterus by the Indiana Abortion Ban.

65. The Indiana Abortion Ban is unconstitutional as applied to Involuntarily Pregnant Women under the takings clause of the Fifth Amendment and the Fourteenth Amendment.

**Count Two:**

**The Indiana Abortion Ban Subjects Involuntarily Pregnant Women to Involuntary Servitude in Violation of the Thirteenth Amendment.**

66. Plaintiff repeats and realleges ¶¶ 1 to 65.

67. Each Involuntarily Pregnant Woman provides the blastocyst, embryo or fetus that implants in her uterus with the following services:

    A. Hormones, including but not limited to progesterone.

    B. Oxygen.

    C. Nutrients.

    D. Antibodies.

    E. Body heat.

    F. Protection from external shocks and intrusions.

68. The Indiana Abortion Ban causes each Involuntarily Pregnant Woman to provide the services necessary to sustain the life of a Protected Unborn Child that occupies and uses her uterus.

69. The Indiana Abortion Ban provides no compensation or consideration to an Involuntarily Pregnant Woman for providing the services necessary to sustain the life of a Protected Unborn Child that occupies and uses her uterus.

70. Those services have a substantial commercial value in Indiana as established by over twenty-five years of experience with gestational surrogacy.

71. The Indiana Abortion Ban is unconstitutional as applied to the Involuntarily Pregnant Women because they are put into a condition of involuntary servitude in violation of the Thirteenth Amendment.

**Count Three:**

**The Indiana Abortion Ban Unconstitutionally Discriminates
Between Women Who Become Pregnant by Accident and
Those Who Are Pregnant by Rape or Incest**

72. Plaintiff repeats and realleges ¶¶ 1 to 71.

73. All women have the fundamental right to use contraception and engage in sex just for the pleasure and intimacy it brings and without any purpose or intent to become pregnant ("Protected Sex").

74. The Involuntarily Pregnant Women engaged in Protected Sex but became pregnant without their consent due to the failure of their Birth Control.

75. The Indiana Abortion Ban imposes criminal penalties on anyone who provides an abortion to an Involuntarily Pregnant Woman.

76. The Indiana Abortion Ban does not apply to anyone who provides an abortion in the first ten (10) weeks of EGA to a pregnant woman who is pregnant due to rape or incest. Indiana Code § 16-34-2-1(A)(2)(a).

77. The Indiana Abortion Ban discriminates between two different classes of women who are pregnant without their consent – women who are pregnant by accident and women who are pregnant by rape or incest.

78. This discrimination infringes upon the fundamental right of Involuntarily Pregnant

Women to engage in Protected Sex because they are forced to pay the physical and financial costs of being pregnant without their consent.

79. There is no compelling state interest served by this discrimination.

80. Whatever state interest this discrimination purports to serve can be accomplished by means less intrusive on the fundamental right of Involuntarily Pregnant Women to engage in Protected Sex.

81. The Indiana Abortion Ban violates the equal protection clause of the Fourteenth Amendment.

### Count Four:

### The Indiana Abortion Ban Unconstitutionally Discriminates Between Women Who Become Pregnant by Protected Sex and Women Who Become Pregnant by In Vitro Fertilization

82. Plaintiff repeats and realleges ¶¶ 1 to 81.

83. Women who get pregnant by in vitro fertilization are exempt from Article 16 of the Indiana Code, including the Indiana Abortion Ban.

84. The Indiana Abortion Ban discriminates between two different classes of pregnant women – women who are pregnant because they engaged in Protected Sex and women who are pregnant by in vitro fertilization.

85. This discrimination adversely affects the exercise of the fundamental right of Involuntarily Pregnant Women to engage in Protected Sex because they are forced to pay the physical and financial costs of being pregnant without their consent.

86. There is no compelling state interest served by this discrimination.

87. Whatever state interest this discrimination purports to serve can be accomplished by means less intrusive on the fundamental right of Involuntarily Pregnant Women to engage in

Protected Sex.

88. The Indiana Abortion Ban violate the equal protection clause of the Fourteenth Amendment.

### Count Five:

**The Indiana Abortion Ban Violates the Indiana Religious Freedom Restoration Act Because It Makes the Exercise of the Satanic Abortion Ritual a Crime.**

89. Plaintiff repeats and realleges ¶¶ 1 to 88.

90. Members of TST hold the religious belief that a zygote, blastocyst, embryo, and nonviable fetus are a part of a woman's body and not imbued with an existence, humanity, or spiritual life separate and apart from the mother.  This is belief is grounded in TST Tenet V that beliefs should conform to one's best scientific understanding of the world.

91. Members of TST hold the religious belief that an unwanted zygote, blastocyst, embryo, or nonviable fetus should be removed from the body of a pregnant woman.  This belief is grounded in TST Tenet III that a woman's body is inviolable, subject to her own will alone.

92. When a member of TST has an unwanted pregnancy, she exercises her religious beliefs as expressions of Tenets III and V by engaging in the Satanic Abortion Ritual.

93. The Indiana Abortion Ban effectively prohibits the exercise of the Satanic Abortion Ritual.

94. There is no compelling state interest served by prohibiting the Satanic Abortion Ritual.

95. There are less restrictive means of furthering the state interests served by the Indiana Abortion Ban than prohibiting the Satanic Abortion Ritual.

96. The Indiana Abortion Ban violates the Indiana Religious Freedom Restoration Act, Indiana Code § 73-401 et seq.

**WHEREFORE**

Plaintiff respectfully requests the entry of an order permanently enjoining Defendants from enforcing the Indiana Abortion Ban against anyone who provides an abortion to an Involuntarily Pregnant Woman who is also a member of TST.

September 21, 2022

*W. James Mac Naughton*
W. James Mac Naughton, Esq.
7 Fredon Marksboro Road
Newton, NJ 07860
wjm@wjmesq.com
*Attorney for Plaintiff The Satanic Temple*
