**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| THE SATANIC TEMPLE,       ) | |
|        ) | |
|     Plaintiff,     ) | |
|        ) | |
|     v.       ) | Case No. 1:22-cv-01859-JMS-MG |
|        ) | |
| ERIC HOLCOMB, in his capacity   ) | |
| as the Governor of Indiana; and   ) | |
| TODD ROKITA, in his capacity   ) | |
| as Attorney General of Indiana,   ) | |
|        ) | |
|     Defendants.     ) | |
|        ) | |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

The Satanic Temple sued Governor Eric Holcomb and Attorney General Todd Rokita to attack the validity of an Indiana statute which curtails the circumstances under which an abortion provider may provide abortions. The Court should dismiss this complaint because the Satanic Temple fails to plead facts sufficient to confer standing, names a defendant who is shielded by sovereign immunity, and fails to distill any of its peculiar and novel theories into cognizable legal claims.

**FACTS RELEVANT TO MOTION TO DISMISS**

Shortly after the Supreme Court returned abortion regulation to the States, *Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228, 2259 (2022), Indiana's General Assembly acted upon that authority—continuing to prioritize childbirth by prohibiting abortion in most circumstances, with notable exceptions in the cases of rape or incest. Ind. Code §§ 16-34-1-1; 16-34-2-1 *et seq.* In an attack on the work of Indiana's elected officials, Plaintiff brings its suit against Indiana Governor Eric

1

Holcomb and Indiana Attorney General Todd Rokita, in their official capacities, on behalf of female members of the Satanic Temple in Indiana whom it considers to be "involuntarily pregnant." Compl. ¶¶ 5, 7, 15–16, ECF No. 1. The lawsuit seeks to permanently enjoin Defendants from enforcing Indiana's abortion restrictions, which limit a provider's ability to perform abortions in Indiana. *Id*. ¶ 13, *id*. at 14.

Plaintiff considers an "[i]nvoluntarily [p]regnant [w]oman" to be a woman who became pregnant without the legal ability to consent (in a circumstance other than rape or incest) and/or by failure of birth control, and who is pregnant with an unborn child who is not viable. *Id*. ¶ 7.

Plaintiff grounds its complaint in its religious beliefs centered on secular humanism. *Id*. ¶ 4. Plaintiff seeks relief on five counts:

- Count one: Unlawful taking of a supposed property right to exclude or remove a blastocyst, embryo, or nonviable fetus from an involuntarily pregnant woman's uterus. *Id*. ¶¶ 62–63.

- Count two: Involuntary servitude in violation of the Thirteenth Amendment by forcing an involuntarily pregnant woman to provide services to a blastocyst, embryo, or fetus implanted her uterus. *Id*. ¶¶ 67–71.

- Count three: Equal Protection Clause violation by unconstitutionally discriminating between women who become pregnant by accident and women who become pregnant by rape or incest. *Id*. ¶¶ 72–81.

- Count four: Equal Protection Clause violation by unconstitutionally discriminating between women who become pregnant by protected sex and women who become pregnant by in vitro fertilization. *Id.* ¶¶ 82–88.

- Count five: Violation of Indiana's Religious Freedom Restoration Act. *Id.* ¶¶ 89–96.

## STANDARD OF REVIEW

A motion to dismiss for lack of standing is a challenge to a court's subject matter jurisdiction. *Bazile v. Finance System of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). If the Court lacks subject matter jurisdiction, it should dismiss the case under Rule 12(b)(1) of the Federal Rules of Civil Procedure. As the party invoking the federal court's jurisdiction, it is Plaintiff's burden to demonstrate that subject-matter jurisdiction exists for the claims raised. *Alonso v. Blue Sky Resorts, LLC*, 179 F. Supp. 3d 857, 860 (S.D. Ind. 2016) (citing *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.,* 683 F.3d 845 (7th Cir. 2012) (en banc)). To do this, the plaintiff must establish the "irreducible constitutional minimum" of standing that is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

A complaint must "state a claim to relief that is plausible on its face" to survive a motion to dismiss under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Two core principles underlie this standard. "First, although the complaint's factual allegations are

accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). "Second, the plausibility standard calls for a 'context-specific' inquiry that requires the court to 'draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The complaint must "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" if it is to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

## ARGUMENT

The Court should dismiss all claims against the Defendants because Plaintiff lacks standing, the claims are barred by sovereign immunity, and Plaintiff has failed to state a claim upon which relief may be granted.

