**EXHIBIT F**

F I L E D
December 2, 2022
CLERK OF THE COURT
MARION COUNTY
LB

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D01-2211-MI-038101 |

CAITLIN BERNARD, M.D., on her own behalf )
and on behalf of her patients; AMY )
CALDWELL, M.D., on her own behalf and on )
behalf of her patients, )
                                )
          Plaintiffs, )
                                )
v. )
                                )
TODD ROKITA, in his official capacity as )
Attorney General of the State of Indiana; )
SCOTT BARNHART, in his official capacity as )
Chief Counsel and Director of the Consumer )
Protection Division of the Office of the )
Attorney General of the State of Indiana, )
                                )
          Defendants. )
                                )

## ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

     This matter comes before the Court on Plaintiffs', Caitlin Bernard, M.D. ("Dr.

Bernard"), on her own behalf and on behalf of her patients; Amy Caldwell, M.D. ("Dr.

Caldwell), on her own behalf and on behalf of her patients (collectively "Plaintiffs"),

Motion for Preliminary Injunction.

     The Motion for Preliminary Injunction was filed on November 9, 2022.

Defendants, Todd Rokita, in his official capacity as Attorney General of the State of

Indiana; Scott Barnhart, in his official capacity as Chief Counsel and Director of the

Consumer Protection Division of the Office of the Attorney General of the State of Indiana (collectively, the "Division"), filed a Brief in Opposition to Motion for Preliminary Injunction on November 17, 2022. The Court heard live testimonial evidence over the course of two days on November 18, 2022 and November 21, 2022.

Having been fully briefed on the issues, the Court finds now as follows:

## FINDINGS OF FACT

### I.      FACTS RELATED TO DR. CAITLIN BERNARD, M.D.

**A.     Parties**

1.      Dr. Bernard is an OB/GYN physician licensed to practice medicine in the State of Indiana.  Dr. Bernard is employed by IU Health Physicians and by the Indiana University School of Medicine.  Declaration of Caitlin Bernard, M.D. ("Bernard Decl.") at ¶ 1.

2.      Dr. Amy Caldwell is an OB/GYN physician licensed to practice medicine in the State of Indiana. Dr. Caldwell is employed by IU Health Physicians and by the Indiana University School of Medicine.  Declaration of Amy Caldwell, M.D. ("Caldwell Decl.") at ¶ 1.

3.      Defendant Todd Rokita is the Attorney General of the State of Indiana ("Attorney General").

4.      Defendant Scott Barnhart is the Chief Counsel and Director ("Director") of the Consumer Protection Division of the Office of the Attorney General of the State of Indiana ("CPD").

5.      The Attorney General of the State of Indiana, and "Director" (collectively, "Defendants") are charged with investigating consumer complaints against licensed professionals in the state of Indiana

**B.      Timeline of events for Dr. Bernard**

6.      On or around June 27, 2022, Dr. Bernard received a phone call from a child abuse doctor in Ohio concerning a 10-year old patient who became pregnant through a rape. After receiving the call from the physician in Ohio, Dr. Bernard contacted the social worker at IU Health.[1]

7.      According to Dr. Bernard's testimony prior to the treating the 10-year old patient, she immediately notified the IU Health social worker that the patient was a victim of abuse after she spoke with the Ohio physician. Furthermore, Exhibit 22 was filed and admitted by the Court under seal (pursuant to the Ind. Access to Court Records) because it was a part of the 10-year old patient's confidential medical records and addressed the details of the work completed by the IU Health social worker on behalf of the IU Health medical team.  This exhibit  confirms along with Dr. Bernard's testimony that the Ohio law enforcement and Ohio DCS had previously been notified of the abuse prior to Dr. Bernard's treatment of the patient. Dr. Bernard fully cooperated with Ohio law enforcement and the Ohio DCS. Dr. Bernard was aware the social worker addressed this reporting requirement for the medical team.

8.      On June 29, 2022, Dr. Bernard attended an event on the IU School of Medicine campus.  There she spoke with another physician about the public health emergency doctors were facing due to abortion bans in other states and the impact those bans might have for patients.  Dr. Bernard mentioned to the other physician a

---

[1] There was no transcript of the proceedings prepared as of the date of this order, so these findings contain no direct citations to the record. The Court has attempted to  make its findings sufficiently specific as to allow any reviewing court to understand this Court's decisions and the processes by which those decisions were made. *See Rose v. State*, 120 N.E.3d 262, 269 (Ind. Ct. App. 2019).

case example that she had recently heard about where a 10-year-old child from Ohio who had been raped and was pregnant.

9.      A reporter from the IndyStar who was covering the campus event overheard Dr. Bernard's conversation with the other physician, approached Dr. Bernard, and asked Dr. Bernard to confirm the information she overheard.

10.      Dr. Bernard confirmed that she received a referral from a child abuse doctor in Ohio regarding a 10-year-old patient, and it was understood that the patient was coming Indiana to receive care from Dr. Bernard's medical team.  The reporter informed Dr. Bernard that she was writing a news story about the effects of abortion bans in nearby States after *Dobbs v. Jackson Women's Health Organization*, 124 S. Ct. 2228 (2022). Dr. Bernard then confirmed with the reporter the following information: Dr. Bernard had received a phone call from a child abuse doctor from Ohio which she believed to be on Monday, June 27, 2022, regarding a potential patient who had been a victim of sexual abuse; the victim was 10 years old; the victim was an Ohio resident; the victim had been raped; Dr. Bernard agreed to terminate the child's pregnancy; and the child was six weeks pregnant. Exs. B, C.

11.      Dr. Bernard terminated the child's pregnancy on Thursday, June 30, 2022, at an Indianapolis hospital. Ex. C.

12.      6.      At 5:00 a.m. on Friday, July 1, 2022, the IndyStar published the story, titled *Patients head to Indiana for abortion services as other states restrict care*. The article reported, without quoting Dr. Bernard, on July 1, 2022 that Dr. Bernard "took a call from . . . a child abuse doctor in Ohio" who "had a 10-year-old patient in the office who was six weeks and three days pregnant."  Ex. B.  Because abortion "still is legal" in

4

Indiana, the article reported that "the girl soon was on her way to Indiana to Bernard's care." *Id.*

13.     On July 2, 2022, Dr. Bernard submitted to the State of Indiana Department of Health a Termination of Pregnancy Report ("TPR").  Bernard Decl. ¶ 3.  This TPR contained the patient's age, the date of pregnancy termination, the estimated gestational age and post fertilization age, and that the pregnancy was the result of abuse.  Bernard Decl. at Ex. A; *see also* Ind. Code 5-14-3.

14.     Also on July 2, 2022, Dr. Bernard emailed a copy of the TPR to the Indiana Department of Child Services ("Indiana DCS"), noting in the email that the TPR was "for a minor," that "[t]his case was already reported through DCS in Ohio," and she had "attached the contact info for our social worker should you need any further assistance."  Ex. C.

15.     On July 6, a week after the abortion procedure in Indiana on June 30, Ohio law enforcement officers learned the identity of the child's alleged rapist after speaking to the child in her home. Ex. A at 9. After the child left Dr. Bernard's care in Indiana, the girl had returned to Ohio to live in the same home her alleged rapist. Ex. A at 9, 15–16; Ex. R. The man was later arrested and charged with two counts of rape in case number 22-CR-003226 on July 21. Ex. A at 9; Ex. R.

**C.     Consumer complaints filed against Dr. Bernard**

16.     The CPD began receiving numerous complaints about Dr. Bernard between July 8 and July 12, 2022. Ex. 6; Ex. W.

17.     The Office of the Indiana Attorney General ("Attorney General's Office") makes available a blank "Consumer Complaint" form, *see* Ex. 9, which an individual can

complete and file online, *see* Ex. 8, or can print out the form and mail it to the Attorney General's Office, Consumer Protection Division, *see* Ex. 9 at p. 2.

18.     Section 1 of the "Consumer Complaint" form requires personal information of the complainant, and Section 2 requires the identity of whom the complaint is against. Ex. 9 at p. 1.

