# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| THE SATANIC TEMPLE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TODD ROKITA, in his capacity )<br>as Attorney General of Indiana, )<br>and RYAN MEARS, in his )<br>capacity as Marion County )<br>Prosecutor, )<br>)<br>Defendants. ) | Case No. 1:22-cv-01859-JMS-MG |

### REPLY IN SUPPORT OF MOTION TO DISMISS
### PLAINTIFF'S FIRST AMENDED COMPLAINT

This Court should dismiss all The Satanic Temple's claims both because it lacks standing to bring this lawsuit and because none of its claims meets the plausibility standard of Rule 12(b)(6).

**I.  The Satanic Temple does not have standing to challenge Indiana's abortion laws**

The Satanic Temple does not have standing to bring this case either in its own right or as a representative of its members.

**A.  The Satanic Temple cannot manufacture standing through its out-of-state abortion clinic that has never provided Indiana abortions and faces multiple, independent obstacles to doing so**

The Satanic Temple's arguments for why it has standing in its own right to assert any claim hinge on its New Mexico-based online abortion clinic. Pl.'s Opp. at 3-10, ECF No. 44. But that clinic cannot allege an actual or imminent injury fairly traceable to the challenged abortion statute, S.B. 1.

1

The Satanic Temple admits that its clinic has never provided abortions to any woman in Indiana. [Filing No. 50-1 at 2.] Its admissions further establish that the clinic does not have the physical facilities or medical staff to operate in Indiana. As The Satanic Temple concedes, it does not have any facilities in Indiana, it does not "intend to physically locate an abortion clinic in Indiana," and it "does not employ any physicians who are licensed to practice medicine in Indiana," *id.*, even though those who prescribe medicine to Indiana residents must be certified in Indiana and submit to its jurisdiction, *see* Ind. Code § 25-1-9.5-9. Additionally, The Satanic Temple does not identify a single Indiana woman who would use The Satanic Temple to obtain abortifacients—much less articulate "concrete plans" for obtaining the facilities and staff to provide them at a specific date in the future. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992). Its generic allegations of an intention to provide abortions to unidentified women at some unspecified time are insufficient. *See id.*

The Satanic Temple, moreover, does not meaningfully dispute that it faces independent legal barriers to providing abortions in Indiana. It does not dispute that, even before S.B. 1, Indiana law required abortion clinics to obtain a license, prohibited telehealth and telemedicine services, and required all abortifacients to be dispensed in person. *See* Ind. Code. §§ 16-34-2-1, 16-21-2-2.5 (2018) (amended 2022); 410 IAC 26-2 (2019) (voided 2022). The Satanic Temple attempts to circumvent those requirements by asserting that it "seeks the invalidation of the Indiana Abortion Ban in its entirety." Pl.'s Opp. at 6, ECF No. 44. That is a non-sequitur. The operative complaint describes the "Indiana Abortion Ban" as "the criminalization of abortions

2

in Indiana," explaining that "Indiana Code § 16-34-2-1" makes "the act of aborting an unborn child a crime except in [four specific] cases." Amend. Compl. at 4, ECF No. 21. The complaint nowhere states that The Satanic Temple is challenging all medical requirements that would affect its theoretical business model, much less explains how all such health and safety requirements are allegedly invalid.

Besides, an unchallenged federal statute, 18 U.S.C. § 1461, poses an independent barrier to operating an out-of-state abortion clinic. Again, that statute prohibits shipment of "[e]very article or thing designed, adapted, or intended for producing abortion," and "[e]very article, instrument, substance, drug, medicine, or thing which is advertised or described in a manner calculated to lead another to use or apply it for producing abortion." 18 U.S.C. § 1461. The Satanic Temple suggests the statute "applies only if the mailed delivery of Abortifacients is illegal under state law." Pl.'s Opp. at 6 n.7, ECF No. 44. But the statute's text nowhere says or implies such a contingency, and The Satanic Temple offers no plausible theory of statutory interpretation from which to derive it.

Accordingly, The Satanic Temple cannot demonstrate an actual or imminent injury traceable to the only Indiana statute it has challenged, *i.e.*, S.B. 1's prohibition on making "the act of aborting an unborn child a crime except in [four specific] cases."

