UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE SATANIC TEMPLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-01859-JMS-MG |
| | ) |
| TODD ROKITA, in his capacity as Attorney General of Indiana, and RYAN MEARS, in his capacity as Marion County Prosecutor, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS' SUPPLEMENTAL BRIEFING REPLY BRIEF**

The Satanic Temple seeks to substitute its disagreement with the Indiana legislature for the constitutional demands of standing—namely, that a plaintiff must show a concrete, imminent, and particularized injury, which is fairly traceable to the challenged law and redressable by a favorable ruling. *Biden v. Nebraska*, 143 S. Ct. 2355, 2365 (2023). But the facts that The Satanic Temple has pled do not support its claim of standing to challenge Indiana's abortion law. The Satanic Temple claims an injury on its own behalf that is purely ideological and claims associational standing on behalf of unknown members that it refuses to identify or describe in any way. The Supreme Court's recent decisions in *Biden*, *303 Creative,* and *Students for Fair Admissions*, to the extent they are applicable, serve to reaffirm that The Satanic Temple has not met the requirements for standing.

1

## I. Plaintiff has not suffered the imminent and concrete injury-in-fact traceable to the challenged statute that *Biden* requires

In *Biden v. Nebraska*, Missouri established an injury in fact to itself by showing that the federal government's debt cancellation would cost a state instrumentality, MOHELA, about "$44 million a year in fees." 143 S. Ct. 2355, 2366 (2023). The Satanic Temple does not argue that Indiana's law prohibiting most abortions is costing it revenue. It instead argues that the law "impairs TST's mission in Indiana," and attempts to characterize *Biden* as holding any law that "diminishe[s]" an organization's "functionality" causes injury. Pl.'s Resp. at 2, Dkt. 57 ("It was this diminished functionality of MOHELA—not the lost revenue itself—that caused injury in fact to the State of Missouri."). But *Biden* never held that an abstract injury to an organization's purported mission constitutes an injury in fact. It focused on whether the debt cancellation would affect "a legally protected interest, like property or money," concluding it would. 143 S. Ct. at 2365–66. *Biden* discussed MOHELA's purpose only in analyzing whether MOHELA was an "instrumentality" of Missouri "created and operated to fulfill a public function." *Id.* at 2367 (quoting *Lebron v. Nat'l Railroad Passenger Corp.*, 513 U.S. 374, 397 (1995)).

In *Biden*, moreover, it was undisputed that Missouri would suffer an imminent injury fairly traceable to the debt cancellation. *See* 143 S. Ct. at 2365–66. By contrast, The Satanic Temple has not claimed any lost revenues, has no identified patients or potential patients, no physicians who can practice medicine in Indiana, no clinic physically in Indiana, and it has never facilitated an abortion for an Indiana resident. Pl.'s Resp. to Requests for Admission at 1-2, Dkt. 50-1. Its only injury as an

2

organization is that it disagrees with the policy choice to protect life that the Indiana legislature has made.

Nor can The Satanic Temple establish that its alleged injury is fairly traceable to the challenged statute. *See* Def.'s Reply in Support of Mot. to Dismiss at 2–3, Dkt. 51; Def.'s Supp. Brief. at 2, Dkt. 56. It challenged "Indiana Code § 16-34-2-1" for making "the act of aborting an unborn child a crime except in [four specific] cases." Amend. Compl. at 4, Dkt. 21. But whatever the fate of that prohibition, *unchallenged* state and federal laws would still bar The Satanic Temple from mailing abortifacients into Indiana. *See* Dkt. 51 at 2–3; Dkt. 56 at 2. And while The Satanic Temple asserts that it could amend its complaint to challenge "any and all Indiana laws that interfere with TST's mission," Dkt. 57 at 3, that proposal is as futile as it is untimely. The Satanic Temple has never articulated a basis for invalidating all health and safety laws. And it nowhere offers an excuse for failing to plead its case properly in the first two complaints. That gives this Court ample reason to deny leave to amend. *See* Dkt. 51 at 14.