Plaintiff does not attempt to establish standing in its own right, and it fails to show that any of its members would have standing to sue in her own right. However, Plaintiff's claims against Governor Holcomb would be doomed even if brought by its members because the claims do not allege a sufficient connection between injury to a member and the conduct of Governor Holcomb. Neither would the requested relief—that Governor Holcomb be enjoined from enforcing Indiana's abortion restrictions against abortion providers—redress a member's supposed injury. The power to enforce the statutes at issue rests not with the Governor, but rather with independent county prosecutors.

In addition to failing to allege facts sufficient for standing and naming an immune Defendant, Plaintiff's complaint wholly fails to make out a claim that it is entitled to relief. Count one is further defective because it alleges a taking without just compensation, but the alleged taking, a woman's right to remove an embryo or blastocyte from her uterus, is not a cognizable property right under the federal constitution. *See Dobbs v. Jackson Women's Health Org.*, 142 S.Ct. 2228 (2022).

Count two asserts that Indiana's statutory scheme regulating abortion subjects pregnant women to involuntary servitude in violation of the Thirteenth Amendment to the United States Constitution, but this audacious and inexplicable claim runs counter to the original meaning of the Thirteenth Amendment, and cannot be found in any subsequent constitutional jurisprudence.

Count three attempts to advance an equal protection claim on the grounds that, under certain circumstances, abortion may be available to pregnant victims of rape or incest, but not to women who otherwise became pregnant while using contraceptive. That claim must fail because—as *Dobbs* made clear—abortion is not a fundamental right, and Plaintiff has not identified a suspect class. Accordingly, although Plaintiff suggests otherwise, the claim is subject only to rational basis scrutiny. Because when passing the law, the General Assembly could legitimately prioritize childbirth and also protect victims of rape and incest from the unique trauma attending those circumstances, the distinction between women pregnant by rape and incest and other women survives rational basis scrutiny.

Count four purports to be an equal protection claim, but fundamentally misconstrues Indiana's abortion statutes. Plaintiff claims that the Indiana Code makes a distinction between women who became pregnant by in vitro fertilization and women who became pregnant through sexual intercourse. Under Plaintiff's reading, abortion is available to women who become pregnant by in vitro fertilization, but not to other women. But the statute regulates providers—not pregnant women. By excluding in vitro fertilization from Indiana's abortion restrictions, Indiana Code § 16-34-1-0.5 makes clear that practitioners of in vitro fertilization are not subject to criminal prosecution under Indiana's abortion laws for their handling of embryos prior to pregnancy—not that women pregnant by in vitro fertilization may have an abortion.

Finally, because count five is a state-law claim against state officials, it is barred by sovereign immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

## I.  The Satanic Temple lacks Article III standing because it does not allege a concrete and particularized injury.

Article III's case-or-controversy requirement demands that a plaintiff allege an (1) injury in fact that is concrete and particularized, (2) fairly traceable to the challenged action of the defendant, and (3) it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "'[A] plaintiff must demonstrate standing for each claim he seeks to press.'" *Johnson v. U.S. Off. of Pers. Mgmt*, 783 F3d. 655, 661 (7th Cir. 2015) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008)).