19.     At the bottom of the "Consumer Complaint" form in Section 9, the complainant must "affirm, under penalties for perjury, that the foregoing representations are true."  Ex. 9 at p. 2.  The complainant must also sign and date the form, as required by Indiana law.  *Id.*; Ind. Code § 25-1-7-4. The "Consumer Complaint" form also states in Section 7 that "[t]his office cannot disclose your complaint against a licensed professional to the public unless this office files a disciplinary action against the licensed professional."  *Id.*

20.     When the "Consumer Complaint" form is submitted, if it relates to a professional licensing matter it is referred to the Licensing Enforcement Division ("Division).

21.     Mary Hutchison ("Hutchison") is a Deputy Attorney General and Section Chief of Licensing Enforcement who supervises the Division. There are 34 professional boards within Hutchison's purview, including the Medical Licensing Board.

22.     On July 8, 2022, J.L., a California resident, filed a consumer complaint against Dr. Bernard.  Ex. 6 at pp. 11–18.  This J.L. complaint described the first interaction between the complainant and Dr. Bernard as "[r]eported in the U.S. Media and President of the United States." *Id.* at p. 13. In Box 3–C, which asks "[w]here did the Transaction/Incident occur," J.L. checked the box marked "By Social Media."  *Id.*  In

6

Section 5 in response to "Transaction/Incident Details," J.L. complained that "Indiana is

a Mandatory Reporter State.  Dr Caitlin Bernard stated she treated a 10-yr old girl from

Ohio who was pregnant.  Dr Bernard refuses to confirm this was reported to law

enforcement, as required by law."  *Id.* at p. 14.

23.     On July 10, 2022, P.W., a Kentucky resident, filed a consumer complaint

against Dr. Bernard.  Ex. 6 at pp. 27–31.  In response to the form question 3-E, "[h]ow

did you [p]ay," the complainant noted "I would presume the child's parents paid. . . ."  *Id.*

at p. 29.  P.W.  provided the link to the Indianapolis Star article, and complained that Dr.

Bernard had "made no mention of reporting the rape of her 10 year old patient," and that

"[n]ews agencies who are researching this crime have been unable to find records of

any police reports, either in the city where Dr Bernard would have examined the child

and terminated her pregnancy or in Ohio."  *Id.* at p. 30.  She was "additionally

concerned about whether either doctor performed a rape exam with law enforcement

present" and, if "she retain[ed] the products of conception or perform[ed] DNA sampling

of the blood and tissues so they could be use[d] to help prosecute the person

responsible for the rape, and impregnation of the child?"  *Id.*

24.     On July 11, 2022, another California resident, D.H., submitted a consumer

complaint against Dr. Bernard.  Ex. 6 at pp. 1–4.  This complaint listed Dr. Bernard's

street address as "U of I" with the zip code "00000" and the phone number

"555555555."  *Id.* at p. 3.  The complaint represented that the transaction was for a

"Non-Profit/Church."  *Id.*  D.H. stated that "Miss Berhard [sic] kept knowledge of the rape

of a 10 year old from authorities."  *Id.* at p. 4.

25.     On July 11, 2022, J.T., an Indiana resident, filed a consumer complaint against Dr. Bernard that identified Dr. Bernard's phone number simply as "317."  Ex. 6 at pp. 36–38.  The complainant represented that "By Social Media." was where the transaction/incident occurred.  *Id.* at p. 37.  As to the "Transaction/Incident Details," J.T. stated that "doctor did not report rape of 10 year brought to indy from Ohio foe abortion." *Id.* at p. 38.

26.     On July 11, 2022, R.A., an Indiana resident,  submitted a consumer complaint and asserted that she had "no personal contact" with Dr. Bernard and the transaction occurred in the "Media."  Ex. 6 at pp. 19–26.  The complaint referenced, and attached, the July 1, 2022 Indianapolis Star article.  Id. at pp. 22–26.  The complaint also alleged that Dr. Bernard "violated the confidentiality guaranteed to child survivors of rape" and that "this case is a CHINS case which means [Dr. Bernard] violated the law in releasing any information regarding the case."  *Id.*  at p. 22.  Additionally, the R.A. complaint alleged that "[t]his public announcement served no purpose . . . [i]t was purely a political and activist strategy to support Dr. Bernard's profession as an abortion provider."  *Id.*

27.     On July 12, 2022, K.H., a Missouri resident, submitted a consumer complaint against Dr. Bernard despite admitting to having had "no direct contact" with Dr. Bernard, and representing that "News Media" is where the "Transaction/Incident" occurred.  Ex. 6 at pp. 32–35.  The complainant further stated "[f]rom news stories I was made aware that apparently Dr. Bernard has failed to report sexual abuse in a child." *Id.* at p. 35.

28.     On July 12, 2022, R.T., an Ohio resident, submitted a consumer complaint against Dr. Bernard, *see* Ex. 6 at pp. 5–10, representing that the transaction with Dr. Bernard was for the complainant's "Family/Household" and occurred "By Social Media," *id.* at p. 7.  R.T. stated that "[a]s a citizen of Ohio I feel that this misinformation (aka LIE) harmed my State's image AND is a malicious act intended to harm people such as myself that hold a pro-life position. I have personally experienced hostility against me with specific mention of Dr. Bernard's interviews and her claim of a 10 year old Ohio girl being forced to have an abortion in Bernard's Indiana clinic." *Id.* at p. 8.  The complainant also attached an internet search of news articles about Dr. Bernard. *Id.* at p. 10.

29.     Between July 12, 2022 and July 14, 2002, the Attorney General's Office sent all but one (which was sent in August) of the seven consumer complaints above to Dr. Bernard, each assigned a different file number and case number, advised her that the Attorney General's Office was investigating the complaints, and requested that she provide a written response. Ex. 6.  The D.H. and R.A. complaints, both dated July 11, were assigned separate case numbers and forwarded to Dr. Bernard the next day, on July 12.  Ex. 6 at 3-4, 21-26.

30.     At the hearing on this motion, Ms. Hutchison testified that she did not believe the R.T. complaint filed on July 12, 2022 warranted investigation and stated that "this one we are not investigating[.]" The Attorney General's Office had previously assigned a case number to the R.T. complaint dated July 12, 2022 and sent it to Dr. Bernard with a request for written response. Ex. 6 at pp. 5–10.  Indeed, the Attorney General's Office forwarded the R.T. complaint to Dr. Bernard on July 12, 2022—*the*

*very same day it had been filed*—reflecting that a file number had been opened regarding "R.T. vs. Caitlin Bernard." .  *Id.* at p. 7.

31.     .On July 13, 2022, the Attorney General disclosed the investigations against Dr. Bernard on a national television network.  Bernard Decl. ¶ 8.  He stated: "And then we have this abortion activist acting as a doctor with a history of failing to report. So, we're gathering the information. We're gathering the evidence as we speak, and we're going to fight this to the end, including looking at her licensure. If she failed to report it in Indiana, it's a crime for – to not report, to intentionally not report."  *Id.* (emphasis added).

32.     On July 13, 2022, the Attorney General also made public a letter he sent to Governor Holcomb that repeatedly referenced Dr. Bernard's name and the allegations he made on national television.  See Letter from Todd Rokita, Ind. Att'y Gen., to Eric Holcomb, Ind. Governor (July 13, 2022).

33.     On July 14, 2022, the Attorney General's Office issued a press release "regarding Dr. Caitlin Bernard case," stating that "we are investigating this situation and are waiting for the relevant documents to prove if the abortion and/or the abuse were reported, as Dr. Caitlin Bernard had requirements to do both under Indiana law. The failure to do so constitutes a crime in Indiana, and her behavior could also affect her licensure. Additionally, if a HIPAA violation did occur, that may affect next steps as well. I will not relent in the pursuit of truth."  Bernard Decl. ¶ 9, Ex. I.

34.     On August 19, 2022, the Attorney General's Office issued another press release in response to criticisms of his public statements in which he stated: "We must be critical consumers of information and not just believe anything we read or hear."

(Press Release, Todd Rokita, Ind. Att'y Gen., Attorney General Todd Rokita and team committed to finding the truth (Aug. 19, 2022)).

> **D.    The Attorney General Launches Investigation into Dr. Bernard and Issues Subpoenas for the "Entire Medical File" of Patient.**

35.    On July 15, 2022, the Attorney General's Office issued a Civil Investigative Demand ("CID") to IU Health, Dr. Bernard's employer.  Ex. 10.