**B.     The Satanic Temple cannot establish associational standing**

The Satanic Temple likewise cannot claim standing as a representative of its individual members, because it has not shown that proper plaintiffs exist among those members. Associational standing requires a plaintiff organization to demonstrate that "at least one member" has standing "in his or her own right." *United*

3

*Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996). Here, however, The Satanic Temple has never identified a single member with standing. In fact, it has refused to identify the member(s) it believes provides a basis for standing in this matter. *See* Mac Naughton Decl. at 2-3, ECF No. 45; Filing No. 50-2 at 3. The Satanic Temple has failed to meet its burden of "support[ing] each controverted element of standing with 'competent proof.'" *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020).

Rather than identify a member with standing as required, The Satanic Temple resorts to speculation. It asserts that it has 11,300 members in Indiana, that exactly half of those members are "women of child-bearing age," and then calls on an OB/GYN to employ statistical guesswork as to how many Satanic Temple members are "Involuntarily Pregnant Women." Pl.'s Opp at 11, ECF No. 44; Helian Decl. at 3, ECF No. 44-1; J.D. Decl. at 2-3, ECF No. 44-2. There are multiple problems with that approach.

First, the Supreme Court has rejected the argument that an organization can establish associational standing through "statistical probability." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To establish associational standing, the Court held, an organization must offer "specific facts" showing that "one or more of its members would be directly affected." *Id.* at 498 (cleaned up). "This requirement of *naming* the affected members has never been dispensed with in light of statistical probabilities." *Id.* at 498–99 (emphasis added). Statistical analysis does not excuse The Satanic Temple's refusal to name a member with standing in her own right.

4

Second, The Satanic Temple's statistical analysis does not show what it purports to establish. To establish standing, The Satanic Temple must show more than that a member is pregnant. It must show that the member wants an abortion and that the member cannot meet any exception in Indiana Code § 16-34-2-1. *See* Defs. Mem. at 11, ECF No. 37. And to establish standing for its Religious Freedom Restoration Act claim, The Satanic Temple would need to show that the member has a religious exercise that is substantially burdened. *See id.* at 11–12. The Satanic Temple's statistical analysis, however, shows none of that. Its declarant guesses about the number of "TST members in Indiana" who are pregnant but "did not wish" to become pregnant. J.D. Decl. at 2-3, ECF No. 44-2. But the declarant offers no analysis regarding whether those women would seek an abortion, whether they would qualify for an exception, or what their supposed religious beliefs and practices are.

Third, The Satanic Temple's declarant is not qualified to conduct statistical analysis regarding the childbearing population in Indiana, and the analysis is not reliable, rendering it inadmissible. *See* Fed. R. Evid. 702; *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (stating that, "before admitting expert testimony," a court "must determine whether the witness is qualified"; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"). The declarant does not purport to be an expert on statistics, possesses no educational credentials relating to statistics, and her experience of 15 years "engaged in the practice of medicine as an obstetrics and gynecological specialist" does not qualify her

5

as a statistical expert. J.D. Decl. at 2-3, ECF No. 44-2; *see Dura Auto. Sys. of Indiana, Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty."). And the analysis mixes and matches datasets in an unreliable way. It applies data on the entire U.S. population to members of The Satanic Temple without establishing that the two populations are representative of each other.

Plaintiff argues that it "does not have to identify of [sic] its members by name," citing *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1011 (7th Cir. 2021), and *National Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). In *Prairie Rivers Network*, however, the Seventh Circuit rejected an attempt to establish associational standing through statistics. Although the court "reserve[d] for another day" whether the Supreme Court's decision in *Summers* "expressly requires names for associational standing on the pleadings," it recognized that an organization still must establish that "at least one individual member" has standing. 2 F.4th at 1009–10. And the Seventh Circuit held that the plaintiff organization there had failed to establish standing by alleging that it had "more than 1000 members" who "live, study, work, and recreate" near the affected power station. *Id.* at 1009. Those allegations "trend[] too closely to the statistical probability theory of associational standing rejected in *Summers*," the Seventh Circuit held, because they failed to establish "who these members are or how exactly the alleged discharges will harm them individually." *Id.* The same is true here. The Satanic Temple's statistical generalities do not reveal which members will be harmed and how.

6

*National Council of La Raza* is no more helpful. That Ninth Circuit case concerned violations of the National Voting Rights Act where it was "relatively clear, rather than merely speculative" that the organization's individual members, as potential Nevada voters, would each have standing to sue in their own right. 800 F.3d at 1041. That is not the case here. Even if Plaintiff had reasonably shown that it has "involuntarily pregnant" members currently in Indiana (which its statistical guesswork fails to do), it would still be required to show that those members wished to obtain an abortion and could not legally obtain one. Plaintiff has not even tried to show these things. A woman's pregnancy and her desire to terminate it are subjective experiences that vary widely from woman to woman, and Plaintiff cannot simply assume that all its female members are seeking abortions.