## II. *303 Creative* does not excuse The Satanic Temple's failure to establish the challenged statute is causing its injury

To the extent that it addresses standing at all, *303 Creative* reinforces that standing requires a plaintiff to plead an injury that is redressable by a favorable decision from the court. *See 303 Creative v. Elenis*, 143 S. Ct. 2298, 2310 (2023) ("if she follows through on her plans to offer wedding website services, Colorado will invoke CADA to force her to create speech she does not believe or endorse."). The Satanic Temple does not address causation and redressability. It relies on the Tenth

3

Circuit decision to argue that enforcement of Indiana's S.B. 1 is not speculative. Dkt. 57 at 4-6. That is not the issue. As discussed above, the problem is that The Satanic Temple faces independent, unchallenged legal barriers to mailing abortifacients into Indiana. Causation and redressability are not met.

The Satanic Temple claims that it "has all of the tools and personnel at its disposal necessary to provide its services in Indiana safely and in accordance with federal law." Dkt. 57 at 5. This is untrue. The Satanic Temple "does not employ any physicians who are licensed to practice medicine in Indiana," Dkt. 50-1 at 2, even though those who prescribe medicine to Indiana residents must be certified in Indiana and submit to its jurisdiction, *see* Ind. Code § 25-1-9.5-9. Nor does The Satanic Temple have facilities in Indiana or intend to provide abortions in person, Dkt. 50-1 at 2, as it is required to do under state and federal law, *see* 18 U.S.C. § 1461; Ind. Code § 16-34-2-1. And while The Satanic Temple again asserts it can amend its complaint, there is no basis for letting it do so. It has made no attempt to explain how any of these other laws—including licensing requirements, in-person dispensing, informed consent, and more—would be unconstitutional.

## III. The Satanic Temple cannot claim associational standing under *Students for Fair Admission*

The Satanic Temple all but ignores the Supreme Court's analysis in *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 143 S. Ct. 2141 (2023). In that decision, the Supreme Court made clear that an organization must have "identifiable" members, show that it is representing those members in good faith (including by filing declarations from them, updating them about the litigation, and

4

giving them the opportunity to provide input), show those members "have standing to sue in their own right," and show that the claims do not require members' individual participation. *Id.* at 2157–59. The Satanic Temple does not show how any of those requirements are met.

The Satanic Temple asserts that "[t]here is no evidence TST is not representing its members in good faith." Dkt. 57 at 6. But it is Plaintiff's burden to plead standing, not Defendants' burden to disprove it. And in sharp contrast to *Students for Fair Admissions*, The Satanic Temple has not "identified" its members, sued on behalf of "four members in particular," "filed declarations" from them, updated them about the case, or given them "the opportunity to have input and direction" on the case. 143 S. Ct. at 2158. In fact, there is no evidence that any Indiana members know of this suit or have standing to sue in their own right.

The Satanic Temple also states that its members have a purported "right to remain anonymous." Def.'s Supp. Brief. at 6–7, Dkt. 56. But *Students for Fair Admissions* was clear that the organization had standing because it identified its members. 143 S. Ct. at 2158. Further, the Supreme Court has expressly rejected the argument that a plaintiff may rely on "statistical probabilities." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009). And the Court has likewise insisted on members' participation in the lawsuit in the context of religious-freedom claims. *See Harris v. McRae*, 448 U.S. 297, 321 (1980).

## CONCLUSION

The Court should dismiss this case for lack of standing.

        Respectfully submitted,

        THEODORE E. ROKITA
        Attorney General of Indiana
        Attorney No. 18857-49

Date: <u>August 29, 2023</u>    By:    Aaron M. Ridlen
        Deputy Attorney General
        Attorney No. 31481-49

        Christopher M. Anderson
        Deputy Attorney General
        Attorney No. 31870-49

        Rebekah P. Durham
        Deputy Attorney General
        Attorney No. 37840-49

        Thomas M. Fisher
        Solicitor General
        Attorney No. 17949-49

        James Barta
        Deputy Solicitor General
        Attorney No. 31589-49

        Melinda Holmes
        Deputy Attorney General
        Attorney No. 36851-79

        Office of the Indiana Attorney General
        Indiana Government Center South,
        5th Floor
        302 West Washington Street
        Indianapolis, IN 46204-2770
        Phone: (317)232-2826
        Fax: (317)232-7979
        Aaron.Ridlen@atg.in.gov