6

Here, Plaintiff invokes not its own injury but the alleged injuries of its members alleged to be "[i]nvoluntarily [p]regnant." Compl. ¶ 5, ECF No. 1. Associational standing allows an organization to bring a lawsuit on behalf of its members if the organization establishes (1) the members would have standing to sue in their own right, (2) the interests the organization seeks to protect are germane to its purpose, and (3) neither the claims nor requested relief requires participation of the individual members. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

Plaintiff has not shown that any member would have standing to sue in her own right. To start, Plaintiff has not alleged sufficient facts that any member suffered a concrete and particularized injury—it only vaguely asserts that its members would have abortions if they could. Compl. ¶¶ 9–10, ECF No. 1. Counts one and two repeatedly refer to "an" or "each" "Involuntarily Pregnant Woman" without alleging that the "Involuntarily Pregnant Woman" at issue is even a member of the Satanic Temple. *Id.* ¶¶ 59, 61, 63, 67, 68, 69. Notably, membership in the Satanic Temple is not included in Plaintiff's definition of "Involuntarily Pregnant Woman". *Id.* ¶ 7. So, counts one and two do not allege an injury to Plaintiff or its members at all.

The lack of particularity with respect to injury also relates to whether individual participation would be required in this suit. Ordinarily individual participation is required in a case involving free exercise claims. *Harris v. McRae*, 448 U.S. 297, 321 (1980) (diversity of religious views foreclosed associational

standing of church organization). RFRA claims, like the one in count five, require individualized evaluation. *See Gonzalez v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006) (approving the "feasibility of case-by-case consideration of religious exceptions to generally applicable rules"). To prevail under RFRA requires a sincere religious belief and substantial burden imposed by the government. *Korte v. Sebelius*, 735 F.3d 654, 683 (7th Cir. 2013).

Here, Plaintiff avers a lack of diversity of religious views—that each of its involuntarily pregnant members would seek an abortion. Compl. ¶¶ 8-9, ECF No. 1. But a woman's desire or necessity to have an abortion could change over time. So could her religious views, so individual participation is necessary to be sure that there is a live case or controversy. *Zessar v. Keith*, 536 F.3d 788, 794 (7th Cir. 2008) (case or controversy required at all stages of a federal proceeding), *en banc reh'g denied*. Moreover, individualized adjudication is necessary to both protect sincerely held religious beliefs and foreclose insincere ploys to avoid a generally applicable law. *See Korte*, 735 F3d at 683 ("Checking for sincerity and religiosity is important to weed out sham claims.").

## II.   The Satanic Temple's claims against Governor Holcomb are not redressable and are barred by sovereign immunity.

Plaintiff does not show that its alleged injury is redressable by a favorable decision against Governor Holcomb. Plaintiff seeks an order prohibiting Governor Holcomb from enforcing a portion of Indiana law that criminalizes the conduct of providers of abortions (but not the women seeking an abortion) in certain circumstances, but Governor Holcomb lacks legal authority to enforce the

challenged abortion restrictions. *See* Ind. Const. art. 5; Ind. Code art. 4-3 (concerning role of the governor); Ind. Const. art. 7 § 16; Ind. Code art. 33-39 (concerning role of prosecuting attorneys). Plaintiff ignores that criminal prosecutions occur almost exclusively at the direction of individual county prosecutors—not at the direction of the governor.

Plaintiff merely asserts that Governor Holcomb is responsible for enforcing the law. Compl. ¶ 15, ECF No. 1. But more is required. *See Doe v. Holcomb*, 883 F.3d 971, 976 (7th Cir. 2018) ("'[t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute.'" (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979))). Plaintiff does not assert, nor could it, that Governor Holcomb is personally involved in the enforcement of Indiana's abortion restrictions, which are criminal statutes applicable only to abortion providers. Therefore, even the order that Plaintiff seeks would not redress the alleged injury because whatever prosecutions might result would occur without the involvement of Governor Holcomb.

Plaintiff's claims against Governor Holcomb are barred under the Eleventh Amendment for the same reason. The Eleventh Amendment bars a plaintiff from bringing a suit against a State in federal court. A narrow exception to that doctrine is allowed if a plaintiff seeks only prospective equitable relief from a state official with enforcement powers. *Ex parte Young*, 209 U.S. 123 (1908). To overcome the Eleventh Amendment bar, a plaintiff must allege more than a general duty to

enforce state laws. *Doe*, 883 F.3d at 976. Because Governor Holcomb plays no role in enforcing the statute challenged by the Plaintiff, all the claims against Governor Holcomb are barred by the Eleventh Amendment.