36.    On July 22, 2022, IU Health responded to the CID, which asked that the Attorney General withdraw the CID because he has "no jurisdiction to conduct the alleged investigation that serves as the CID's purported justification."  Ex. 11 at p. 1.

37.    On August 23, 2022, the Attorney General issued a subpoena *duces tecum* to IU Health University Hospital requesting:

> The entire medical file, including any and all imaging studies, authorization forms, waivers, consent forms, authorizations for disclosure of the medical records, any written communications between patient/patient's guardian and medical staff, and any notes regarding conversations between patient/patient's guardian and medical staff [for a particular patient number] for the dates June 25, 2022 to July 5, 2022."

Declaration of Kathleen A. DeLaney ("DeLaney Decl."), Ex. A at p. 2.

38.    On August 23, 2022, the Attorney General issued a subpoena to the Indiana University School of Medicine requesting:

> The entire medical file, including any and all imaging studies, authorization forms, waivers, consent forms, authorizations for disclosure of medical records, any written communications between patient/patient's guardian and medical staff, and any notes regarding conversations between patient/patient's guardian and medical staff" for a particular patient number "for the dates June 25, 2022 to July 5, 2022.

DeLaney Decl., Ex. B at p. 2.

**E.    The Attorney General publicly discloses investigations against Dr. Bernard.**

39.    On July 13, 2022, the Attorney General appeared on one national news broadcast, referring to Dr. Bernard as "this abortion activist acting as a doctor with a history of failing to report" and asserting his office was "gathering the evidence as we speak, and we're going to fight this to the end, including looking at her licensure." Bernard Decl. ¶ 8[2]

40.    That same day, the Attorney General made public a letter he sent to the Governor, in which he repeatedly referenced Dr. Bernard by name and made clear that his office was investigating Dr. Bernard.

41.    On July 14, 2022, the Attorney General issued a press release that likewise referenced Dr. Bernard by name and expressly stated she was the subject of an investigation.

42.    In a "Facebook Live" broadcast on September 1, 2022, the Attorney General made more public comments about his investigation of Dr. Bernard.  Bernard Decl. ¶ 10, Ex. J; Ex 16.  Asked "the status of the investigation into Dr. Caitlin Bernard," the Attorney General publicly stated that "[w]e're looking into standards of practice of the professional if they were met.  If any state or federal laws, employee privacy laws, were violated.  And just as background, based on a doctor intentionally reporting her patient's circumstances to the media, my office has undertaken a review of that act in response, again to public concern.  My comments are supported by facts as are all statements from my office."  *Id.*, Ex. J at pp. 4–5; Ex. 16.

---

[2] *Available at* https://www.mediamatters.org/fox-news/after-discrediting-report-10-year-old-ohio-girl-needing-abortion-foxs-jesse-watters-now (including a video and transcript of Attorney General Rokita on Jesse Watters Primetime's July 13, 2022 program).

43.     On September 14, he gave an interview to a local newspaper, stating the investigation of Dr. Bernard was "ongoing" and making other comments about the investigation.[3]

44.     On September 15, 2022, the Attorney General again discussed his investigation into Dr. Bernard in a local media interview.  Kristen Eskow, *Indiana AG Rokita talks enforcement of abortion ban, lawsuits filed*, FOX59 (updated Sept. 18, 2022).[4]

45.     On September 21, 2022, IU Health filed a motion to quash the subpoena under cause number 49D12-2209-MI-032634. Ex. D. Two days later, Dr. Bernard intervened and filed her own motion to quash the subpoena to IU Health. Ex. D.

**F.      Testimony regarding determination of merit before opening investigations into consumer complaints.**

46.     Before investigating, the Licensing Division does not require that complaints be based on personal knowledge.

47.     Before investigating, the Licensing Division does not require that the complaint be based on a consumer transaction.

48.     Hutchison is only aware of two subpoenas for medical records of abortion records issued by the Licensing Division—those issued for the medical records of Dr. Bernard's patient and of Dr. Caldwell's patient.

---

[3] *Available at* https://www.indystar.com/story/news/health/2022/09/14/indiana-attorneygeneral-todd-rokita-office-declines-to-share-info-on-dr-bernard-complaints/69493958007/.
[4] *Available    at*    https://fox59.com/indianapolitics/indiana-ag-rokita-talks-enforcement-of-abortion-ban-lawsuits-filed/.

### G.    Attorney General refers complaint to Medical Licensing Board

49.    On November 30, 2022, while this motion was under advisement following two days of live testimony, the Attorney General's Office filed an administrative complaint with the Medical Licensing Board against Dr. Bernard.

### H.    Evidence and testimony related to Dr. Bernard's experiences following the initiation and public acknowledgment of the investigation against her

50.    The investigations and the public statements made by the Attorney General about these investigations have impacted Dr. Bernard's reputation.  Dr. Bernard has fears for her personal safety and that of her family as a result of the investigations into her practice of medicine.

51.    Dr. Bernard has concerns regarding her patients' privacy as a result of the Attorney General's previous issuing of broad subpoenas seeking the complete medical records and files of Dr Bernard's patient.

52.    Dr. Bernard has had to divert time and resources away from patients to address the Attorney General's and the Director's investigations.

## *II.    FACTS RELATED TO DR. AMY CALDWELL, M.D.*

53.    Dr. Amy Caldwell is an OB/GYN physician licensed to practice medicine in the State of Indiana. Dr. Caldwell is employed by IU Health Physicians and by the Indiana University School of Medicine.  Declaration of Amy Caldwell, M.D. ("Caldwell Decl.") at ¶ 1.

54.    On April 15, 2022, S.D., an Indiana resident, filed a consumer complaint against "PPIN- Georgetown OR (PPG1)."  *See* Caldwell Decl., Ex. A at p.1 ("Who is the Complaint Against?").  The complainant asserted that, based on information she gathered through a "public information request," that "[b]ased on IC 16-34-2 and their

14

website siting [sic] 13 weeks and 6 days, PPIN-Georgetown OR PPGI [wa]s in violation of performing abortions outside that time frame according to the TPR."  *Id.* at p. 2.  For her complaint to be resolved, S.D. requested that "a full investigation of this facility" be conducted.  *Id.*

55.     The Division does not have statutory jurisdiction to investigate complaints against the PPGI facility or hospitals or surgery centers. Employees of the Licensing Division independently renamed the S.D. complaint regarding PPGI and opened an investigation against Dr. Caldwell individually.  Caldwell Decl., Ex. A at p. 1.

56.     On May 26, 2022, the Attorney General, through the Director, sent a letter to Dr. Caldwell attaching the April 15, 2022 complaint submitted by S.D., which the letter now captioned as "*S.D. v. Amy Caldwell.*"  *Id.* at Ex. A at pp. 1, 4–5.  The letter indicated that the Division had opened an investigation, to which it had already assigned a file number, and it requested that Dr. Caldwell provide a written response to the complaint. *Id.*

57.     Dr. Caldwell provided a written response to the Division, in which she explained "[t]hat there was a clerical error in the report[,]" specifically that the procedure did not take place at Planned Parenthood but in fact had taken place at Eskenazi Hospital.  Ex. Y at 18:11-18:25.

58.     After having recast the S.D. complaint to be one against Dr. Caldwell, the Division used the complaint as a basis for issuing at least three subpoenas for the entire medical chart of Dr. Caldwell's patient.  *See* Ex. 7.

59.     On July 22, 2022, the Attorney General, through the Director, issued a subpoena to Dr. Caldwell, for:

All medical records, including, but not limited to intake information, patient charts, tests results (e.g., x-rays and MRIs), treatment recommendations, office visit logs, referrals, nursing notes, doctors notes, medication administration records, and any electronic documentation, including communications records for the patient who received a medical (surgical) procedure to terminate a pregnancy on December 10, 2021 at Eskenazi Hospital, located at 720 Eskenazi Avenue, Indianapolis, IN 46202, from December 3, 2021 to December 17, 2021.