In a last-ditch effort to find standing, Plaintiff claims that all of its members have suffered a "stigmatic injury" because Indiana's abortion laws "communicate— unequivocally—that their religious beliefs are unacceptable in the State of Indiana." Pl.'s Opp. at 13, ECF No. 44. This argument holds no water. First, Indiana's abortion laws are not an "expression of a religious belief." *Cf. Doe v. Rokita*, 54 F.4th 518, 520 (7th Cir. 2022) (deeming it "questionable" that a statute requiring fetal remains to be buried or cremated "implies a view" about "personhood"). The challenged statute regulates the circumstances under abortion is permissible, which, contrary to Plaintiff's suggestion, Pl.'s Opp. at 12, 34, ECF No. 44, people of many diverse religious beliefs hold to be morally wrong in some or all circumstances.[1]

---

[1] Pew Research Center, *Religious Groups' Official Positions on Abortion*, Jan. 16, 2013, https://www.pewresearch.org/religion/2013/01/16/religious-groups-official-

Second, the alleged stigmatic injury is not "particularized"—that is, an injury that affects members in a "personal," "individual," and "distinct" way. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up). It is "instead a grievance" suffered by all persons who disagree with the challenged abortion law "in some indefinite way." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) (cleaned up). Permitting a person to challenge a law whenever it offends her personal moral views would gut the particularization requirement. The Satanic Temple cannot rely on Establishment Clause precedent to urge this Court to disregard the particularization requirement when it has not asserted an Establishment Clause claim and the Supreme Court has refused to water down particularization outside that context. *See id.*

Finally, Plaintiff entirely fails to address that individual participation is generally required for religious freedom claims "to weed out sham claims." Memo in Support of Mot. to Dismiss at 12–13, ECF No. 18 (quoting *Korte v. Sebelius*, 735 F.3d 654, 683 (7th Cir. 2013)). That failure independently precludes standing under RFRA.

## II. Plaintiff has failed to state a constitutional claim

Even if Plaintiff has standing, it fails to state a claim for relief. Plaintiff repeatedly urges that the Constitution protects a right to terminate an unwanted pregnancy through abortion. Pl.'s Opp. at 18, ECF No. 44. Embracing that theory would require disregarding binding precedent. As the Supreme Court recently held, "[t]he Constitution makes no reference to abortion, and no such right is implicitly

---

positions-on-abortion/ (listing religions that believe either officially or generally that abortion is wrong in all or some circumstances, including Hinduism, Buddhism, Catholicism, and Islam).

protected by *any constitutional provision.*" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2242 (2022) (emphasis added). And while The Satanic Temple may believe that *Dobbs* is wrongly decided, it remains the law. The Court should reject The Satanic Temple's theories that the Constitution protects an abortion right.

> **A.  There is no Takings Clause violation because Plaintiff has not identified a legally recognized property right**

To state a takings claim, a person must show that a property right exists. *See Northwest Louisiana Fish and Game Preserve Comm'n v. United States*, 574 F.3d 1386, 1390 (Fed. Cir. 2009). That right must emanate from an "independent source," such as state or federal law. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). The Satanic Temple does not identify an independent source in state or federal law that gives a woman an absolute property right in her womb, securing it against any laws that may prevent a woman from doing what she wishes with it. Instead, Plaintiff merely lists things a woman may do with her uterus that are not illegal, such as obtaining a hysterectomy and becoming a surrogate. That is insufficient. The mere presence of some potential for economic gain does not create a legally protected property interest for the purpose of a Takings Clause claim.

Plaintiff insists that surrogacy contracts can form the requisite legal basis for a Takings Clause claim because the "list of unenforceable contract terms" in Indiana Code § 31-20-1-1 does not include "any reference to a gestational surrogate receiving compensation for leasing out her uterus." Pl.'s Opp. at 24, ECF No. 44. The absence of the particular language Plaintiff seems to be looking for does not mean that gestational surrogacy contracts are legally enforceable. For one thing, the statute

9

cited by Plaintiff includes "becom[ing] pregnant" as a term of a surrogacy contract that it is "against public policy to enforce." Ind. Code § 31-20-1-1. And the very next section of the Indiana code explicitly states that any "surrogate agreement described in section 1 of this chapter . . . is void." *Id.* § 31-20-1-2. A contract that is explicitly against public policy and void under state law cannot be an "independent source" of property rights sufficient to ground a Takings Clause claim.