### III.   Count one fails to allege a cognizable property right under the Fifth Amendment.

Count one fails because Plaintiff has not shown the existence of a cognizable property right and because Indiana's regulation of abortion providers is not a taking under the meaning of the Fifth Amendment.

Plaintiff argues that a woman's uterus is an object over which she has property rights, and that those rights include an *unlimited* right to remove an unborn child from her uterus. Specifically, Plaintiff claims that a woman has property rights in her uterus that include the right "without limitation" to: "A. Have her uterus removed for any purpose, including without limitation, changing her sex; or B. Rent it out to a third party as a gestational carrier; or C. Retain any blastocyst, embryo, or nonviable fetus in her uterus; or D. Exclude any blastocyst, embryo, or nonviable fetus from her uterus; E. Remove any blastocyst, embryo, or nonviable fetus from her uterus." But Plaintiff's asserted property interest is not a legally cognizable property right.

A claim of an unconstitutional Fifth Amendment taking must show, first, that a legally recognized property right exists. *Northwest Louisiana Fish and Game Preserve Comm'n v. U.S.,* 574 F.3d 1386, 1390 (Fed. Cir. 2009) (citing *U.S. v. Willow River Power Co.*, 324 U.S. 499, 503 (1945)). "Not all property interests are legally

protected property rights." *Id.* "[O]nly those economic advantages are 'rights' which have the law back of them, and only when they are so recognized may courts compel others to forbear from interfering with them or to compensate for their invasion." *Willow River Power Co.*, 324 U.S. at 502. Parts of a person's body have never been understood as real property rights, instead, separate constitutional jurisprudence governs matters of life and limb.

On the contrary, the Supreme Court's holding in *Dobbs* was clear that "[t]he Constitution makes no reference to abortion, and no such right is implicitly protected by *any constitutional provision.*" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022) (emphasis added). And as the Court explained, most states, including Indiana, have a long history of criminalizing abortion at every stage of pregnancy. *Id.* at 2286. To this day, it is Indiana law and policy that "childbirth is preferred, encouraged, and supported over abortion." I.C. § 16-34-1-1. No legally recognized property right to an abortion exists in Indiana.

Plaintiff attempts to invent a property right by pointing to the potential economic interest a woman could have in a surrogacy contract. This argument is flawed for many reasons. First, surrogacy contracts are unenforceable in Indiana, and therefore fail as a basis for a legally cognizable property right. I.C. § 31-20-1-1 *et seq.* Additionally, Plaintiff has failed to allege any facts indicating that the State of Indiana has interfered with any existing surrogacy contract or that any woman has been unable to enter into one, and therefore Plaintiff has no factual basis on which to base such a claim.

Finally, even if Plaintiff could show that a woman who wanted to be a surrogate was prevented by her own pregnancy from doing so, a taking still would not have occurred. Not every exercise of government power violates the Fifth Amendment. "Given the propriety of the governmental power to regulate, it cannot be said that the Taking Clause is violated whenever legislation requires one person to use his or her assets for the benefit of another." *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211 (1986). Every theory under which the Supreme Court has found a regulation to have effected a Fifth Amendment taking "aim[s] to identify regulatory actions that are functionally equivalent to a direct appropriation of or ouster from private property." *Lingle v. Chevron U.S.A. Inc.,* 544 U.S. 528, 529 (2005). Abortion restrictions, which existed long before the adoption of the Fifth Amendment and have continued long after, have never been understood to constitute a direct appropriation of a woman's private property.

Because the Plaintiff has failed to articulate a legally recognized property right, count one should be dismissed.

## IV.   Count two fails because the biological support a mother provides to an unborn child does not amount to involuntary servitude.

In count two, Plaintiff equates pregnancy and childbirth with the supreme evil of slavery. Plaintiff alleges that, for a woman who is pregnant and does not wish to be, providing hormones, oxygen, nutrients, antibodies, body heat, and protection from external shocks and intrusions for the benefit of an unborn child amounts to involuntary servitude in violation of the Thirteenth Amendment, which

provides that "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States." That interpretation of the Thirteenth Amendment is implausible and not grounded in any recognized legal precedent. The biological support provided by a pregnant woman to her unborn child is the natural consequence of pregnancy, and motherly care for a child, born or unborn, has never been thought to constitute involuntary servitude to the child.