Caldwell Decl. ¶ 4, Ex. B; *see also* Ex. 18 at p. 2.  The cover letter to Dr. Caldwell referenced the S.D. complaint that had been re-named "S.D. v. Dr. Amy Caldwell," with an OAG File Number.  *Id.*

60.    On October 4, 2022, the Attorney General issued a subpoena to Planned Parenthood – Georgetown requesting:

[A]ll medical records, including, but not limited to intake information, patient charts, test results (e.g., x-rays and MRIs), treatment recommendations, office visit logs, referrals, nursing notes, doctor notes, medication administration records, and any electronic documentation, including communication records for the patient associated with TPR SFN: 008086, attached as Exhibit A, who received a medical (surgical) procedure to terminate a pregnancy on December 10, 2021."

Ex. 7, at pp. 11–15.

61.    The Division also served a subpoena duces tecum to Eskenazi Health based on the consumer complaint caption identifying Dr. Caldwell.  S*ee generally* Ex. 19.

62.    On October 12, 2022, Planned Parenthood responded via letter that it had no record of the patient either and indicated that Dr. Caldwell did not perform a second trimester surgical abortion at the Planned Parenthood clinic. Exs. O, P.

63.    On November 16, 2022, seven days after Plaintiffs filed their Motion for Preliminary Injunction, the Attorney General's Office sent Dr. Caldwell's attorney a closing letter for the investigation, signed by Mary L. Hutchison, Section Chief,

Licensing Enforcement, Office of the Indiana Attorney General.  Ex. 19; Ex. Q; Ex. V at 35–36; see also Ex. Y.

64.     The closing letter stated that it "serve[d] as a Warning" to Dr. Bernard regarding the investigation, and that "we are closing this matter with a warning and directive moving forward to accurately and timely comply with Indiana law."

**A.     Evidence and testimony related to Dr. Caldwell's experiences following the initiation of the investigation against her**

65.     Dr. Caldwell has concerns that the Division improperly altered the April 15, 2022 complaint against her to gain jurisdiction and may be further harmed if nothing prevents the Defendants from repeating the conduct here, where Defendants rewrote the April 15, 2022 complaint to be against Dr. Caldwell without the consent of the actual complainant.  Ex. Y at 30:5-31:24, 32:7-32:11.

66.     Dr. Caldwell maintains that the investigation impacted her ability to practice medicine without fear of prosecution or reputational harm, and also disrupts Dr. Caldwell's practice by diverting time and resources away from patient care.  Caldwell Decl. ¶¶ 6–7.

67.     Having seen the Attorney General publicly discuss investigations and allegations against Dr. Bernard, Dr. Caldwell is now "fearful" that he will publicly mention an investigation of her.  Ex. Y at 34:14-34:17.

68.     Any findings of fact above which are more appropriately conclusions of law shall be so deemed and incorporated into the conclusions of law section.

**CONCLUSIONS OF LAW**

17

## *I.      SPECIFIC RELIEF SOUGHT BY PLAINTIFFS*

69.    As part of their motion for preliminary injunction, Plaintiffs specifically request that Defendants be enjoined from the following:

a. continuing to investigate any of the pending consumer complaints against Plaintiffs,

b. opening new investigations of Plaintiffs under Title 25 of the Indiana Code based on any consumer complaint as to which an initial determination of merit has not been made or were an allegation is clearly meritless based on available information,

c. publicly disclosing the existence, nature or status of any consumer complaint concerning, or any investigation of Plaintiffs under Title 25 of the Indiana Code, except as provided in IC 25-1-7-10;

d. from referring any of the consumer complaints against Dr. Bernard to the MLB, recommending that the MLB otherwise pursue disciplinary action against Dr. Bernard, or prosecuting any the complaints against Dr. Bernard before the Medical Licensing Board ("MLB") pursuant to Ind. Code Ann. § 25-1-7-7 or § 25-1-7-5(b)(1) (West); and

e. putting the "warning letter" or other mention of the "warning" in Dr. Caldwell's file;

f. referring Dr. Caldwell  to the MLB for further proceedings based on the complaint or arising out of the events underlying that complaint; and

g. prosecuting the Administrative Complaint, Case Number 2022 MLB 0024, filed against Dr. Bernard on November 30, 2022 before the Medical Licensing Board of Indiana, and Defendants must withdraw the Administrative Complaint, Case Number 2022 MLB 0024, filed against Dr. Bernard on November 30, 2022 before the Medical Licensing Board of Indiana.

## *III.     CHALLENGES TO PLAINTIFFS' STANDING TO SEEK INJUNCTION*

70.    Before addressing the preliminary injunction factors, the Court will first address Defendants' arguments related to Plaintiffs' standing to bring this lawsuit and motion for preliminary injunction.

**A.    Standing arguments with respect to Dr. Caldwell**

71.    With respect to Dr. Caldwell, Defendants argue Dr. Caldwell's request for

a preliminary injunction is moot because the CPD investigation into her is closed. When

a court is "unable to provide effective relief upon an issue, the issue is deemed moot."

*Larkin v. State*, 43 N.E.3d 1281, 1286 (Ind. Ct. App. 2015) (cleaned up). Because the

CPD director's investigation has been completed and closed, Ex. Q; Ex. V at 35–36;

*see also* Ex. Y, Defendants argue that Dr. Caldwell can no longer seek any declaratory

relief because there is no longer any inquiry to which such relief that could be granted to

Dr. Caldwell on her claims.

72.    In response, Plaintiffs argue that Dr. Caldwell is also  seeking prospective

relief to halt *ultra vires* conduct of the Attorney General and the Director. Plaintiffs

maintain the Attorney General and Director could still open investigations based on

meritless consumer complaints against Dr. Caldwell as they have done previously.

Plaintiffs also raise concerns about the "warning" letter the Division issued to Dr.

Caldwell being maintained in her file and potentially used against her if the Division

were to receive another complaint about Dr. Caldwell. Plaintiffs conclude, therefore, that

Dr. Caldwell's claim for injunctive and declaratory relief is not moot and she retains

standing to challenge Defendants' *ultra vires* conduct.

73.    Upon review, the Court finds that Dr. Caldwell presently lacks standing to

move forward with her claims because the evidence establishes there are no active

investigations against her and thus, she is not presently subject to the harms from

Defendants for which she seeks declaratory and injunctive relief.

74.    "[A] plaintiff must show evidence of three elements to establish standing:

the plaintiff has suffered an 'injury in fact'—an invasion of a legally protected interest

that is 'concrete and particularized' and '"actual or imminent, not 'conjectural' or 'hypothetical.'" *Hulse v. Ind. State Fair Bd.*, 94 N.E.3d 726, 730-31 (Ind. Ct. App. 2018) (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

75.    The undisputed facts show that Dr. Caldwell cannot seek present injunctive relief because there is no active investigation against her that presents an injury in fact for which the Court could enjoin Defendants from pursuing as sought in Plaintiffs' Complaint. Any relief which Dr. Caldwell could seek now would be solely prospective.

76.    To establish standing to seek prospective relief, a plaintiff must establish that she is in immediate danger of sustaining a direct injury "as the result of the challenged official conduct, and [that] the injury or threat of injury [is] both real and immediate." *Ind. Family Inst. Inc. v. City of Carmel*, 155 N.E.3d 1209, 1219 n.5 (Ind. Ct. App. 2020) (*citing City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) (internal quotations omitted)).

77.    Dr. Caldwell has not made any showing that  that she will imminently suffer a concrete or particularized injury by Defendants. There is no present investigation against her, and there was no evidence presented suggesting that Dr. Caldwell would the subject of any future complaints. In fact, the timeline of events shows that prospective relief is not necessary in Dr. Caldwell's case. The Defendants opened up an investigation, and after collecting sufficient facts about the circumstances of the alleged complaint, ultimately dismissed the investigation with no further action

being taken against Dr. Caldwell. The Court finds this is the process working as it should.

78.     As for the "warning" letter Dr Caldwell has raised concerns about, the Court finds this potential harm is too attenuated to meet the required showing that Dr. Caldwell will imminently suffer any particularized injury from Defendants to grant standing. First, Dr. Caldwell is not presently subject to any consumer complaints, so the alleged risk posed by the letter, that it would be used somehow against Dr. Caldwell in a subsequent proceeding, cannot say to be "imminent" since there is no certainty that another complaint will even be filed to prompt an investigation.