Plaintiff attempts to invoke "natural law" to support its claim that a woman's capacity to bear children is a property right—a curious position given its simultaneous assertions that "the Court should apply 21st Century Reality and Law" and "18th and 19th Century Views of Prenatal Life are Based on Ignorance." Pl.'s Opp. at 15, ECF No. 44. But there is no deeply rooted recognition that women have a property right in their wombs that allows for unrestricted abortions. As the U.S. Supreme Court and Indiana Supreme Court have recognized, abortion has historically been regarded as a criminal act—not as the exercise of a natural property right.[2] *See Members of Med. Licensing Bd. of Indiana v. Planned Parenthood Great Nw., Hawai'i, Alaska, Indiana, Kentucky, Inc.,* No. 22S-PL-338, 2023 WL 4285163, at *2–*3, *15–*18 (Ind. June 30, 2023); *Dobbs*, 142 S. Ct. at 2249–53. Plaintiffs' citation to a 1999 Montana Supreme Court case interpreting the Montana Constitution's explicit right to privacy does not establish otherwise.

---

[2] Plaintiff introduces new allegations throughout its Opposition—and even attaches a declaration asserting new "facts." But "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989). The Satanic Temple's new allegations must be disregarded for purposes of evaluating the sufficiency of the claims under Rule 12(b)(6).

Government regulation where there is no physical invasion does not amount to a direct appropriation of personal property unless it is a "total regulatory taking." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1026 (1992)). A deprivation of a single use is not sufficient. *Lucas*, 505 U.S. at 1026. Plaintiff argues that S.B. 1 is a "*per se* taking" because "a woman is stripped of the only economically beneficial use she can make of her uterus – to rent it out as a gestational carrier." Pl's Opp. at 29, ECF No. 44. This argument misses the point of the Court's provision for the "relatively rare situations" where a total regulatory taking occurred. *Lucas*, 505 U.S. at 1018. The Fifth Amendment protects against "regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle*, 544 U.S. at 539. Indiana's general criminal prohibition of abortion looks nothing like a direct appropriation or an ouster.

### B. The Thirteenth Amendment does not protect abortion

The Satanic Temple's Thirteenth Amendment claim fails as well. By its terms, the Thirteenth Amendment prohibits only "slavery" and "involuntary servitude." U.S. Const. amend. XIII, § 1. Its primary purpose was to "abolish the institution of African slavery as it had existed in the United States at the time of the Civil War." *United States v. Kozminski*, 487 U.S. 931, 942 (1988). It did not guarantee a right to abortion. Even The Satanic Temple concedes that "[l]awmakers in the 19th Century" would have deemed its argument that the Thirteenth Amendment prohibits abortion to be "implausible." Pl.'s Opp. at 31, ECF No. 44. That concession should be dispositive of its claim here. In construing the Thirteenth Amendment, this Court's job is to give

11

effect to its original meaning—not rewrite it. *See Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Aurelius Inv., LLC*, 140 S. Ct. 1649, 1658 (2020).

Even apart from text and history, it is illogical to suppose that the Thirteenth Amendment prohibits abortion because "being pregnant and delivering a baby requires an extraordinary amount of work." Pl.'s Opp. at 30, ECF No. 44. For one thing, Indiana's abortion statute does not require anyone to become pregnant or deliver a baby. It is a general criminal prohibition on abortion. For another thing, treating general criminal laws as contrary to the Thirteenth Amendment due to incidental effects would have untold consequences. Laws against illegal dumping or safety laws may have the effect of requiring citizens to take actions they may not desire to take. But that does not implicate Thirteenth Amendment.

The Supreme Court has explained that the Thirteenth Amendment's prohibition against "involuntary servitude" only encompasses "forms of compulsory labor akin to African slavery." *Kozminski*, 487 U.S. at 942 (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)). That prohibition, however, does not prohibit the government from imposing legal duties on citizens through its police power or even compelling affirmative actions. For example, the government may compel jury duty and military service, *Kozminski*, 487 U.S. at 944, or civilian labor from a conscientious objector, *see United States v. Hoepker*, 223 F.2d. 921 (7th Cir. 1955). If even laws imposing affirmative duties do not violate the Thirteenth Amendment, general criminal prohibitions on undertaking certain conduct cannot do so either.