Such an argument has been rejected elsewhere. The only case where a court has analyzed arguments as to whether the Thirteenth Amendment gives a woman the right to terminate her pregnancy at will is *Jane L. v. Bangerter*, 794 F.Supp. 1537, 1548-49 (D. Utah 1992). In *Bangerter*, the court rejected the argument that a prohibition against elective abortions amounted to involuntary servitude, finding such an argument "totally lacks merit" and "strains credulity."

Looking at the historical context of the Thirteenth Amendment through an early case, the *Bangerter* court explained: "*[The Thirteenth Amendment] was not intended to introduce any novel doctrine with respect to certain descriptions of service which have always been treated as exceptional;* such as military and naval enlistments, or to disturb the right of parents and guardians to the custody of their minor children or wards." *Id.* (quoting *Robertson v. Baldwin*, 165 U.S. 275, 282 (1897)). The court also noted that at the time of the ratification of the Thirteenth Amendment 21 of the 27 ratifying states had statutes prohibiting abortion. *Id.* In light of this context, the court concluded that "the contention that one of the

purposes of the Thirteenth Amendment was to secure the right of elective abortion totally lacks merit." *Id.* Here, Plaintiff seeks to introduce a novel doctrine that was not contemplated at the time of the Thirteenth Amendment and has not been accepted by any court since.

Further, prohibitions on abortion after viability have always been upheld by courts as constitutional. This reality undermines Plaintiff's assertion that the Thirteenth Amendment, which by its own language is a complete bar to involuntary servitude, could apply to an unwanted pregnancy. Any argument that preventing abortion is equivalent to involuntary servitude would seem to apply equally to restrictions on abortions later in pregnancy, which courts consistently upheld even after *Roe v. Wade*. *See Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 879 (1992) ("subsequent to viability, the State in promoting its interest in the potentiality of human life may, if it chooses, regulate, and even proscribe, abortion…" (quoting *Roe v. Wade*, 410 U.S. 113, 164-65 (1973)). The Thirteenth Amendment's absolute ban on involuntary servitude, which has never applied to post-viability abortions, cannot now suddenly operate to require access to abortion at any time.

Most importantly, the Supreme Court declared in *Dobbs* that "[t]he Constitution makes no reference to abortion, and no such right is implicitly protected by any constitutional provision." 142 S. Ct. 2228, 2242 (2022). That includes the Thirteenth Amendment. Because count two does not make out a claim for involuntary servitude, it should be dismissed.

14

## V. Exceptions for victims of rape or incest do not violate the Equal Protection Clause

In count three, Plaintiff alleges a violation of the Equal Protection Clause of the Fourteenth Amendment because Indiana permits abortions for women who are pregnant as a result of rape or incest but not those who are pregnant as a result of lawful, consensual sexual relations (even if by accident).  Compl. ¶¶ 72–81. But victims of rape and incest are not similarly situated to women who "engage in sex just for the pleasure and intimacy it brings" and become pregnant thereby, and the statute is rationally related to a legitimate governmental purpose. Indeed, protecting "a living being and potential human life," is a purpose that is "both valid and compelling." *Cheaney v. State*, 285 N.E.2d 265, 270 (Ind. 1972).

Legislation is generally "presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 437 U.S. 432, 440 (1985). Laws targeting fundamental rights or suspect classes are subject to a higher level of scrutiny. *Id.* A suspect class is characterized by "an immutable characteristic determined solely by the accident of birth" or else is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *St. John's United Church of Christ v. City of Chi.*, 502 F.3d 616, 638 (7th Cir. 2007) (internal quotation marks omitted). Typical examples of suspect classes include race, alienage, national origin, and gender. *See City of Cleburne*, 437 U.S. at 440.