79.     Even if Defendants were to include the "warning" letter in any subsequent investigation of Dr. Caldwell for some unknown complaint field in the near or distant future, it is unclear what effect the inclusion of that letter would have. This Court notes that there is no Indiana law enacted by the Indiana General Assembly which permits the Office of the Attorney General to send a "warning" letter which can later be legally used against Dr. Caldwell. Furthermore, the warning has no legal significance because the Defendants dismissed the compliant against Dr. Caldwell finding no wrongdoing.

80.     The evidence presented by Plaintiffs does raise serious concerns about how the Division unilaterally modified the consumer complaint by changing the subject of the complaint from PPGI to Dr. Caldwell that prompted the investigation. The licensing investigations statute does not express any authority to the Division to make such alterations to the complaints it receives. In fact, the licensing investigations statute expressly forbids "employees of the attorney general's office acting in their official capacity" from filing consumer complaints. Ind. Code § 25-1-7-4.

81.     An employee of the Attorney General, CPD, and Division altering a consumer complaint to change the subject to Dr. Caldwell after receiving the complaint appears precariously close to actually filing that complaint in contravention of the licensing investigations statute.

82.     The Court need not review the events that lead to the investigation against Dr. Caldwell further since the matter has been closed and the Division has deemed there to be insufficient evidence to refer the complaint about Dr. Caldwell to the Medical Licensing Board, so the matter is closed.

83.     The Court finds that the Defendants and employees of the Attorney General handling consumer complaints are required to process them in compliance with Indiana law.

84.     For these reasons, the Court DENIES AS MOOT Dr. Caldwell's Motion for Preliminary Injunction.

**B.    Standing arguments with respect to Dr. Bernard**

85.     Defendants also raise numerous arguments to challenge Dr. Bernard's standing to bring this motion seeking to challenge the release of her patient's records by IU Health and to enjoin the CPD from engaging in any other potential future investigations or even continuing any active investigations into her.

86.     Defendants argue that Dr. Bernard does not have standing to challenge the revised subpoena issued to IU Health or the investigation in general because she does not have a legitimate privacy interest in the records. Instead, Defendants maintain her sole interest is in avoiding investigation, which would not be a legitimate interest, *S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 742 (1984).

22

87.     Defendants also argue that Dr. Bernard lacks a private right of action under the licensure investigations statute to bring suit for injunctive or declaratory relief on the basis that Defendants violated the statute. *See, e.g., Price v. Indiana Dep't of Child Servs.*, 63 N.E.3d 16, 21–22 (Ind. Ct. App. 2016), *trans. granted, vacated, summarily aff'd in relevant part*, 80 N.E.3d 170, 174 (Ind. 2017 ); *Lockett v. Planned Parenthood of Indiana, Inc.*, 42 N.E.3d 119 , 126–27 (Ind. Ct. App. 2015), *trans. denied*. Defendants argue that Indiana Code chapter 25-1-7 does not contain an express right of action and does not create any privately enforceable right for which Dr. Bernard can bring suit.

88.     Defendants further argue that Dr. Bernard's Complaint should be dismissed pursuant to Ind. Trial Rule 12(B)(8) because Dr. Bernard's suit is also duplicative of the earlier-filed subpoena litigation and thus barred.  T.R. 12(B)(8) is triggered when "the parties, subject matter, and remedies of the competing actions are precisely the same, and it also applies when they are only substantially the same." *Kindred v. Indiana Dep't of Child Servs.*, 136 N.E.3d 284, 290 (Ind. Ct. App. 2019 ), *trans. denied* (citation omitted). Defendants contend that since. Dr. Bernard is already asserting substantially the same arguments in the subpoena litigation, Ex. H, which predates this action, Ex. D, and the outcome of this suit would invariably affect the outcome of the subpoena litigation, Dr. Bernard's suit is thus barred by T.R. 12(B)(8).

89.     In response, Dr. Bernard contends that Defendants' arguments for dismissing Dr. Bernard's claims must fail.  .

90.     First. Dr. Bernard points out that Defendants have previously sought dismissal under T.R. 12(B)(8), and the Court has already rejected this argument. *See*

(November 15, 2022 Order on Whether or Not This Court Has Jurisdiction to Preside Over the Plaintiffs' Request for Preliminary Injunction at p. 5). In the order setting the preliminary injunction hearing, the Court rejected this argument, holding that "this matter and the lawsuit filed by IU health. . . are not substantially similar nor do they seek the same or substantially the same remedies." *Id.* at 6-7.

91.     Second, with respect to Defendants' private right of action argument under Ind. Code § 25-1-7 *et seq.*  Dr. Bernard notes she is bringing her claims under the Indiana Declaratory Judgment Act  and not the licensure investigations statute. *See* Compl. ¶¶ 91, 102, 111. Dr. Bernard maintains that under Indiana law, a declaratory judgment action is the proper procedural vehicle to contest the Defendants' conduct and to determine "the legal right, the legal status, or the legal relationship of parties having adverse interests." *Wells Fargo Bank, N.A. v. Tippecanoe Assocs.*, LLC, 923 N.E.2d 423, 428 (Ind. Ct. App. 2010).

92.     Upon review, the Court disagrees with Defendants and finds that Dr. Bernard has an adequate basis to proceed with her claims under the Uniform Declaratory Judgment Act.

93.     Starting with Defendants' T.R. 12(B)(8) argument, the Court again rejects Defendants' argument as it did in its November 15, 2022 Order. The Court finds that the relief in both cases is not substantially similar and incorporates its prior findings on that issue into this order.

94.     As for Defendants' private right of action argument, the Court agrees with Plaintiffs that whether the investigation statute has a private right of action is irrelevant since Plaintiffs are bringing their claims under the Uniform Declaratory Judgment Act.

24

95.     Ind. Code § 34-14-1-2, taken from the Declaratory Judgment Act, provides:

> Any person . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

96.     As clarified by the Indiana Supreme Court recently, a person seeking a declaratory judgment with respect to the application of a statute must make these showings: "(1) [they are] a 'person'; (2) [their]"rights, status, or other legal relations are affected by a statute"; and (3) [they are] questioning the construction or validity of that statute. *Holcomb v. Bray*, 187 N.E.3d 1268, 1284 (Ind. 2022) (citations omitted).

97.     Here, the Court finds Dr. Bernard meets all three factors. She is a "person" as defined in the Declaratory Judgment Act. Her rights are being affected by the licensing investigations statute, and she is questioning the construction of that statute, i.e., whether Defendants' conduct has violated that statute.

98.     Dr. Bernard's interests  includes challenges to subpoenas for her patients' entire medical file. Dr. Bernard can "raise a claim on behalf of a third party if [Dr. Bernard] can demonstrate that [s]he has suffered a concrete, redressable injury, that [s]he has a close relation with the third party, and that there exists some hindrance to the third party's ability to protect [their] own interests." *Osmulski v. Becze*, 638 N.E.2d 828, 833-34 (Ind. Ct. App. 1994). The Court has already found that Dr. Bernard has suffered an injury. As for the ability of her patients to protect their interests, Indiana courts have previously found minors and victims of sexual abuse have privacy concerns that healthcare providers such as Dr. Bernard are uniquely positioned to protect. *See*

*Planned Parenthood v. Carter,* 854 N.E.2d 853, 870 (Ind. Ct. App. 2006). The Court

finds that Dr. Bernard's interest in the privacy of her patients confers her standing to

challenge subpoenas into their records on their behalf.

99.    The Court, therefore,  finds that Dr. Bernard has pleaded a sufficient basis

for standing to bring her claims through the Declaratory Judgment Act.

### IV.    ANALYSIS OF PRELIMINARY INJUNCTION FACTORS

#### A.    Standards on Injunctive Relief

100.    The Court grants preliminary injunctive relief pursuant Ind. Trial Rule 65

when the moving party demonstrates by the greater weight of the evidence that:  (1) the

remedy at law is inadequate and the plaintiff will suffer irreparable harm pending

resolution of the action; (2) the plaintiff is reasonably likely to prevail on the merits; (3)

the threatened injury to the plaintiff if an injunction is denied outweighs the threatened

harm to the adverse party if the injunction is granted; and (4) the public interest will be

disserved if injunctive relief is not granted.  *See Barlow v. Sipes*, 744 N.E.2d 1, 5 (Ind.