### C. Exceptions for victims of rape or incest do not violate the Equal Protection Clause

The Satanic Temple does not dispute that its equal protection challenge to the exception for victims of rape and incest fails rational-basis review. It instead argues for strict scrutiny on the theory that Indiana's abortion ban infringes on "the fundamental right to engage in Protected Sex," which it defines as the right to "engage in sex just for the pleasure and intimacy it brings and without any purpose or intent to become pregnant." Pl.'s Opp. at 17, 33, ECF No. 44. Whether or not such a fundamental right exists, however, it is not implicated here. Indiana's abortion statute does not infringe on any person's right or ability to engage in consensual sexual conduct just for pleasure or to use birth control. It prohibits abortion. As the Supreme Court has explained, prohibitions on abortion do not implicate any rights to "procreation," "contraceptive[s]," or the like. *Dobbs*, 142 S. Ct. at 2261, 2268.

The Satanic Temple, moreover, does not dispute that Indiana has a compelling interest in protecting "either living beings or potential human life." Pl.'s Opp. at 17, 32, ECF No. 44. It quibbles that Indiana law is "not tailored as precisely as possible to achieve the stated purpose," observing that Indiana does not prohibit abortions caused by rape or incest. *Id.* at 32–33. But that argument confuses the purpose of Indiana's exception—alleviating the consequence of serious criminal acts that can constitute nearly the "ultimate violation of self," *Coker v. Georgia*, 433 U.S. 584, 597–98 (1977))—with whether the general prohibition on abortion protects prenatal life. The Satanic Temple identifies no reason why the State cannot create an exception to its general prohibition on abortion that serves another important interest. The State

13

may validly distinguish between women who become pregnant by rape or incest and those who become pregnant through consensual sex.

### III. Plaintiff should not be permitted to withdraw its RFRA claims and add a free exercise claim

After twice asserting claims under Indiana's Religious Freedom Restoration Act (RFRA), The Satanic Temple now seeks to withdraw them. Pl.'s Opp. at 33, ECF No. 44. It effectively concedes that the Eleventh Amendment and *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984), bar them. The Satanic Temple requests leave to "withdraw its RFRA claims without prejudice and plead instead violations of the Free Exercise Clause." Pl.'s Opp. at 33, ECF No. 44. The Satanic Temple, however, has already amended its complaint once as a matter of course and additional amendments require leave. *See* Fed. R. Civ. P. 15(a).

Under Rule 15, leave to amend may be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). That standard provides ample justification for denying leave here. The Satanic Temple pleaded a RFRA claim in its original complaint filed ten months ago on September 21, 2022. Compl. at 13, ECF No. 1. In its first motion to dismiss, the State pointed out that the Eleventh Amendment barred the claim. Memo in Support of Mot. to Dismiss at 20-21, ECF No. 18. Rather than withdraw the claim and plead a free exercise claim (as The Satanic Temple seeks to do now), however, The Satanic Temple

14

filed an amended complaint asserting two more RFRA claims. Am. Compl. at 14-15, ECF No. 21. The Satanic Temple offers not a word of explanation as to why it could not have asserted a free exercise claim earlier or why it has continued to assert RFRA claims even after being told the Eleventh Amendment squarely barred them. The Court should not indulge The Satanic Temple's dilatory tactics.

In any event, asserting a free exercise claim would be futile. Neither The Satanic Temple nor its members have standing to assert a claim for the reasons above. Moreover, statutes that incidentally burden religion do not implicate the Free Exercise Clause so long as they are "neutral" and "generally applicable." *Emp. Div. v. Smith*, 494 U.S. 872, 878 (1990). The challenged Indiana abortion statute is both. It does not mention religion and applies broadly, encompassing abortions sought for secular and religious reasons alike. The Satanic Temple nowhere explains how a free exercise claim would survive under *Smith*.

## CONCLUSION

The Court should grant the motion to dismiss the complaint with prejudice.

                          Respectfully submitted,

                          THEODORE E. ROKITA
                          Attorney General of Indiana
                          Attorney No. 18857-49

Date: <u>July 5, 2023</u>      By:    Aaron M. Ridlen
                                      Deputy Attorney General
                                      Attorney No. 31481-49

                                      Christopher M. Anderson
                                      Deputy Attorney General
                                      Attorney No. 31870-49

Rebekah P. Durham
Deputy Attorney General
Attorney No. 37840-49

Thomas M. Fisher
Solicitor General
Attorney No. 17949-49

James Barta
Deputy Solicitor General
Attorney No. 31589-49

Melinda Holmes
Deputy Attorney General
Attorney No. 36851-79

Office of the Indiana Attorney General
Indiana Government Center South,
5th Floor
302 West Washington Street
Indianapolis, IN  46204-2770
Phone: (317)232-2826
Fax: (317)232-7979
Aaron.Ridlen@atg.in.gov