15

Here, Plaintiff does not identify a recognized fundamental right or suspect class. Plaintiff attempts to frame count three as involving a "fundamental right" to use contraception and engage in sex for reasons other than procreation. Compl. ¶ 73, ECF No. 1. Despite Plaintiff's attempt to assert—without citation to legal authority—a different "fundamental right," the crux of count three is the difference in the availability of abortion between women who are "pregnant by accident and women who are pregnant by rape or incest." *Id.* ¶ 77. But *Dobbs* has made clear that abortion is not a fundamental right. *Dobbs*, 142 S. Ct. at 2242. Plaintiff does not allege that women who use contraception and engage in sex for reasons other than procreation are a suspect class.

Because count three does not involve a fundamental right or a suspect class, rational basis analysis applies. *See Discovery House, Inc. v. Consolidated City of Indianapolis,* 319 F.3d 277, 282 (7th Cir.2003). Under the rational relationship test, "the applicable government regulation will be upheld if there is a rational relationship between the disparity of treatment and *some* legitimate governmental purpose." *Council 31 of the American Federation of State, County and Municipal Employees, AFL-CIO v. Quinn*, 680 F.3d 875, 886 (7th Cir. 2012) (quotation marks omitted). The legitimate purpose here is the protection of human life and the simultaneous protection of victims of rape and incest. *See Cheaney*, 285 N.E.2d at 270; Ind. Code § 16-34-1-1 (preferring childbirth over abortion).

The heart of an equal protection claim is that "all persons similarly situated should be treated alike." *City of Cleburne*, 473 U.S. at 439 (internal quotation marks

16

and citation omitted). Victims of rape and incest are not similarly situated to women who "engage in sex just for the pleasure and intimacy it brings," Compl. ¶ 73, ECF. No. 1, because rape and incest are serious criminal acts. *See* Ind. Code § 35-42-1 (rape as a Level 1 or Level 3 felony); Ind. Code § 35-46-1-3 (incest as a Level 5 or Level 4 felony); Ind. Code §§ 35-50-2-4, -5.5 (two years imprisonment minimum penalty for Level 4 felony, 50 years maximum for Level 1 felony). The Supreme Court has called rape "highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the female victim and for the latter's privilege of choosing those with whom intimate relationships are to be established." *Coker v. Georgia*, 433 U.S. 584, 597 (1977). The Court observed "Short of homicide, it is the 'ultimate violation of self,'" and that "[r]ape is very often accompanied by physical injury to the female and can also inflict mental and psychological damage." *Id.* at 597–98 (footnote omitted).

To prevail in an equal protection claim, a plaintiff must "show that the defendants acted with a nefarious discriminatory purpose" and "discriminated against them based on membership in a definable class." *Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 752 (7th Cir. 1999) (brackets omitted). The "gravamen" of an equal protection claim "lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action." *Id.* (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)) (internal quotation marks omitted). Moreover, Plaintiff does not allege that an unlawful discriminatory purpose was even a "motivating factor" in Indiana's

abortion restrictions. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 270 (1977).

The Supreme Court in *Dobbs* made clear that thorny policy decisions are left to the States. *Dobbs*, 142 S. Ct. at 2259. Here Indiana's General Assembly was free to determine that—perhaps to minimize trauma to victims of rape or incest—abortion may be available in those circumstances. Because that decision is rationally related to a legitimate governmental interest, count three should be dismissed. Relatedly, Plaintiff fails to state a claim because it cites the wrong level of scrutiny. Plaintiff alleges there is "no compelling state interest served by this discrimination." Compl. ¶ 79, ECF No. 1. But Plaintiff does not allege that there is no *rational basis* for the discrimination.

## VI. Count four does not state a claim for relief.

Plaintiff captions count four as being unconstitutional discrimination between women who become pregnant from protected sex and women who become pregnant due to in vitro fertilization, Compl. ¶¶ 82–88, ECF No. 1, but Plaintiff misconstrues the law. Plaintiff claims that "[w]omen who get pregnant by in vitro fertilization are exempt from [Ind. Code. art. 16-34] of the Indiana Code, including the Indiana Abortion Ban." *Id.* ¶ 83.[1]

To begin, count four fails for the reasons applicable to count three: Plaintiff has failed to identify a discriminatory intent, a fundamental right, a suspect class, and

---

[1] Paragraph 83 of the complaint references "Article 16" which would be meaningless without a corresponding Title. It is apparent from the context that Plaintiff is referring to Indiana Code Title 16, Article 34.

failed to negate a rational basis to support the law. But it also fails because count four does not discriminate between pregnant women the way Plaintiff alleges.