Ct. App. 2001); *City of Gary v. Mitchell*, 843 N.E.2d 929, 933 (Ind. Ct. App. 2006);

*Norlund v. Faust*, 675 N.E.2d 1142, 1149 (Ind. Ct. App. 1997), *decision clarified on

denial of reh'g*, 678 N.E.2d 421 (Ind. Ct. App. 1997); *see also* Ind. Code § 34-26-1-5

(statutory requirements for obtaining pre-judgment injunction).

101.    At the outset, the Court reiterates that this order has no bearing on the

ultimate issues in this case. This is a preliminary order which may be revisited by the

newly-selected sitting judge[5] following additional offerings of evidence and subsequent

proceedings.

---

[5] Defendants filed a Motion for Change of Judge on November 10, 2022. The new judge will take this case at the conclusion of these emergency proceedings.

**B.      Separation of Powers**

102.     Before proceeding on the analysis of the preliminary injunction factors, the

Court wishes to first ground its analysis within prior Indiana caselaw where private

entities have previously sought to enjoin activities by government agencies.

103.     Article 3, Section 1 of the Indiana Constitution states: "The powers of the

Government are divided into three separate departments; the Legislative, the Executive

including the Administrative, and the Judicial: and no person, charged with official duties

under one of these departments, shall exercise any of the functions of another, except

as this Constitution expressly provided."

104.     "The separation of powers doctrine recognizes that each branch of the

government has specific duties and powers that may not be usurped or infringed upon

by the other branches of government." *Woolley v. Washington Twp. of Marion County

Small Claims Court*, 804 N.E.2d 761, 765-66 (Ind. Ct. App. 2004).

105.     "Our supreme court has held repeatedly that courts should not

intermeddle with the internal functions of either the Executive or Legislative branches of

Government." *Planned Parenthood v. Carter*, 854 N.E.2d 853, 864 (Ind. Ct. App. 2006)

(citing *Wooley*, 804 N.E.2d  at 766).

106.     In *Woolley*, the Court of Appeals determined that it did not violate the

separation of powers doctrine for a trial court to enter a preliminary injunction against a

division of the Indiana Attorney General's Office to enjoin the division from taking

actions outside of those specifically granted to that division by the General Assembly.

854 N.E.2d at 859, 864.

107.     The *Carter* case is highly instructive to the present proceeding. The *Carter*

Court noted that the trial court's role in the matter was to assist in maintaining the

27

appropriate balance between the branches of government. 854 N.E.2d at 864 (citing *Wilmont v. City of S. Bend*, 221 Ind. 538, 541-42, 48 N.E.2d 649, 650 (1943) ("To maintain the proper balance between the departments of government, the courts have power to confine administrative agencies to their lawful jurisdictions.")).

108.    The Court of Appeals in *Carter* further distinguished between a trial court permissibly issuing an injunction against an agency to rein it in from acting outside of its statutory bounds verses a trial court intervening in an active investigation or prosecution, which would be afforded far less deference. 854 N.E.2d at 864 (comparing the *Carter* case with the United States Supreme Court's decision in  *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), which overturned a federal court's injunction staying a state criminal proceeding).

109.    The Court finds this present proceeding analogous to the circumstances in *Carter*. This matter similarly involves a private person, Dr. Bernard, seeking an injunction against a division of the Indiana Attorney General's Office, the Consumer Protection Division, to prevent that division from acting outside its legislative authority. Dr. Bernard further seeks the same relief against the Attorney General and the Director of the CPD.  The Court, therefore, finds that this motion falls within the Court's acceptable oversight of state administrative agencies that aligns with the separation of powers doctrine.

### C.    Factor 1- Irreparable Harm and Inadequacy of Legal Remedy.

110.    "Irreparable harm" is considered to be "that harm which cannot be compensated for through damages upon resolution of the underlying action." *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 912 (Ind. Ct. App. 2011). This typically requires movants to establish that they could not be adequately compensated through a legal or

monetary remedy at the conclusion of the case and instead must be immediately granted extraordinary injunctive relief. *See Barlow v. Sipes*, 744 N.E.2d 1, 6 (Ind. Ct. App. 2001).

111.    When a motion seeks to enjoin an action that would violate a law or statute, however,  the act is considered to case *per se* irreparable harm. *Short on Cash.net of New Castle, Inc. v. Dep't of Fin. Insts.*, 811 N.E.2d 819, 822.  Should the Court find that the nonmovant has committed such an unlawful act, Indiana law deems the public interest in stopping the activity so great that "the injunction should issue regardless of whether the plaintiff has actually incurred irreparable harm or whether the plaintiff will suffer greater injury than the defendant. *Id*  at 823. In other words, where a Court finds that denying a preliminary injunction would permit the nonmovant to continue committing unlawful conduct, the Court need not consider the remaining preliminary injunction factors and instead must issue the relief sought by the movant.

112.    Dr. Bernard argues that Defendants have violated the licensing investigations statute, Ind. Code § 25-1-7 *et seq.*, numerous times in their investigation of the consumer complaints against Dr. Bernard, committing irreparable harm *per se.*

113.    Dr. Bernard cites two primary violations of the licensing investigations statute.

114.    First, Dr. Bernard contends that the Director failed to make a determination of whether the relevant  complaints against Dr. Bernard are meritless before starting investigations into Dr. Bernard. Under the licensing investigations statute Ind. Code § 25-1-7-5(b) (1), the Director must review each consumer complaint to determine whether they have merit before the Division may open any investigation.

115.    Dr. Bernard argues that the Director could not have made any determination regarding the consumer complaints against her because the complaints are patently meritless, yet the Director still moved to open investigation files on all of them. Dr. Bernard. highlights that most of the complaints come from outside Indiana, suggesting that they come from persons who were not her patients and  would not have any personal knowledge of her alleged failures to report or breaches of patient confidentiality of which they are complaining. She also notes that several of the complaints lacked necessary information asked for by the Attorney General's Complaint Form.

116.    She further notes that testimony from Ms. Hutchinson, head of the Division, indicated that at least one of the complaints which were investigated should not have been and instead should have been deemed meritless on their face.

117.    In sum, Dr. Bernard contends the Division opened investigations into her conduct without first deeming whether the consumer complaints against her had any merit as required by statute.

118.    Second, Dr. Bernard argues that Defendants have breached their statutory duty to maintain confidentiality of the investigations against her as required by the licensing investigations statute. Ind. Code § 25-1-7-10(a) requires that the Division keep the investigations into Dr. Bernard confidential until they have been referred for prosecution by the Attorney General to the Medical Licensing Board.

119.    Prior to the Attorney General's recent referral, Dr. Bernard points out that the Attorney General had discussed the investigations specifically referring to Dr. Bernard and the potential loss of her medical license in several high profile public

appearances. She contends that these appearances constitute clear violations of the

licensing investigations statute's confidentiality provision.

120.    In sum, Dr. Bernard maintains that Defendants have committed a number

of  "unlawful act[s]" which "constitute[] *per se* irreparable harm for purposes of the

preliminary injunction analysis."  *Clay Twp. of Hamilton Cnty. ex rel. Hagan v. Clay Twp.*

*Reg'l Waste Dist.*, 838 N.E.2d 1054, 1063 (Ind. Ct. App. 2005) (quoting *Short On*

*Cash.Net of New Castle, Inc. v. Dep't of Fin. Insts.*, 811 N.E.2d 819, 823 (Ind. Ct. App.

2004)), and thus should be found to have committed irreparable harm *per se*  against

her.

121.    As an alternative argument to the *per se* rule for irreparable harm, Dr.

Bernard argues that the cumulative designations still demonstrate that she has suffered

irreparable injury caused by Defendants' conduct for which there is no adequate legal

remedy.

122.     Dr. Bernard argues that Defendants' investigations into her based on

meritless consumer complaints have proven harmful by distracting her from serving her

patients, causing her to fear whether she will be able to continue her medical practices,

and to fear for the personal safety of her and her family.  She has also argued that the

public statements on the investigations into Dr. Bernard have caused reputational harm

and threaten her business as a healthcare provider.