Plaintiff grounds count four in the text of Indiana Code § 16-34-1-0.5. The entirety of Indiana Code § 16-34-1-0.5 provides "[t]his article does not apply to in vitro fertilization." But the article at issue—Title 16, Article 34—does not make a distinction between women who *become pregnant* by in vitro fertilization and women who become pregnant through intercourse. That portion of the statutory scheme does not make a distinction between pregnant women at all—it makes a rational and life-affirming distinction between abortion *providers* and *providers* of fertility services.

The distinction as to providers is necessary to make clear that providers of in vitro fertilization services—who by definition are trying to advance life—are not criminally prosecuted for their practices. Around the time of the passage of the current version of Indiana Code § 16-34-2-7(a) which criminalizes performing prohibited abortions, there were debates in other States about whether in vitro fertilization providers could be prosecuted for their handling of embryos. (*See* Aria Bendix, *Abortion Bans and IVF: Why Providers and Lawyers are Confused*, NBC News (June 29, 2022, 12:56 PM EDT), https://www.nbcnews.com/health/health-news/states-say-abortion-bans-dont-affect-ivf-providers-lawyers-worry-rcna35556 ) By excluding in vitro fertilization providers, the General Assembly made clear that it was legislating against abortion—not against in vitro fertilization.

In sum, Indiana's abortion restrictions do not provide an exception for women who are pregnant by means of in vitro fertilization and does not permit practitioners of in vitro fertilization to perform abortions. The provision at issue merely excludes in vitro fertilization providers from prosecution under the abortion regulations for their handling of embryos prior to implantation.

**VII. Count five is barred by Eleventh Amendment sovereign immunity.**

Count five should be dismissed because it fails to state a claim and is barred by the Eleventh Amendment independently of the other four counts. Additionally, because the count poses questions exclusively of state law and the statutes at issue are currently being litigated in state court by other parties, the Court should decline to exercise jurisdiction.

In count five, Plaintiff alleges that Indiana Code § 16-34-2-7(a) violates "the Indiana Religious Freedom Restoration Act, Indiana Code § 73-401 et seq," which presumably is a reference to Indiana Code § 34-13-9-1, Compl. ¶ 96, ECF No. 1.[2] As a state law claim against state officials, the claim is barred by sovereign immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

Here, count five is unquestionably a state law claim: that the state statute in question violates another state statute—the Indiana Religious Freedom Restoration Act. Compl. ¶ 96, ECF No. 1. As the governor and attorney general are named in their official capacities related to alleged enforcement of an Indiana statute, the

---

[2] The propriety of Indiana's abortion statutes with respect to Indiana's Religious Freedom Restoration Act is already being litigated in state court and is currently on appeal. *See Anonymous Plaintiff 1 et. al. v. Individual Members of the Med. Licensing Bd of Ind.* et. al., No. 49D01-2209-PL-031056 (Marion Super. Ct. 1)

State of Indiana is the real party in interest. Consequently, count five should be dismissed for the additional reasons announced in *Pennhurst*.

## CONCLUSION

The Defendants ask that the Court dismiss the complaint because the Court lacks subject matter jurisdiction and Plaintiff has failed to state a claim upon which relief may be granted.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana
Attorney No. 18857-49

Date: <u>March 2, 2023</u>          By:   Aaron M. Ridlen
Deputy Attorney General
Attorney No. 31481-49

Christopher M. Anderson
Deputy Attorney General
Attorney No. 31870-49

Rebekah P. Durham
Deputy Attorney General
Attorney No. 37840-49

Office of the Indiana Attorney General
Indiana Government Center South,
5th Floor
302 West Washington Street
Indianapolis, IN  46204-2770
Phone: (317)232-2826
Fax: (317)232-7979
Aaron.Ridlen@atg.in.gov