123.    In response, Defendants contend that Dr. Bernard has not met her burden

to establish irreparable harm.

124.    Defendants first argue that the *per se* rule cannot be applied in this case

since the *per se* rule may be employed only "for clear, uncontested unlawful conduct.".

*Indiana Family & Soc. Servs. Admin. v. Walgreen Co.*, 769 N.E.2d 158, 162 (Ind. 2002). Defendants contend that the Division's investigations do not constitute clearly unlawful conduct that would constitute irreparable harm *per se.*

125.   Defendants dispute Dr. Bernard's claims that the Attorney General's public comments have irreparably harmed her because she has willingly put herself in the public spotlight, so any threats or harms to her reputation cannot be derived solely from the Attorney General's public comments. Furthermore, Defendants argue that Dr. Bernard made the investigations a public matter herself by filing this lawsuit in open court.

126.   Defendants additionally argued that the Division has conducted their investigations within the scope of their legal authority.

127.   Upon review, the Court finds that Dr. Bernard has not met her burden to show  irreparable harm for the purposes of a preliminary injunction as to the investigation of the consumer complaints but does find Dr. Bernard has met her burden to show irreparable harm based on the Attorney General's public statements regarding investigations which by Indiana law must have remained confidential until the complaint was filed with the Medical Licensing Board.

128.   The Court further finds that the public disclosures by the Attorney General regarding the investigations prior to the Attorney General's recent referral of the matter to the Medical Licensing Board constituted irreparable harm *per se* and that the Attorney General clearly violated Indiana law when discussing the confidential investigations in the media. Because the Attorney General had not referred the matter to the Medical Licensing Board at the time the public disclosures were initially made,

the Court finds that the Attorney General's public comments which were designated as part of the two-day hearing on this motion violated the licensing investigations statute's confidentiality provision.

129.    As for Dr. Bernard's arguments for irreparable harm and irreparable harm *per se* with respect to the manner in which the Division was carrying out the investigations, the Court finds that Dr. Bernard has not similarly met her burden.

130.    First, the Court finds that Plaintiffs have not satisfactory established a clear indication of unlawful conduct in the manner which the Division was carrying out its investigations to support a finding of irreparable harm *per se*.

131.    Ind. Code § 25-1-7-5 permits the Division to investigate consumer complaints and, as part of that investigation, to subpoena witnesses. Plaintiffs have taken issue with the scope of the subpoenas and the apparent lack of notice given to Dr. Bernard regarding subpoenas of their patients' records, but there is nothing in the licensing investigations statute that places any apparent limits on the scope of discovery or requires that the subjects of  complaints be alerted of any subpoenas the Division deems necessary to issue.  There are, of course, limitations that have been determined through case law, such as the Indiana Court of Appeals' ruling in the *Carter* case, which held that unlimited subpoenas for minors' medical records were not permitted by the Office of the Attorney General in a Medicaid fraud investigation. *Carter*, 854 N.E.2d 853, 883. Limitations as determined in opinions such as *Carter*, however, do not establish that the mere act of issuing an overly-broad subpoena constitutes such unlawful conduct as to show irreparable harm *per se*.

132.    As for Dr. Bernard's argument that the consumer complaints should have been rejected out of hand as meritless for a number of issues including deficient information and apparent lack of personal knowledge or relationship with Dr. Bernard, the Court too finds that this conduct is not so unlawful as to determine that Dr. Bernard has suffered irreparable harm *per se.* Dr. Bernard has have inferred from the nature of the complaints that the Division made no determination as to their merit. Defendants' designations and live testimony, however, suggests the that the Division did at least deem most of the consumer complaints against Dr. Bernard were meritorious, even if Ms. Hutchinson did subsequently testify that one of them should have been rejected immediately.

133.    Dr. Bernard has argued that the Division opening investigations on all of the complaints, even those from out of state persons, shows they could not have actually determined whether they were first meritorious, but that assumption does not mean that Defendants did not comply with applicable laws. The only express requirements for the consumer complaint stated in the  in the licensing investigations statute  are that they 1) be written and 2) signed by complainant. Ind. Code § 25-1-7-4. Any person is able to file a consumer complaint for review by the Division. *Id.* There is no personal relationship or personal knowledge of specific events required by the statute before a complaint can be filed, and any person is permitted to file a consumer complaint. *Id.*

134.    Finally, reading the subsections of Ind. Code § 25-1-7-5 in full suggests that the Division may actually make a full investigation before coming to a determination on merit. The statute provides that the Director does not need to immediately make a

34

determination of the merits of the complaint; the Director just needs to make an initial determination. *Id.* -5(b)(1). Once the Director has made that determination, the meritorious complaint is to be submitted to the proper licensing board. *Id.* The same statute also allows for the Director to conduct limited investigations on complaints received. *Id.* at –5(b)(4). If a complaint is deemed meritorious, then it must then be submitted to the proper licensing board. Any investigation as permitted by subsection 5(b)(4) would most likely have to occur prior to the determination of merit. If the Director were to have to immediate determine whether a complaint was meritorious, the Director would not have the opportunity to investigate because either a) the meritorious complaint would be referred to the applicable licensing board or b) the non-meritorious complaint would be rejected. Here, the Director is permitted to first engage in the investigations prior to making a determination under the statute.

135.    The Court, therefore, finds the Division's conduct falls within the permitted bounds of the licensing investigations statute in this case. While some of the consumer complaints appeared more meritorious than others on their face, the statute permits the Director and Division to investigate them all the same before coming to any conclusion. While Dr. Bernard has raised concerns about the conduct of the investigations, it is beyond the scope of the Court's irreparable harm *per se* analysis to determine whether the particular tactics employed by the Division in the investigations against Dr. Bernard should be permitted since, unlike the confidentiality issues, *see infra*, there are no express statutes specifically prohibiting the Director and Division from relying on weak consumer complaints taking months of time to complete their investigations before making a determination on merit.

136.    As for Dr. Bernard's alternative argument that the Defendants' investigations have caused Dr. Bernard irreparable harm for the purposes of justifying injunctive relief,  the Court does not find that Dr. Bernard has met her burden that she has suffered irreparable harm from the investigations into the consumer complaints by the Division. Thus, this Court finds that Dr. Bernard has not met her burden to show irreparable harm arising from Defendants' carrying out of the ongoing investigations of the consumer complaints filed against Dr. Bernard.

137.    In contrast, Dr. Bernard's concerns over the Attorney General's breaches of confidentiality requirements under the licensing investigations statute do warrant a finding of irreparable harm *per se*; however, in light of the Attorney General's recent referrals to the Medical Licensing Board, any further public comments would not constitute irreparable harm *per se*.

138.    Ind. Code Ann. § 25-1-7-10(a) provides "that all complaints and information pertaining to the complaints shall be held in strict confidence until the attorney general files notice with the board of the attorney general's intent to prosecute the licensee." The Attorney General had not referred the claims to the Medical Licensing Board  or initiated prosecution of Dr. Bernard when he made public statements on the investigations prior to November 30, 2022. Such public disclosures prior to that date then were clear violations of Indiana law.

139.    Defendants have argued that Dr. Bernard was no longer entitled to confidentiality under the statute as of July 1, 2022 since Dr. Bernard has made her own public comments about the underlying event and the subsequent investigation. The Court disagrees with Defendants on this point for two reasons.

140.    First, there is nowhere in the statute that stages the attorney general's

obligation to keep the investigation confidential is relieved when the subject of the

investigation makes it public.

141.    Second, the licensing investigations statute specifies when limited

disclosures are authorized and by whom. Ind. Code § 25-1-7-10(b) states that:

> **A person in the employ of the office of attorney general**, the Indiana
> professional licensing agency, **or any person not a party to the
> complaint** may not disclose or further a disclosure of information
> concerning the complaint unless the disclosure is:
>     (1) required under law;
>     (2) required for the advancement of an investigation; or
>     (3) made to a law enforcement agency that has jurisdiction or is
>     reasonably believed to have jurisdiction over a person or matter
>     involved in the complaint.

(Emphasis added). Ind. Code § 25-1-7-10(b) specifies that members of the Attorney

General's Office may not disclose any information about the investigation other than in

the limited circumstances set forth in the subsection, which Defendants have not

established were the reasons behind the Attorney General's public disclosures that

relate to this matter. No one from the office of the Attorney General, therefore, should

have made any public disclosures during an investigation.

142.    The provision states that it applies to anyone that is **not a party to the

complaint**. As a party to the complaint, therefore, Dr. Bernard is not required under law

to maintain confidentiality about her investigation under the statute. Rather than Dr.

Bernard's revelations about the investigation constituting any sort of waiver then, the

Court finds that the licensing investigations statute allows her to make public statements

while still obligating the office of attorney general to maintain confidentiality.  However,

the Court finds that Dr. Bernard comments to the IndyStar reporter had no bearing on

37

the issue of the Attorney General maintaining confidentially as her comments to the IndyStar reporter were made prior to the filling of any complaints with the CPD.

143.   The public statements made by the Attorney General prior to the referral of the matter to the Medical Licensing Board, therefore, are clearly unlawful breaches of the licensing investigations statute's requirement that employees of the Attorney General's Office maintain confidentiality over pending investigations until they are so referred to prosecution.

144.   Having established that the Attorney General has referred the matter to the Medical Licensing Board on November 30, 2022, however, the Court finds there is no prospective irreparable harm *per se* since making public comments about the investigation into Dr. Bernard is no longer prohibited by statute.

145.   Despite there being no showing of further irreparable harm *per se*, the Court finds that Dr. Bernard's concerns about reputational and professional harm as a result of the Attorney General's comments do constitute irreparable harm for the purposes of this preliminary injunction motion.

146.   Having found that Dr. Bernard has met her burden on the irreparable harm factor as to the breaches committed by the Attorney General as to the confidentiality of the investigation,  the Court will address the remaining preliminary injunction factors.

**D.    Factor 2- Likelihood of Success On The Merits.**

147.   The Court next addresses Dr. Bernard's likelihood of success elements of their motion for injunctive relief.

148.   In order to meet their burden to show a likelihood of success on the merits of their claim, Plaintiffs must "establish[] a prima facie case." *Coates v. Heat Wagons, Inc.*, 942 N.E.2d 905, 911 (Ind. Ct. App. 2011). Plaintiffs are not required to show that

they are entitled to relief as a matter of law in order to obtain preliminary injunctive relief. *Abercrombie & Fitch Stores, Inc. v. Simon Prop. Grp., L.P.*, 160 N.E.3d 1103, 1109 (Ind. Ct. App. 2020).

> **1.      Whether Dr. Bernard has a prima facie case that Defendants violated  and will continue to violate statutory confidentiality requirements**

149.    The Court first addresses Dr. Bernard's motion with respect to the confidentiality provisions of the licensing investigations statute.

150.    As discussed above, the Court finds that Dr. Bernard has shown that the Attorney General did breach the confidentiality requirements through the Attorney General's public statements prior to a referral to the Medical Licensing Board.

151.    Because the Attorney General's Office has referred their investigation of Dr. Bernard to the Medial Licensing Board for prosecution, however, Defendants are no longer bound by the confidentiality statute.

152.    Because there is now no statutory basis for Dr. Bernard to compel the Attorney from making future public comments with respect to the prosecution of her, the Court finds that Dr. Bernard cannot establish the prima facie case that the Defendants remain in violation of the confidentiality provision under the licensing investigations statute. The Court, therefore, finds that Dr. Bernard has failed to meet her burden on the likelihood do success preliminary injunction element with respect to this issue.

> **2.      Whether Defendants failed to make an initial determination of merit before investigating a consumer complaint.**

153.    While the Court has found that Dr. Bernard failed to meet her burden on the irreparable harm element with respect to this issue, the Court will briefly address the arguments on the likelihood of success which were presented to the Court.

154.    Dr. Bernard argues that Defendants failed to make any initial determination on the merits of the complaints before opening an investigation.

155.    As stated previously, the Director of the Consumer Protection Division "shall make an initial determination as to the merit of each complaint.  A copy of a complaint having merit shall be submitted to the board having jurisdiction over the licensee's regulated occupation, that board thereby acquiring jurisdiction over the matter except as otherwise provided in this chapter." Ind. Code § 25-1-7-5(b)(1).

156.    Dr. Bernard argues that the Director must make this determination prior to opening any investigation into the consumer complaint at issue, but as discussed in the previous section, the Court does not agree with that reading of the statute.

157.    The Indiana Supreme Court has consistently confirmed that "[t]he best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute." *Chambliss v. State*, 746 N.E.2d 73 (Ind. 2001). Courts are required to construe statutes "together and avoid invalidating statutes or portions thereof." *Amwest Sur. Ins. Co. v. State (In re The Bond Forfeiture)*, 750 N.E.2d 865, 870 (Ind. Ct. App. 2001).

158.    A plain reading of the statute says that once the Director makes a determination on the merits of the complaint, it is to be referred to the appropriate licensing body. The same statute allows the Director to "investigate any written complaint against a licensee" and "to subpoena witnesses and to send for and compel the production of books, records, papers, and documents for the furtherance of any investigation under this chapter." Ind. Code § 25-1-7-5(b)(4-5). If the Director is to refer the consumer complaint upon finding it meritorious, a harmonious reading of the statute

requires the Court to construe the statute to allow the Director to engage in investigation prior to such a determination of merit.

159.    Dr. Bernard's argument that the Defendants failed to make determinations on merits prior to launching investigations must fail because the statute expressly authorizes Defendants to conduct their investigations prior to an initial determination of the merits, otherwise the Director would be obligated to refer the complaint before having an opportunity to conduct an investigation.

160.    Because the statutes expressly permit the Defendants to investigate prior to making any determination on merits, the Court finds that Dr. Bernard has failed establish a prima facie case for declaratory relief necessary to meet her burden on the likelihood of success element with respect to this issue.

### 3.    *Whether the complaints against Dr. Bernard lack merit*

161.    Dr. Bernard argues that, even if the complaints could not be considered meritless initially, there is a prima facie case that they should now be considered meritless.

162.    Dr. Bernard notes note that Defendants' have been investigating her largely for three primary violations: (1) the requirement to file a TPR after providing abortion care; (2) the requirement to report suspected child abuse; and (3) federal and state privacy laws.

163.    She has asked for injunctive relief to suspend the investigations due to the frivolous nature of these complaints and to preclude Defendants from pursuing future complaints regarding the same subject matter over Dr. Bernard.

164.    Over the course of the hearing days, a substantial amount of evidence and testimony was presented on the merits of the claims against Dr. Bernard.

41

165.    Due to the recent referral of the investigations to the Medial Licensing Board by the Attorney General, however, the Court no longer has jurisdiction to make any factual findings over these ultimate questions, even for the purposes of a preliminary order.

166.    Once a complaint is deemed meritorious and has been submitted to the licensing board, that board is deemed to have jurisdiction over the matter. Ind. Code § 25-1-7-5(b)(1).

167.    Since these arguments go to validity of the consumer complaints, the Court finds any determination of such to be properly within the jurisdiction of the Medical Licensing Board at this time.

168.    Because the Court cannot assess whether Dr. Bernard has made a prima facie case that she did not violate the laws which she is accused of in the consumer complaints, the found finds that Dr. Bernard has not established a likelihood of success on this issue either.

**E.    No need to determine balance of harms or public interest considerations**

169.    Having found that Dr. Bernard failed to establish a likelihood of success on the merits, the Court need not address the remaining preliminary injunction factors.

170.    Any conclusions of law above which are more appropriately findings of fact shall be so deemed and incorporated into the findings of fact section.

**ORDER**

The Court hereby DENIES the Plaintiffs' Motion for Preliminary Injunction for the reasons set forth.  However, the Court does find that the Attorney General did violate the licensing statue's confidentiality provision by discussing the statutorily confidential

investigation in statements to the media until the filing of a complaint with the Medical

Licensing Board against Dr. Bernard on November 30, 2022.

**SO, ORDERED, ADJUDGED AND DECREED** this 2nd day of December 2022.


*Heather A. Welch*
_____
Hon. Heather A. Welch, Judge
Marion Superior Court 1

Distribution to counsel of record.