

# UNITED STATES DISTRICT COURT
## Southern District of Indiana

### Roger A. G. Sharpe, Clerk of Court

Birch Bayh Federal Building
& U.S. Courthouse, Room 105
46 East Ohio Street
Indianapolis, IN  46204
(317) 229-3700

U.S. Courthouse, Room 104
921 Ohio Street
Terre Haute, IN 47807
(812) 231-1840

Winfield K. Denton Federal Building
& U. S. Courthouse, Room 304
101 NW Martin Luther King Blvd.
Evansville, IN 47708
(812) 434-6410

Lee H. Hamilton Federal Building
& U.S. Courthouse, Room 210
121 West Spring Street
New Albany, IN 47150
(812) 542-4510

November 22, 2023

William James Mac Naughton
W. James Mac Naughton, Esq.
7 Fredon Marksboro Road
Newton, NJ 07860

Rebekah Durham
Office of Indiana Attorney General
302 W Washington Street
IGCS - 5th Floor
Indianapolis, IN 46204

RE:  THE SATANIC TEMPLE, INC. v. TODD ROKITA

CAUSE NO:  1:22-cv-01859-JMS-MG

Dear Appellant and Appellee:

Please be advised that the Notice of Appeal filed in 1:22-cv-01859-JMS-MG has been forwarded to the United States Court of Appeals for the Seventh Circuit. The Clerk of the Seventh Circuit will assign an appellate case number, docket the appeal, and notify case participants of the Seventh Circuit case number assigned to this matter.

Please review Seventh Circuit Rule 10 (enclosed) for guidance regarding record preparation.

Please contact the Clerk's office with any questions or concerns.

Sincerely,
Roger A. G. Sharpe
Clerk of Court

By Karen Angermeier, Deputy Clerk
8122311842

## Selected Rules for Reference

**CIRCUIT RULE 10. Preparation and Accessibility of Record in District Court Appeals**

**(a) Record Preparation Duties.**

**(1) Within 14 days of filing the notice of appeal the district court must ensure the district court docket is complete and made available electronically to the court of appeals.**

**(2) The clerk of the district court must prepare and hold any confidential record or exhibit not available electronically on the district court docket until requested by the court of appeals.**

**(3) Counsel must ensure, within 21 days of filing the notice of appeal, that all electronic and non electronic documents necessary for review on appeal are on the district court docket.**

(b) *Correction or Modification of Record.* A motion to correct or modify the record pursuant to Rule 10(e), Fed. R. App. P., or a motion to strike matter from the record on the ground that it is not properly a part thereof must be presented first to the district court. That court's order ruling on the motion must be included as part of the record and a notice of the order must be sent to the court of appeals.

(c) *Order or Certification with Regard to Transcript.* Counsel and court reporters are to utilize the form prescribed by this court when ordering transcripts or certifying that none will be ordered. For specific requirements, see Rules 10(b) and 11(b), Fed. R. App. P.

(d) *Ordering Transcripts in Criminal Cases.*

(1) *Transcripts in Criminal Justice Act Cases.* At the time of the return of a verdict of guilty or, in the case of a bench trial, an adjudication of guilt in a criminal case in which the defendant is represented by counsel appointed under the Criminal Justice Act (C.J.A.), counsel for the defendant must request a transcript of testimony and other relevant proceedings by completing a C.J.A. Form No. 24 and giving it to the district judge. If the district judge believes an appeal is probable, the judge must order transcribed so much of the proceedings as the judge believes necessary for an appeal. The transcript must be filed with the clerk of the district court within 40 days after the return of a verdict of guilty or, in the case of a bench trial, the adjudication of guilt or within seven days after sentencing, whichever occurs later. If the district judge decides not to order the transcript at that time, the judge must retain the C.J.A. Form No. 24 without ruling. If a notice of appeal is filed later, appointed counsel or counsel for a defendant allowed after trial to proceed on appeal in forma pauperis must immediately notify the district judge of the filing of a notice of appeal and file or renew the request made on C.J.A. Form No. 24 for a free transcript.

(2) *Transcripts in Other Criminal Cases.* Within 14 days after filing the notice of appeal in other criminal cases, the appellant or appellant's counsel must deposit with the court reporter the estimated cost of the transcript ordered pursuant to Rule 10(b), Fed. R. App. P., unless the district court orders that the transcript be paid for by the United States. A non-indigent appellant must pay a pro rata share of the cost of a transcript prepared at the request of an indigent co-defendant under the Criminal Justice Act unless the district court determines that fairness requires a different division of the cost. Failure to comply with this paragraph will be cause for dismissal of the appeal.

(e) *Indexing of Transcript.* The transcript of proceedings to be part of the record on appeal (and any copies prepared for the use of the court or counsel in the case on appeal) must be bound by the reporter, with the pages consecutively numbered throughout. The transcript of proceedings must contain a suitable index, as well as the following information:

(1) An alphabetical list of witnesses, giving the pages on which the direct and each other examination of each witness begins.

(2) A list of exhibits by number, with a brief description of each exhibit indicating the nature of its contents, and with a reference to the pages of the transcript where each exhibit has been identified, offered, and received or rejected.

(3) A list of other significant portions of the trial such as opening statements, arguments to the jury, and instructions, with a reference to the page where each begins.

When the record includes transcripts of more than one trial or other distinct proceeding, and it would be cumbersome to apply this paragraph to all the transcripts taken together as one, the rule may be applied separately to each transcript of one trial or other distinct proceeding.

(f) *Presentence Reports*. The presentence report is part of the record on appeal in every criminal case. The district court must maintain this report under seal, unless it has already been placed in the public record in the district court. If the report is under seal, the report may not be included in the appendix to the brief or the separate appendix under Fed. R. App. P. 30 and Circuit Rule 30. Counsel of record may review the presentence report but may not review the probation officer's written comments and any other portion submitted in camera to the trial judge.

(g) *Effect of Omissions from the Record on Appeal*. When a party's argument is countered by a contention of waiver for failure to raise the point in the trial court or before an agency, the party opposing the waiver contention must give the record cite where the point was asserted and also ensure that the record before the court of appeals contains the relevant document or transcript.

NOTE:   The complete Federal Rules of Appellate Procedure & Rules of the 7th Circuit Court of Appeals are available at: http://www.ca7.uscourts.gov/Rules/Rules/rules.pdf

## THE SETTLEMENT CONFERENCE PROGRAM
## U.S. COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Pursuant to Rule 33 of the Federal Rules of Appellate Procedure[1] and Circuit Rule 33, the Court conducts conferences with counsel and clients to encourage and facilitate the settlement of civil appeals. Rule 33 conferences are conducted in all types of fully-counseled civil appeals except immigration, social security, habeas corpus, prisoners' civil rights, sentencing, and mandamus cases. The Court spontaneously notices most eligible appeals for Rule 33 conferences. Attorneys for one or more parties may also request that a conference be conducted in any eligible case.

Counsel and clients are well-advised to explore opportunities for settlement at the appellate level.Regardless of how unlikely it may seem, the fact is that many cases can be settled at this stage, substituting a certain and acceptable outcome for the risk and expense of further litigation. The Court's Settlement Conference Office has assisted counsel in settling many appeals without unduly delaying the progress of those appeals which do not yield to settlement efforts.     The following information is intended to assist practitioners and their clients in understanding how the Seventh Circuit's settlement conference program works and how they can make the best use of it to achieve favorable results.

- **How do counsel learn that a Rule 33 conference will be conducted in their appeal?**
  A Notice of Rule 33 Settlement Conference is posted on the docket. The Notice is an order of the Court advising counsel of the date and time of the conference, whether it is to be in person or by telephone, and how they and their clients are expected to prepare.

- **How can a Rule 33 conference be requested?**
  Counsel are invited to request a Rule 33 conference by contacting the Settlement Conference Office, U.S. Court of Appeals for the Seventh Circuit, 219 S. Dearborn, Room 1120, Chicago, Illinois 60604-1705 (Tel. (312) 435-6883/Fax (312) 435-6888/E-mail:  settlement@ca7.uscourts.gov ). At the request of any party or parties in an eligible appeal, the Settlement Conference Office will schedule a Rule 33 conference if its calendar permits. Counsel are then advised by notice that a conference will be held.

- **Do other parties have to be informed that a conference was requested?**
  No. If a party prefers to keep its request confidential, the Settlement Conference Office will not disclose to other parties or to the Court that the conference was requested.

- **Is participation in Rule 33 conferences optional?**
  No. When a Rule 33 conference is scheduled, participation is mandatory.

- **Are clients required to attend?**
  Clients and insurance representatives are required to attend Rule 33 conferences whenever the Settlement Conference Office so directs. When clients or insurance representatives have not been directed to attend the initial conference, they must be available by phone – with full settlement authority – for the duration of the conference.

- **Is it mandatory to settle?**
  No. Whether to settle is ultimately for the parties and their counsel to decide. However, counsel and parties are required to participate with the utmost diligence and good faith. Experience shows that settlements can often be achieved when neither side thought it possible.

---

[1] FRAP Rule 33 provides: "Appeal Conferences. The Court may direct the attorneys, and in appropriate cases the parties, to participate in one or more conferences to address any matter that may aid in the disposition of the proceedings, including the simplification of the issues and the possibility of settlement. A conference may be conducted in person or by telephone and be presided over by a judge or other person designated by the court for that purpose. Before a settlement conference, attorneys must consult with their clients and obtain as much authority as feasible to settle the case. As a result of a conference, the court may enter an order controlling the course of the proceedings or implementing any settlement agreement."

- **Who conducts Rule 33 conferences?**
  The Court has delegated the responsibility for conducting Rule 33 conferences to three full-time conference attorneys: Joel N. Shapiro, Rocco J. Spagna, and Jillisa Brittan. All were civil litigators in private practice prior to their appointment by the Court.

- **Is there a fee for the services of the conference attorney?**
  No. The assistance of the Settlement Conference Office is available to appellate litigants at no charge.

- **Must each party's lead attorney attend the Rule 33 conference?**
  Yes. It is essential that each party be represented at the Rule 33 conference by an attorney who not only is conversant with the case but is the attorney on whose advice the party relies. If more than one attorney meets these criteria, either of them may represent the client in the Rule 33 conference.

- **How is it decided whether a Rule 33 conference will be conducted by telephone or in person?**
  When all participants reside in the Chicago metropolitan area, Rule 33 conferences are usually held in the Settlement Conference Office at the United States Courthouse. Otherwise, conferences are generally conducted by telephone. The telephone equipment used in these conferences can accommodate more than a dozen separate lines and enables the conference attorney to speak privately with any combination of participants. Experience indicates that telephone conferences are generally as effective as in-person conferences in fostering settlements.

- **Are in-person conferences ever held outside Chicago?**
  Because the resources of the settlement conference program are limited, in-person conferences cannot routinely be held throughout the Circuit. However, from time to time in-person conferences are conducted at locations other than Chicago. If the participants believe that an in-person conference outside Chicago would be more productive than a conference by telephone, they are welcome to suggest it.

- **Are Rule 33 conferences confidential?**
  Yes. The Court requires all participants to keep what is said in these conferences strictly confidential. Communications, oral and written, which take place in the course of Rule 33 proceedings may not be disclosed to anyone other than the litigants, their counsel, and the conference attorney.

- **Do judges of the Court of Appeals learn what has happened at a Rule 33 conference?**
  No. Participants in Rule 33 conferences, including the conference attorney, are forbidden to impart to any judge or other court personnel, in the Court of Appeals or elsewhere, what has been communicated in these conferences.

- **What occurs at a Rule 33 conference?**
  Rule 33 conferences are official proceedings of the Court but are off-the-record and relatively informal. Discussion is conversational rather than argumentative. The focus is on realistically assessing the prospects of the appeal, the risks and costs of further litigation, the interests of the parties, and the benefits each side can gain through settlement. The conference attorney ordinarily meets with counsel both together and separately. Settlement proposals are discussed. A resolution may or may not be reached during the initial conference. Often, follow-up conferences or shuttle negotiations are conducted. Letters or draft proposals may be exchanged. By the conclusion of the Rule 33 process, the parties will have either reached an agreement to settle or learned how far apart they are and what are the remaining obstacles to settlement.

- **Is discussion of settlement limited to the appeal itself?**
  Not necessarily. If settlement of the appeal will not dispose of the entire case, or if related litigation is pending in other forums, the parties are invited and encouraged to explore the possibility of a global settlement.

- **Is briefing deferred when a Notice of Rule 33 Conference is issued?**
  Briefing is usually postponed until after the initial conference. If further modification of the briefing schedule would be conducive to settlement, an order to that effect may later be entered. What preparation is required of

counsel? In preparation for the initial Rule 33 conference, attorneys are required to consult rigorously with their clients and obtain as much authority as feasible to settle the case. Counsel must also review their legal and factual contentions with a view to being able to discuss candidly the prospects of the appeal and the case as a whole. If the conference attorney requests copies of pleadings, hearing transcripts, or other material in anticipation of the conference, counsel are expected to provide it promptly.

- **What is the role of the conference attorney?**
Because the format of Rule 33 conferences is flexible and each appeal is dealt with on its own terms, the conference attorney plays a variety of roles. He or she acts as moderator, facilitator, and intermediary. The conference attorney serves as a neutral evaluator and a reality check. He or she may suggest terms of settlement. Without being coercive, the conference attorney acts as a determined advocate for settlement.

- **What can counsel expect of the conference attorney**?
Before the initial conference, the conference attorney will have familiarized him or herself with the history of the litigation, the posture of the case, and the issues on appeal. During the conference, the conference attorney will seek additional information about the background of the dispute and the parties' interests, claims and defenses in order to explore all possibilities for a voluntary resolution. The conference attorney is strictly impartial. He or she does not advocate for any party and avoids making comments that could advantage one side or another in arguing the issues on appeal. The conference attorney will disclose any affiliation or prior representation of which he or she is aware that could call his or her neutrality into question. The conference attorney does not force any party to settle or to accept terms it is not willing to accept. While he or she urges parties to take advantage of opportunities to settle favorably, the conference attorney recognizes that settlement is not always possible.

- **How can counsel make best use of the Rule 33 conference to benefit their clients?**
Recognize that the Rule 33 conference is an opportunity to achieve a favorable outcome for your client. Without laying aside the advocate's responsibility, approach the conference as essentially cooperative rather than adversarial. Help your client make settlement decisions based not on overconfidence or wishful thinking, but on a realistic assessment of the case; not on emotion, however justified it may be, but on rational self-interest. Suggest terms of settlement that maximize the benefits of settlement for all parties. Take advantage of the opportunity to talk confidentially and constructively with counsel for the other parties and, if clients are present, to address them respectfully but convincingly. Let the conference attorney know how he or she can help you obtain a satisfactory resolution. Be candid. Don't posture. Listen closely to what other participants have to say. Give the process a chance to work.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

_____

THE SATANIC TEMPLE, INC.

        Plaintiff

                                Case No. 1:22-cv-1859-JMS-MG

    v.

TODD ROKITA, in his
capacity as the Attorney General of
Indiana and
RYAN MEARS, in his capacity as
Marion County Prosecutor

        Defendants

_____

**NOTICE OF APPEAL**

Plaintiff The Satanic Temple, Inc. hereby appeals to the United States Court of Appeals for the Seventh Circuit the order and judgment dismissing the complaint of the United States District Court for the Southern District of Indiana entered on October 25, 2023, ECF Nos. 66 and 67.

November 22, 2023

_W. James Mac Naughton_
W. James Mac Naughton, Esq.
7 Fredon Marksboro Road
Newton, NJ 07860
wjm@wjmesq.com
_Attorney for Plaintiff The Satanic Temple_

## CERTIFICATE OF SERVICE

W. James Mac Naughton certifies that on the date set forth above, I caused a true

and correct copy of this pleading to be served via the Court's ECF system and email on:

Aaron M. Ridlen
Deputy Attorney General
Office Of Indiana Attorney General Todd Rokita
302 West Washington Street – IGCS – 5th Floor
Indianapolis, IN 46204-2770
Telephone: (317) 232-2826
Facsimile: (317) 232-7979
E-mail: Aaron.Ridlen@atg.in.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

_____

THE SATANIC TEMPLE, INC.

      Plaintiff

                                  Case No. 1:22-cv-1859-JMS-MG

    v.

TODD ROKITA, in his
capacity as the Attorney General of
Indiana and
RYAN MEARS, in his capacity as
Marion County Prosecutor

      Defendants

_____

**DOCKETING STATEMENT**

1. Jurisdiction of the District Court.

    The District Court's jurisdiction is based on 28 U.S.C. §1331 because the resolution of

Plaintiff's claims presents questions of federal law.

2. Jurisdiction of the Circuit Court.

    Plaintiff appeals the order and judgment of the United States District Court for the

Southern District of Indiana entered October 25, 2023, dismissing the complaint, ECF Nos. 66

and 67. The Notice of Appeal was timely filed on November 22, 2023.

November 22, 2023

                            _W. James Mac Naughton_
                            W. James Mac Naughton, Esq.
                            7 Fredon Marksboro Road
                            Newton, NJ 07860
                            wjm@wjmesq.com
                            _Attorney for Plaintiff The Satanic Temple_

**CERTIFICATE OF SERVICE**

W. James Mac Naughton certifies that on the date set forth above, I caused a true

and correct copy of this pleading to be served via the Court's ECF system and email on:

Aaron M. Ridlen
Deputy Attorney General
Office Of Indiana Attorney General Todd Rokita
302 West Washington Street – IGCS – 5th Floor
Indianapolis, IN 46204-2770
Telephone: (317) 232-2826
Facsimile: (317) 232-7979
E-mail: Aaron.Ridlen@atg.in.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

THE SATANIC TEMPLE, INC.,            )
                                     )
            *Plaintiff*,             )
                                     )
      v.                             )      No. 1:22-cv-01859-JMS-MG
                                     )
TODD ROKITA, in his capacity as      )
Attorney General of Indiana, and     )
RYAN MEARS, in his capacity as       )
Marion County Prosecutor,            )
                                     )
            *Defendants*.            )

**<u>ORDER</u>**

The Satanic Temple, Inc. ("the <u>Satanic Temple</u>") seeks to provide mail-order drugs for its members in Indiana to have abortions.  Indiana, however, criminalizes most abortions.  Ind. Code § 16-34-2-1(a) ("<u>S.B. 1</u>").  The Satanic Temple has sued Attorney General Todd Rokita and Marion County Prosecutor Ryan Mears ("<u>Defendants</u>"), seeking injunctive and declaratory relief on behalf of itself and its members who have become pregnant involuntarily ("<u>Members</u>").  The Satanic Temple alleges that S.B. 1 violates the Indiana Religious Freedom Restoration Act ("<u>RFRA</u>") by prohibiting its Members from performing its Satanic Abortion Ritual; the Fifth Amendment by committing a taking of its Members' uteruses; the Fourteenth Amendment by discriminating against its Members who become pregnant unintentionally in favor of women who become pregnant by rape or incest; and the Thirteenth Amendment by forcing upon its Members the conditions of slavery.  Defendants have filed a Motion to Dismiss the First Amended Complaint for failure to state a claim and lack of standing.  [Filing No. 36.]  The Motion is ripe for the Court's review.

1

# I.

## STANDARD OF REVIEW

The Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2.  The case-or-controversy requirement counts the element of standing as one of its essential components. *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  The fundamental requirements of standing are the same in every case: injury in fact, causation, and redressability. *Ass'n of Am. Physicians & Surgeons, Inc. v. Koskinen*, 768 F.3d 640, 642 (7th Cir. 2014).

Generally, while reviewing a motion to dismiss for lack of standing, the district court "must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor" as a facial matter. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015).  The general rule permits an exception to these favorable presumptions, which arises where "standing is challenged as a factual matter." *Id.*  Once evidence calling the plaintiff's standing into question is proffered, "[t]he presumption of correctness that we accord a complaint's allegations falls away[.]" *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009) (citation omitted).  Then, "no presumptive truthfulness attaches to plaintiff's allegations." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir.1977)).  And "the plaintiff bears the burden" of demonstrating standing by "coming forward with competent proof.'" *Id.* (quoting *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003)).  "[C]ompetent proof" means a showing by a "preponderance of the evidence." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (citations omitted).

Further, when the factual prerequisites of jurisdiction are at stake, "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Apex Digital*, 572 F.3d at 444 (quoting *Mortensen*, 549 F.2d at 891).  A

district court may "resolve factual disputes and make any findings necessary to determine the court's adjudicatory competence." *Craftwood II, Inc. v. Generac Power Sys., Inc.*, 920 F.3d 479, 481 (7th Cir. 2019) (citing *Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316 (2017)).  Beyond only the pleadings, "the court may . . . view any evidence submitted to determine if subject matter jurisdiction exists." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015).  When the standing question involves disputed factual matters, "the district court may find the facts," and it is "review[ed] . . . for clear error." *Reid L. v. Illinois State Bd. of Educ.*, 358 F.3d 511, 515 (7th Cir. 2004).

As a factual matter, Defendants challenge the Satanic Temple's standing in two ways.  First, Defendants argue that the Satanic Temple does not show that "anyone would use it to procure abortions." [Filing No. 37 at 8.]  Second, Defendants argue that the Satanic Temple does not show that its clinic "exists or is reasonable likely to exist in the near future." [Filing No. 37 at 7.]  These disputed facts are at the heart of the injury-in-fact inquiry, the "[f]irst and foremost" element of standing. *Carello v. Aurora Policemen Credit Union*, 930 F.3d 830, 833 (quoting *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998)).  Consequently, the Satanic Temple bears the burden to prove those disputed facts by a preponderance of the evidence.  In this light, the Court presents the case's background and conducts the Court's analysis.

## II.
### BACKGROUND

### A.    Federal and State Laws Regulating Telehealth Abortions

Multiple sources of law impose restrictions on providing abortion-inducing drugs by mail. Federally, the Comstock Act of 1873, still in force today, makes it a criminal offense to mail any "article or thing designed, adapted, or intended for producing abortion." 18 U.S.C. § 1461

("Mailing obscene or crime-inciting matter").  A first offense against the Comstock Act can lead to imprisonment for up to five years; for each subsequent offense, up to ten years.  *Id.*

In Indiana, as early as 2013, if a physician were permitted to administer an abortion, the "physician [must have] examine[d] [the] pregnant woman in person before prescribing or dispensing an abortion inducing drug"; "'in person' d[id] not include the use of telehealth or telemedicine services."  Ind. Code § 16-34-2-1(a) (2013).  Likewise, as early as 2013, abortion clinics were required to seek licensure in the state.  Ind. Code § 16-21-2-2.5 (2013) ("Adoption of rules concerning birthing centers and abortion clinics; violations as to unlicensed facilities").  A person who "knowingly or intentionally . . . operate[d] . . . an abortion clinic that [was] not licensed" committed a Class A misdemeanor.  *Id.* § (c).  In 2022, Indiana enacted into law S.B.1, which, with little exception, criminalizes most abortions in the state.  Ind. Code § 16-34-2-1(a) (2022).  All of those restrictions remain the law today.

### B.     The Satanic Temple's Telehealth Abortion Clinic

The Satanic Temple, in its own words, "venerates, but does not worship, the allegorical Satan described in the epic poem Paradise Lost – the defender of personal sovereignty against the dictates of religious authority."  [Filing No. 21 at 1-2.]  Members of the Satanic Temple adhere to the Satanic Temple's Tenets, including Tenet III: "One's body is inviolable, subject to one's own will alone."  [Filing No. 21 at 2.]  The Satanic Temple promotes its Tenets by "protecting the exercise of [the Tenets] from government intrusion."  [Filing No. 21 at 2.]  Such promotion includes providing access to abortions.

In late 2022, the Satanic Temple formed an abortion clinic, called the "Samuel Alito's Mom's Satanic Abortion Clinic" ("the Clinic").  [Filing No. 37-2]; *see generally* Formation Records, Corporations and Business Services, N.M. Secretary of State, https://portal.sos.state.nm.us/BFS/online/corporationbusinesssearch (Business  ID#:  7035080).

The Clinic supports the Satanic Temple's effort to create a wider health network.  *TST Health*, https://www.tsthealth.org/.  The Clinic "does not maintain an office or other physical space," but through online telehealth, it serves patients who are physically located in New Mexico: To receive the Clinic's services, an individual must be "[i]n New Mexico at the time of the online visit," "[h]ave a New Mexico mailing address," and "receive the [abortion-inducing drugs] in New Mexico." *Id.*; [Filing No. 50-1 at 1.]  The Clinic allegedly seeks to extend beyond the borders of New Mexico to reach the State of Indiana. [Filing No. 21 at 14-15.]  In Indiana, the Clinic allegedly would help Members perform the Satanic Abortion Ritual.  [Filing No. 21 at 14-15.]

The Satanic Abortion Ritual is a ritual of "destruction."  [Filing No. 21-1 at 2.]  It is designed to "cast off notions of guilt, shame, and mental discomfort" regarding having an abortion. [Filing No. 21-1 at 2.]  The Ritual invites its Members to consult materials representing "great sacrifices in the struggle to establish reproductive rights" in order to "subdue stigmas" the patient "might feel from those who oppose abortion."  [Filing No. 21-1 at 3.]  As the Member induces her abortion, she is urged to read the Satanic Tenets aloud.  [Filing No. 21-1 at 5.]

### C.    This Litigation

On September 21, 2022, on behalf of its Members and in its own right, the Satanic Temple sued Governor Eric Holcomb and Attorney General Todd Rokita to enjoin S.B. 1.  [Filing No. 1.] Governor Holcomb and Attorney General Rokita filed a Motion to Dismiss, [Filing No. 17,] arguing, among other things, that the Satanic Temple lacked standing.  [Filing No. 18 at 6-8.]  The Satanic Temple then amended its Complaint.  [Filing No. 21.]  The First Amended Complaint no longer named the Governor as a Defendant but added Marion County Prosecutor Ryan Mears as a Defendant.  [Filing No. 21 at 1.] Acknowledging this amendment, the Court then denied the earlier Motion to Dismiss as moot, leaving the First Amended Complaint the operative pleading.  [Filing No. 27 at 1.]

5

The Satanic Temple's First Amended Complaint attacks only S.B. 1.  [Filing No. 21 at 4.].

Alleging that it intends to provide abortions to Members in Indiana, the Satanic Temple states that

S.B. 1 unlawfully interferes with the rights of its Members.  The Satanic Temple claims that S.B. 1:

- violates the Indiana Religious Freedom Restoration Act by preventing a Member from exercising her Satanic Tenet-based religious beliefs to have an abortion, [Filing No. 21 at 14];

- further violates the Indiana Religious Freedom Restoration Act by imposing a substantial burden on the exercise of the Satanic Abortion Ritual, [Filing No. 21 at 15];

- violates the Equal Protection Clause by providing no exceptions for those who are pregnant by accident, and discriminating in favor of those who are pregnant by rape or incest, [Filing No. 21 at 13-14];

- violates the Takings Clause by providing no compensation for the value of occupying a woman's reproductive system, "taking" the right to otherwise use a woman's uterus, [Filing No. 21 at 10-11]; and

- violates the Thirteenth Amendment by providing no compensation to an involuntarily pregnant woman for "providing the labor necessary to give birth," imposing on such women the conditions of slavery, [Filing No. 21 at 12-13].

Likening its cause to historical litigation by the National Association for the Advancement of

Colored People, the Satanic Temple has maintained its suit on behalf of its Members in secrecy.

[Filing No. 44 at 20] (citing *NAACP v. Alabama*, 357 U.S. 449, 459 (1958))].  Its Members are

unnamed; its declarations are under pseudonym; and its executive director is unidentified, "not

disclos[ing] [his/her] real name" for fear of "domestic terrorists."  [Filing No. 44-1 at 1.]  The

Satanic Temple justifies the suit's secrecy based on the leak preceding the Supreme Court's

decision in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. ---, 142 S. Ct. 2288 (2022); the

alleged leak of confidential information by Attorney General Rokita in a prior abortion case; and

the Satanic Temple's prior exposure to violence.  [Filing No. 45 at 3.]  "[E]ven [for] high

government officials," the Satanic Temple asserts, "the passions stirred up by the culture war over

abortion can overcome . . . good judgment."  [Filing No. 45 at 3.]

The fact that the Satanic Temple (1) does not name the Members on whose behalf it brings this suit and (2) lacks a current Indiana abortion clinic are both at the center of Defendants' Motion to Dismiss for failure to state a claim and lack of standing.  [Filing No. 36.]  In their briefing, Defendants argue that the Court should permit "jurisdictional discovery as to whether The Satanic Temple has standing." [Filing No. 37 at 13.] To that end, the parties submitted evidence, including affidavits and declarations, filings and exhibits, and interrogatories and admissions.  The Court also ordered supplemental briefing on how recent Supreme Court decisions affect the Satanic Temple's standing.  [Filing No. 53.]  Throughout the standing analysis, the Court will turn its attention to the submitted evidence and supplemental briefing that is relevant to the case's ultimate resolution.

The threshold question in this case, as in every case, is the power of the Court to entertain the lawsuit; accordingly, motions that challenge that power are dealt with first.  *See Vt. Agency of Nat. Res. v. U.S. ex rel Stevens*, 529 U.S. 765, 778 (2000).  Accordingly, the Court turns first to the parties' arguments regarding standing.

### III.
#### DISCUSSION

"Of one thing we may be sure," the Supreme Court has stated, "[t]hose who do not possess Art. III standing may not litigate as suitors in the courts of the United States." *Love Church v. City of Evanston*, 896 F.2d 1082, 1084 (7th Cir. 1990) (quoting *Valley Forge Coll. v. Amns. United for the Separation of Church & State*, 454 U.S. 464, 475-76 (1982)).  To have standing for "injunctive relief, a plaintiff must show that [s]he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488,

493 (2009) (citation omitted).  An organization can assert standing either on behalf of its members or in its own right.  The Satanic Temple asserts both.

### A.        Standing on Behalf of the Satanic Temple's Members

Defendants argue that the Satanic Temple does not have associational standing because it has not identified its Members.  [Filing No. 37 at 10.]  Defendants argue that the Satanic Temple "does not specify how many female members are pregnant, whether the members who were pregnant 9 months ago are still pregnant despite the passage of time, whether the women can take advantage of S.B. 1's exceptions, and whether the women still need relief given that a state court enjoined S.B.1." [Filing No. 37 at 11.]  The State notes that the Satanic Temple "has not identified its members, sued on behalf of particular members, filed declarations from them, or given them an opportunity to direct the course of the litigation." [Filing No. 56 at 6.]  Consequently, Defendants assert, the Satanic Temple cannot show that it "'has identified members and represents them in good faith,' much less that unidentified members have standing to sue." [Filing No. 56 at 6 (quoting *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 143 S. Ct. 2141, 2158 (2023)).]  In the place of identified members, the State continues, the Satanic Temple cannot resort to using statistical probability.  [Filing No. 37 at 10-11.]

In response, the Satanic Temple argues that "no authority requires that identity be made by name." [Filing No. 44 at 19.]  The Satanic Temple states that it proceeds on behalf of its Members anonymously because "neither the Court nor Defendants can guarantee their identity will remain secret." [Filing No. 44 at 19 n.16.]  Further, the Satanic Temple argues that the First Amendment grants members a "right to keep his or her membership" in the Satanic Temple a "secret." [Filing No. 44 at 20.]  As a legitimate organization, the Satanic Temple argues, it includes the "involvement of its members in its programs and funding," supporting the fact that it is "representing its members in good faith." [Filing No. 57 at 6.]  In the place of identification, the

Satanic Temple offers a statistics-based declaration as "the requisite proof" that ninety-four Members of the Satanic Temple will be "individually harmed by the Indiana Abortion Ban every year and at least one" is "pregnant at any given point in time." [Filing No. 44 at 20.]

In reply, Defendants reiterate that the Satanic Temple "has never identified a single member with standing.  In fact, it has refused to identify the member(s) it believes provides a basis for standing." [Filing No. 51 at 4.]  Further, Defendants assert that an organization cannot establish standing through statistical probability; without specific facts to support identifiable members, the State argues, the Satanic Temple "has failed to meet its burden" to support each disputed element of standing with "competent proof." [Filing No. 51 at 4.]

In general, a plaintiff must assert "her own legal rights, not those of a third party." *Freedom from Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1468 (7th Cir. 1988).  That general rule permits an exception – for "associational standing" on behalf of the plaintiff organization's members.  An organization has associational standing when:

a)  its members would otherwise have standing to sue in their own right;

b)  the interests it seeks to protect are germane to the organization's purpose; and

c)  neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1976).  For the first prong, whether a member would have standing to sue in her own right, the Supreme Court has cautioned that allegations of injury must be "specific" to an "identified member." *Earth Island Inst.*, 555 U.S. at 498.

The Satanic Temple argues that it need not identify specific Members because the First Amendment allows each Member not to disclose her affiliation, citing *NAACP v. Alabama*, 357 U.S. 449, 459 (1958). [Filing No. 44 at 20.]  Yet the Supreme Court has explained that such anonymity is permitted "only where all the members of the organization are affected by the

challenged activity." *Earth Island*, 555 U.S. at 498-99 (emphasis omitted).  Here, the challenged abortion law allegedly affects only some, but not all, of the Satanic Temple's Indiana membership, only ninety-four out of over 11,000 members.  [Filing No. 44-2 at 3 (ninety-four); Filing No. 44-1 at 3 (over 11,000).]  Further, in *NAACP*, the organization was willing to "divulg[e] the identity of its members who . . . [held] official positions." *NAACP*, 357 U.S. at 464.  Here, the Satanic Temple is not willing to divulge any such identity.  Its "Executive Director" hides "[his/her] real name" for fear of "domestic terrorists." [Filing No. 44-1 at 1.][1]

The Satanic Temple then quotes the Seventh Circuit as stating, "the requirement for an individual member to have standing still allows for the member on whose behalf the suit is filed to remain unnamed by the organization." [Filing No. 44 at 19 (quoting *Prairie Rivers Network*, 2 F.4th at 1011).]  That statement is correctly quoted, but its context is improperly omitted.  In the very next sentence, the Seventh Circuit observed that in light of Supreme Court precedent, it would "reserve for another day whether that statement survives." *Prairie Rivers Network v. Dynegy*

---

[1] The Court takes seriously the potential risks of retribution faced by unpopular parties accessing the judicial system.  For that reason, the Court provides a mechanism that parties must use to request leave to proceed under a pseudonym.  S.D. Ind. L.R. 10-1.  Utilizing the organization itself as a functional pseudonym is no replacement for abiding by the requirements imposed by Local Rules and within the guidelines of the Seventh Circuit.  *Id.* ("This rule provides a vehicle for a litigant's identity to be disclosed to the court and to the opposing party but not to the public at large pending the outcome of the court's determination of whether the litigant is entitled to proceed anonymously."); *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004) ("The danger of retaliation is often a compelling ground for allowing a party to litigate anonymously."); *see also Doe v. Ind. Black Expo, Inc.*, 923 F. Supp. 137, 139-40 (S.D. Ind. 1996).

It is possible for a litigant to proceed anonymously while concurrently providing specific allegations.  *See, e.g., John Doe, formerly known as Jane Doe v. Holcomb*, 883 F.3d 971, 974-75 (7th Cir. 2018) (transgender immigrant proceeded under pseudonym providing specific allegations for suit against state actor to legally change name).  This should be no surprise to the Satanic Temple; its members have litigated under pseudonym in prior proceedings.  *E.g., Doe v. Parson*, 960 F.3d 1115 (8th Cir. 2020) (Satanic Temple member who intended to have abortion sued using pseudonym in suit for declaratory judgment against informed consent law).

*Midwest Generation, LLC*, 2 F.4th 1002, 1011 (7th Cir. 2021); *see Earth Island*, 555 U.S. at 498-99.   The Seventh Circuit then referred to sister circuits which "expressly require names for associational standing on the pleadings." *Id.* (citing *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J., sitting by designation); *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)).

Although the Satanic Temple must identify individual Members specifically, the Satanic Temple attempts to identify them statistically, based on the work conducted by "Dr. J.D." [Filing No. 44-2 at 1.]   Though identified to the Court, Dr. J.D, like the alleged Members of the Satanic Temple, is not identified to the public.   [Filing No. 44-2 at 1.]   Dr. J.D. is not employed by, or contracted with, the Clinic; when asked to identify such licensed physicians, the Satanic Temple answered "none." [*See* Filing No. 50-2 at 2.]   Dr. J.D. appears to have no personal knowledge of the Satanic Temple's members; the doctor is simply "advised" of the Satanic Temple's procedures. [*See, e.g.*, Filing No. 44-2 at 4.]   Based on being advised of these procedures, Dr. J.D. estimates the number of injured Members using the following average metrics: the number of Satanic Temple Members of child-bearing age; the 2017 Indiana fertility rate; the 2021 Indiana abortion rate; the percentage of pregnancies that are unintentional; and the percentage of pregnancies that occur due to failure of birth control. [Filing No. 44-2 at 2-3.]   "[T]o a reasonable degree of medical certainty," Dr. J.D. opines, at least one member the Satanic Temple is involuntarily pregnant each year. [Filing No. 44-2 at 3.]

These calculated allegations do not inspire confidence.   Most basically, a population average does not guarantee an individual result.   It is statistically possible for the average number of pregnancies to be greater than zero, and for exactly zero Members to be pregnant.   Additionally,

even if these calculations were accurate, the result does not foreclose the possibility that someone who is involuntarily pregnant might voluntarily decide to bring her pregnancy to term.

The ambiguity inherent in the Satanic Temple's analysis illustrates the exact difficulty the Supreme Court has cautioned to avoid: "In part because of the difficulty of verifying the facts upon which such probabilistic standing depends," the Supreme Court "has required plaintiffs claiming organizational standing to identify members who have suffered the requisite harm—surely not a difficult task" when there are allegedly so many members. *Earth Island Inst.*, 555 U.S. at 499. The Supreme Court has unequivocally prohibited statistical standing lest "[t]his novel approach to the law of organizational standing . . . make a mockery of [the Supreme Court's] prior cases, which have required plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm," which requires "naming the affected members." *Id.* at 498-99.

Even if it were "possible–perhaps even likely–that one individual w[ould] meet" the criteria of standing, speculation through statistics is no replacement for specifics. *Id.*; *see, e.g.*, *Prairie Rivers Network*, 2 F.4th at 1009-10 (holding no associational standing for environmental-rights organization that failed to identify "who [its] members [were] or how exactly" they would have been harmed); *Keep Chicago Livable v. City of Chicago*, 913 F.3d 618, 625 (7th Cir. 2019) (holding no associational standing for home-sharing rights organization that left "the record . . . unclear whether any of the six named plaintiffs remain members"); *Disability Rights Wis. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008) (holding no associational standing for disability-rights organization that failed to identify a specific student who would be harmed).

Although standing is permissible for "abortion providers to invoke the rights of their actual or potential patients in challenges to abortion-related regulations," the Satanic Temple has failed

12

to meet its burden to prove that there are actual or potential Indiana patients at all. *June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2118 (2020), *abrogated by Dobbs*, 142 S. Ct. 2228.  The Satanic Temple states it is "highly likely" that one or more Indiana Members would use the Clinic, and it also states that it has received "hundreds of inquiries from [Satanic Temple] [M]embers"; tellingly, however, it specifies no Indiana Member who has called the Clinic, not even anonymously.  [Filing No. 44-1 at 6-7]; *see Common Cause Ind. v. Lawson*, 937 F.3d 944, 952 (7th Cir. 2019) (holding organizations had standing in part because diversion of resources included managing phone calls from Indiana residents).  When asked whether an Indiana Member has ever received abortion-inducing drugs from the Satanic Temple, the Satanic Temple, "to the best of its knowledge," answers no, but "can neither admit," "deny," nor "vouch for" that fact.  [Filing No. 50-1 at 2.]

Overall, the Satanic Temple invites a paradox of inferences.  "To a reasonable degree of medical certainty," it points to statistically identified Members, which the Supreme Court forbids; yet it declines to "vouch for" specifically identified Members, which the Supreme Court requires. Such equivocal allegations fall short of overcoming a factual challenge to standing.  All the Satanic Temple adds is an unidentified doctor opining on unidentified members, identifying them only through statistical probability.  This, the Supreme Court has explained, simply will not do.  The Satanic Temple has failed to prove by a preponderance of the evidence the facts necessary to support associational standing.[2]

---

[2] Because the Satanic Temple has not established associational standing, the Court need not and does not engage in an evaluation of potential injuries to Members that the Satanic Temple claims they actually or imminently might incur.

## B.      Standing for the Satanic Temple Itself

Defendants argue that the Satanic Temple does not have standing in its own right, falling short of demonstrating injury in fact, causation, and redressability.   [Filing No. 37 at 7-8.] Defendants argue that the Satanic Temple has not demonstrated injury in fact; it has failed to show "such a clinic exists or is reasonably likely to exist in the near future" and that the First Amended Complaint does not "specify where the Clinic is located, what services it performs, or where its providers are licensed." [Filing No. 37 at 7.]  Defendants further assert that the Satanic Temple has not demonstrated causation; "[e]ven before S.B. 1's enactment, both federal and state law would prohibit The Satanic Temple from providing abortion-inducing drugs by mail." [Filing No. 37 at 8-9.]  And Defendants assert that the Satanic Temple has not demonstrated redressability; even if "it had a clinic capable of supporting Indiana patients," it does not show that "anyone would use it to procure abortions that would be lawful but for S.B. 1." [Filing No. 37 at 8.]  Defendants conclude that, in contrast to the plaintiff who intended to engage in prohibited conduct in *303 Creative v. Elenis*, the Satanic Temple never intended to bring its Clinic to Indiana; if it had, it would have intended to "compl[y] with Indiana's unchallenged health and safety regulations." [Filing No. 56 at 3-4 (citing *303 Creative v. Elenis*, 600 U.S. 570, 583 (2023)).]

In response, the Satanic Temple argues that it has met the requirements of standing regarding injury in fact, causation, and redressability.  The Satanic Temple argues that it has suffered multiple injuries, including facing the threat of prosecution, expending costs to comply with S.B. 1, diverting resources to respond to S.B. 1, and being frustrated in its mission to spread the Satanic Tenets and the Satanic Abortion Ritual.  [Filing No. 44 at 9 (threat of prosecution); Filing No. 44 at 12 (cost of compliance); Filing No. 44 at 13 (diversion of resources); Filing No. 44 at 13-14 (frustration of Satanic mission)].  The Satanic Temple states that *Biden v. Nebraska* recognizes that frustrations to its mission amount to an injury in fact [Filing No. 57 at 1-3 (citing

*Biden v. Nebraska*, 143 S. Ct. 2355, 2368 (2023)].  It asserts that *303 Creative* stands for the proposition that the Satanic Temple's injury stems from the liability "inherent in providing its intended services." [Filing No. 57 at 3-4.]  The only obstacle blocking the Clinic, according to the Satanic Temple, is its fear of civil and criminal consequences.  [Filing No. 44 at 9, 13.]  As to causation and redressability, the Satanic Temple asserts that it seeks to overturn Indiana's entire abortion-law apparatus to the extent it causes the Satanic Temple's injuries.  [Filing No. 44 at 12-13; Filing No. 57 at 3.]

In reply, Defendants argue that the Satanic Temple has demonstrated no actual or imminent injury sufficient for standing.  [Filing No. 51 at 1-2.]  *Biden v. Nebraska*, the State argues, "never held that an abstract injury to an organization's purported mission constitutes injury in fact.  It focused on . . . 'a legally protected interest, like property or money.'" [Filing No. 60 at 2 (quoting *Biden*, 143 S. Ct at 2365-66).]  Defendants assert that the Clinic, based in New Mexico, "has never provided abortions to any woman in Indiana," and has only "generic allegations of an intention to provide abortions to unidentified women at some unspecified time."  [Filing No. 51 at 1-2.] Defendants reiterate that the Satanic Temple "faces independent legal barriers to providing abortions in Indiana" under state and federal laws prohibiting unlicensed abortion clinics, prohibiting mail-order abortion drugs, and prohibiting telehealth abortions.  [Filing No. 51 at 2-3.] And Defendants reply that the Satanic Temple's First Amended Complaint "nowhere states" that it is "challenging all medical requirements that would affect its theoretical business model, much less explains how all such health and safety requirements are allegedly invalid."  [Filing No. 51 at 3.]  With the Satanic Temple's proposed abortion model independently illegal, Defendants argue,

S.B. 1 is neither the cause of the Satanic Temple's injuries nor an appropriate target for redress. [Filing No. 51 at 3.][3]

### 1.    Injury in Fact

Injury in fact is the "first and foremost" element of standing. *Carello*, 930 F.3d at 833 (quoting *Steel Co.*, 523 U.S. at 103). As such, this case's multiple alleged injuries are addressed first, beginning with the threat of prosecution and the cost of compliance.

### a.    Threat of Prosecution and Cost of Compliance

If a plaintiff "must comply with the law or face sanctions," the plaintiff can sue to enjoin the law before facing enforcement through a "pre-enforcement challenge." *Hays v. City of Urbana, Ill.*, 104 F.3d 102, 103-04 (7th Cir. 1997) (citing *Pierce v. Soc'y of Sisters*, 268 U.S. 510 (1925)). In a pre-enforcement challenge, a future harm amounts to injury in fact if the harm is "certainly impending," or if the harm poses a "substantial risk" of occurring, but not if the harm is merely "possible." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). To prove such a threatened injury, the plaintiff must show a "credible threat of prosecution" of conduct arguably affected with a constitutional interest, *Driehaus*, 573 U.S. at 159, and "make[] clear its intention to continue its possibly unlawful conduct," *Sweeney v. Raoul*, 990 F.3d 555, 560 (7th Cir. 2021). The intent to engage in possibly unlawful conduct must exceed "'some day' intentions"—those "without any description of concrete plans" or "any specification of when the some day will be." *Lujan*, 504 U.S. at 564 (emphasis omitted). Whether the plaintiff intends to engage in its possibly unlawful conduct is a question of

---

[3] Although the Satanic Temple already benefitted from a chance to submit supplemental briefing, and was warned that extraneous materials may be struck, [Filing No. 53], the Satanic Temple submitted an additional letter to the Court, this time arguing that various Indiana abortion provisions are preempted, [Filing No. 61 at 1]. Defendants have moved to strike the letter. [Filing No. 62.]. Having warned the Satanic Temple of the consequences, the Court strikes the letter.

fact. *Younger v. Harris*, 401 U.S. 37, 42 (1971) (holding no standing for certain plaintiffs who had not "alleged that they would be prosecuted for the conduct they planned to engage in," a fact that "the District Court had [not] found.").

The Satanic Temple has no Clinic in Indiana presently: it operates no "licensed . . . abortion clinic in Indiana," employs no "physicians who are licensed to practice medicine in Indiana," and provides no "in-person services to patients" in Indiana. [Filing No. 50-1 at 1-2.] Likewise, the Satanic Temple plans no Clinic in Indiana prospectively: it "does not presently intend" to start an in-person abortion clinic in Indiana, and it "does not presently intend" to seek a license for an abortion clinic in Indiana. [Filing No. 50-1 at 1-2.]

Unlike the plaintiff in *303 Creative*, who claimed an intent to follow through on her prohibited conduct, *see* 600 U.S. at 583, the Satanic Temple is far closer to plaintiffs in other cases who failed to demonstrate that they intended to do the same. *See, e.g.*, *Ashcroft v. Mattis*, 431 U.S. 171, 172-73 & n.2 (1977) (holding no standing in moot case regarding wrongful death of one son, finding it was "speculative" that another son "might" have been in danger of wrongful death in the future due to involvement with police); *O'Shea v. Littleton*, 414 U.S. 488, 498 (1974) (holding no standing for plaintiffs who failed to "indicate that it [was] otherwise their intention" to violate the law); *Hays*, 104 F.3d at 104 (holding no standing for plaintiff landlords who failed to show they would bear the cost of compliance because they did not rent apartments falling within Section 8 ordinance); *Love Church*, 896 F.2d at 1086 (holding no standing for plaintiff church that failed to apply for a permit and was not threatened with prosecution for operating without a permit).

The Court finds that the Satanic Temple's allegations fall short of even "some day" intentions, and that it fails to meet its burden to make clear it intends to engage in conduct that is

17

unlawful under S.B. 1.  Without such intent, the Satanic Temple has failed to demonstrate that its alleged cost of compliance or threat of prosecution amounts to injury in fact.

        b.      <u>Diversion of Resources</u>

If an organization shows a "drain on the organization's resources" as a result of challenged government action, the organization can prove actual injury.  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  However, "where the harm is not imminent," "[m]itigation expenses do not qualify as actual injuries."  *Remijas*, 794 F.3d at 695 (citing *Clapper*, 133 S. Ct. at 1152 (holding no injury in fact for plaintiffs who "inflict[ed] harm on themselves based on their fears of hypothetical future harm that [was] not certainly impending.")).  As the Court has found above, due to the Satanic Temple's own lack of intent, it faces no imminent harm from the enforcement of S.B. 1; even if the Satanic Temple had diverted its resources, it has fallen short of proving injury in fact.

        c.      <u>Frustration to the Satanic Temple's Mission</u>

No matter how longstanding an organization's interest, and no matter how sterling an organization's qualifications, a concrete injury does not include a mere "interest in a problem." *Sierra Club v. Morton*, 405 U.S. 727, 739 (1972) (holding organization lacked standing even though organization argued it was vindicating the public interest).  Nor does it include "mere indignation." *Carello*, 930 F.3d at 834 (holding plaintiff lacked standing even though plaintiff argued indignation amounted to concrete injury).

After the Court's determination that the Satanic Temple's allegations do not demonstrate injury in fact from the threat of prosecution, the cost of compliance, or the diversion of resources, all that remains is a frustration to promoting the Satanic Tenets and the Satanic Abortion Ritual – in other words – simply a "setback to the organization's abstract social interests." *Havens Realty Corp.*, 455 U.S. at 379 (citing *Sierra Club*, 405 U.S. at 739).  While such a "generalized grievance"

18

may suit the "rarified atmosphere of a debating society," it does not suffice for standing. *Amns. United for Separation of Church & State, Inc.*, 454 U.S. at 470, 472 (1982); *see also Biden*, 143 S. Ct. at 2365-66 (holding standing for plaintiff that was exposed to concrete injury of millions of dollars); *Keep Chicago Livable*, 913 F.3d at 624 (holding no standing for home-sharing rights organization where home-rental ordinance "burden[ed] the organization's education and advocacy mission" but plaintiffs did not "own[] or rent[] property or otherwise engage[] in activity regulated or protected by" the ordinance); *see also Freedom from Religion Found.*, 845 F.2d at 1467 (holding no standing for advocacy organization where religious display offended the plaintiffs' religious beliefs but plaintiffs suffered only "psychological harm that result[ed] from witnessing conduct with which [they] disagreed").

In sum, the Satanic Temple's allegations fail to prove it has suffered any injury in fact. While this failure alone defeats standing, the Court goes on to consider the remaining elements of standing.

### 2. *Causation and Redressability*

Causation and redressability are the remaining two elements of standing. A plaintiff must prove the defendant caused its injury, and it must be likely that a favorable judicial decision will redress its injury. *Lujan*, 504 U.S. at 560-61. For causation, the plaintiff need not prove proximate cause, but it still must prove a "fairly traceable" connection between the defendant's challenged conduct and the plaintiff's alleged injury. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386, 1391 n.6 (2014). The injury must not have resulted from the "independent action of some third party not before the court." *Lujan*, 504 U.S. at 560. And the injury must not have resulted from conduct or legal provisions not before the court. *See California v. Texas,* 141 S. Ct. 2104, 2119 (2021) (holding no causation in healthcare-law challenge where showing "that the minimum essential coverage requirement is unconstitutional would not show that enforcement

of any of the[] other provisions" injuring the plaintiffs was unconstitutional).  For redressability, it is often intricately linked with causation; if there is no causation, then a favorable decision directed toward the challenged conduct will not likely redress the plaintiff's injury.  That is, if "[a] plaintiff . . . would have been no better off had the defendant refrained from" the challenged acts, then the plaintiff "does not have standing." *Silha*, 807 F.3d at 174 (citation omitted).

In this case, the Satanic Temple alleges that S.B. 1 imposes the threat of prosecution, the cost of compliance, the diversion of its resources, and the frustration to promoting its mission to spread the Satanic Tenets.  Yet, as the Defendants note, other unchallenged federal law and Indiana laws would each independently prohibit the Satanic Temple from lawfully operating its mail-order abortion service.  *See, e.g., Clapper*, 133 S. Ct. at 1148 (holding no causation when plaintiffs seeking an injunction of a statute authorizing surveillance could not demonstrate that government would be unlawfully surveilling them under the challenged statute, as opposed to under some other independent statute); *Int'l Union v. Johnson*, 674 F.2d 1195, 1199 (7th Cir. 1982) (holding no redressability when plaintiffs seeking an injunction of a statute allegedly barring them from receiving unemployment benefits were also independently barred from receiving unemployment benefits by another statute).[4]

---

[4] While the Satanic Temple has introduced exhibits arguing that federal law does not prevent mailing abortion-inducing drugs, that question of law is sharply contested.  *Compare* Filing No. 45-5 at 17 (Memorandum Opinion for the General Counsel of the United States Post Office: The Comstock Act does "not . . . prohibit the conveyance of articles intended for preventing conception or producing an abortion where the sender lacks the intent that those items should be used unlawfully."), *with* Filing No. 45-4 at 2 (Letter from the Missouri Attorney General on behalf of 20 state attorneys general: the Comstock Act "expressly prohibits using the mail to send or receive any drug that will 'be used or applied for producing abortion.' 18 U.S.C. § 1461.").

In addition to falling short of proving injury in fact, the Satanic Temple has failed to meet its burden of proving causation and redressability.  The result is a lack of standing.  The Court **GRANTS** Defendants' Motion to Dismiss the First Amended Complaint.  [36.]

## IV.
### FURTHER PROCEEDINGS

"When a district court concludes that the plaintiff lacks standing—and thus that the court lacks jurisdiction—the judge may either dismiss without leave to amend or dismiss without prejudice." *Flynn*, 39 F.4th at 954 (citing *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 935 F.3d 573, 581 (7th Cir. 2019)).  Because the Satanic Temple has already used its one amendment as of right, the decision to permit further leave to amend is committed to the Court's "broad" discretion.  Fed. R. Civ. P. 15(a); *MAO-MSO Recovery II, LLC*, 935 F.3d at 586.

The Satanic Temple should have "consider[ed] carefully and promptly the wisdom of amending to meet the arguments in the motion.  A responsive amendment may [have] avoid[ed] the need to decide the motion or reduce the number of issues to be decided, and . . . expedite[d] determination of issues." Fed. R. Civ. P. 15, 2009 Amendment Advisory Committee Notes.  But far from expediting the determination of jurisdiction, the Satanic Temple did not use its earlier opportunity to cure its standing deficiencies.  Instead, it tried to introduce nonresponsive constructive amendments, each slipped into its briefing.  Although it alleged claims under RFRA, in its response brief, the Satanic Temple requested leave to "replead" its RFRA counts as First Amendment claims.  [Filing No. 44 at 39.]  Although it challenged only S.B. 1 in its First Amended Complaint, in its response brief, the Satanic Temple asserted that it seeks to enjoin Indiana's entire abortion-law apparatus to the extent it causes the Satanic Temple's injuries.  [Filing No. 21 at 4 (First Amended Complaint); Filing No. 44 at 13 (response brief).]  Then, in supplemental briefing, the Satanic Temple asserted it wanted to enjoin "any and all Indiana laws" conflicting with the

Satanic Temple's mission to provide abortion services for its Members in Indiana.  [Filing No. 57 at 3.]

It is rarely appropriate to permit constructive amendments "smuggle[d]" through the briefs. *Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023).  Even if this were the rare appropriate case, the Satanic Temple's requests collide with its central obstacles to standing—no identified Members, and no intent to engage in unlawful conduct—abundantly clear from the Satanic Temple's own admissions of fact.  [Filing No. 50-1.]  Unless the Court permits withdrawal, judicial admissions are "conclusively established." Fed. R. Civ. P. 36(b).  Judicial admissions are not evidence; judicial admissions "trump[] evidence"; they "ha[ve] the effect of withdrawing a fact from contention" entirely.  *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 333 (7th Cir. 1993) (judicial admissions trump evidence); *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (judicial admissions withdraw fact from contention).  These fatal flaws should have been apparent to the Satanic Temple long before the close of briefing.  *See Draper*, 827 F.3d at 3 ("[W]hy the advocacy group would have needed formal discovery to identify which of its own members may have been injured by the regulation is a mystery the group leaves unsolved.").  Granting leave to amend would practically produce only more briefing, which the Court has already once entertained.  [Filing No. 53.]

The Satanic Temple had an opportunity to submit evidence.  It had notice of its standing defects.  And it was given the opportunity to cure them.  It has failed on all fronts.  Ultimately, the Satanic Temple has failed to prove by a preponderance of the evidence those facts essential for granting standing.  Accordingly, the Court **DISMISSES** the First Amended Complaint for lack of jurisdiction without leave to amend.  *See, e.g., Flynn*, 39 F.4th at 950 (dismissal for lack of jurisdiction without leave to amend where plaintiffs "continued to rely on allegations and legal

argument rather than point to evidence of an actual injury"); *MAO-MSO Recovery II, LLC*, 935 F.3d at 586 (dismissal for lack of standing without leave to amend after amendment to the complaint failed to cure problem of standing).

## V.
### CONCLUSION

Based on the foregoing, the Court:

- **GRANTS** Defendants' Motion to Dismiss the First Amended Complaint, [36];

- **DISMISSES** the Satanic Temple's First Amended Complaint for lack of jurisdiction without leave to amend, [21];

- **STRIKES** the Satanic Temple's letter, [61]; and

- **DENIES** Defendants' Motion for Leave to Respond to the Satanic Temple's letter as moot, [62.]

Final judgment will enter accordingly.

Date: 10/25/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via CM/ECF to All Counsel of Record**

23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THE SATANIC TEMPLE, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-01859-JMS-MG |
| | ) | |
| TODD ROKITA, in his capacity as | ) | |
| Attorney General of Indiana, and | ) | |
| RYAN MEARS, in his capacity as | ) | |
| Marion County Prosecutor, | ) | |
| | ) | |
| *Defendants*. | ) | |

### FINAL JUDGMENT PURSUANT TO FED. R. CIV. PRO. 58

Pursuant to the Order granting Defendants' Motion to Dismiss the First Amended Complaint on October 25, 2023, the Court now enters **FINAL JUDGMENT** in favor of Defendants and against Plaintiff such that Plaintiff's claims against Defendants are **DISMISSED** for lack of jurisdiction without leave to amend, and Plaintiff shall take nothing by way of its First Amended Complaint.

Date: 10/25/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

### Distribution via CM/ECF to All Counsel of Record

# *** PUBLIC DOCKET ***

APPEAL,CLOSED

## U.S. District Court
## Southern District of Indiana (Indianapolis)
## CIVIL DOCKET FOR CASE #: 1:22-cv-01859-JMS-MG

THE SATANIC TEMPLE, INC. v. ROKITA et al
Assigned to: Judge Jane Magnus-Stinson
Referred to: Magistrate Judge Mario Garcia
Cause: 42:1983 Civil Rights Act

Date Filed: 09/21/2022
Date Terminated: 10/25/2023
Jury Demand: None
Nature of Suit: 890 Other Statutory Actions
Jurisdiction: Federal Question

**Plaintiff**

**THE SATANIC TEMPLE, INC.**

represented by **William James Mac Naughton**
W. James Mac Naughton, Esq.
7 Fredon Marksboro Road
Newton, NJ 07860
732-213-8180
Fax: 732-875-1250
Email: wjm@wjmesq.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**TODD ROKITA**
*in his capacity as the Attorney General of
Indiana*

represented by **Aaron M. Ridlen**
INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington St.
Indianapolis, IN 46204-2770
(317) 232-2826
Email: aaron.ridlen@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Blake Thomas Erickson**
Office of the Indiana Attorney General
302 W Washington St
Ste IGCS 5th Floor
Indianapolis, IN 46203
317-233-7311
Email: Blake.Erickson@atg.in.gov
*ATTORNEY TO BE NOTICED*

**James A. Barta**
Office of the Indiana Attorney General

302 West Washington Street
IGCS-5th Floor
Indianapolis, IN 46204
317-232-0709
Email: james.barta@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Melinda Rebecca Holmes**
INDIANA ATTORNEY GENERAL
Indiana Government Center South, 5th Floor
302 West Washington St.
Indianapolis, IN 46204-2770
(317) 232-6357
Fax: (317) 232-7979
Email: melinda.holmes@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Rebekah Durham**
Office of Indiana Attorney General
302 W Washington Street
IGCS - 5th Floor
Indianapolis, IN 46204
317-232-6329
Email: rebekah.durham@atg.in.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**RYAN MEARS**                      represented by   **Aaron M. Ridlen**
*in his capacity as Marion County Prosecutor*        (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Blake Thomas Erickson**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **James A. Barta**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Melinda Rebecca Holmes**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

                                                     **Rebekah Durham**
                                                     (See above for address)
                                                     *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|------------|---|-------------|
| 09/21/2022 | 1 | COMPLAINT against All Defendants, filed by THE SATANIC TEMPLE. (Filing fee $402, receipt number AINSDC-7288973) (Attachments: # 1 Exhibit A-The Satanic Abortion Ritual, # 2 Proposed Summons, # 3 Civil Cover Sheet)(Mac Naughton, William) (Entered: |

| | | |
|---|---|---|
| | | 09/21/2022) |
| 09/26/2022 | 2 | PRACTICES AND PROCEDURES before Judge Jane Magnus-Stinson. (JSR) (Entered: 09/26/2022) |
| 09/26/2022 | 3 | MOTION for Attorney(s) W. James Mac Naughton to Appear pro hac vice (Filing fee $100, receipt number AINSDC-7293613), filed by Plaintiff THE SATANIC TEMPLE. (Attachments: # 1 Text of Proposed Order)(Mac Naughton, William) (Entered: 09/26/2022) |
| 09/26/2022 | 4 | MAGISTRATE JUDGE's NOTICE of Availability to Exercise Jurisdiction issued. (DJH) (Entered: 09/26/2022) |
| 09/27/2022 | 5 | ORDER granting 3 Motion to Appear pro hac vice. Attorney William James Mac Naughton for THE SATANIC TEMPLE added. Signed by Magistrate Judge Mario Garcia on 9/27/2022. (CBU) (Entered: 09/27/2022) |
| 10/04/2022 | 6 | Summons Issued as to ERIC HOLCOMB, TODD ROKITA. (JSR) (Entered: 10/04/2022) |
| 10/08/2022 | 7 | NOTICE of Appearance by William James Mac Naughton on behalf of Plaintiff THE SATANIC TEMPLE. (Mac Naughton, William) (Entered: 10/08/2022) |
| 12/10/2022 | 8 | WAIVER OF SERVICE Returned Executed, filed by THE SATANIC TEMPLE. All Defendants. (Mac Naughton, William) (Entered: 12/10/2022) |
| 01/23/2023 | 9 | NOTICE of Appearance by Jefferson S. Garn on behalf of Defendants ERIC HOLCOMB, TODD ROKITA. (Garn, Jefferson) (Entered: 01/23/2023) |
| 01/23/2023 | 10 | NOTICE of Parties' First Extension of Time re, filed by Defendants ERIC HOLCOMB, TODD ROKITA. (Garn, Jefferson) (Entered: 01/23/2023) |
| 01/24/2023 | 11 | SCHEDULING ORDER - Telephonic Initial Pretrial Conference is set for 3/22/2023 10:30 AM (Eastern Time) before Magistrate Judge Mario Garcia. No fewer than seven (7) days before the IPTC, counsel must file a Proposed CMP. The information needed to participate in this telephonic conference will be provided by a separate notification. Signed by Magistrate Judge Mario Garcia on 1/24/2023. (CKM) (Entered: 01/24/2023) |
| 02/20/2023 | 12 | NOTICE of Substitution of Appearance by Aaron M. Ridlen replacing *Jefferson S. Garn* on behalf of ERIC HOLCOMB, TODD ROKITA (Attachments: # 1 Text of Proposed Order) (Ridlen, Aaron) (Entered: 02/20/2023) |
| 02/20/2023 | 13 | NOTICE of Appearance by Christopher Michael Anderson on behalf of Defendants ERIC HOLCOMB, TODD ROKITA. (Anderson, Christopher) (Entered: 02/20/2023) |
| 02/20/2023 | 14 | NOTICE of Appearance by Rebekah Durham on behalf of Defendants ERIC HOLCOMB, TODD ROKITA. (Durham, Rebekah) (Entered: 02/20/2023) |
| 02/20/2023 | 15 | Unopposed MOTION for Extension of Time to March 2, 2023 in which to 1 Complaint *Respond*, filed by Defendants ERIC HOLCOMB, TODD ROKITA. (Attachments: # 1 Text of Proposed Order)(Ridlen, Aaron) (Entered: 02/20/2023) |
| 02/21/2023 | 16 | ORDER - granting 15 Motion for Extension of Time. IT IS ORDERED that Defendants shall have up to and including March 2, 2023, to file their response to Plaintiff's Complaint. Signed by Magistrate Judge Mario Garcia on 2/21/23. (NAD) (Entered: 02/21/2023) |
| 03/02/2023 | 17 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , filed by Defendants ERIC HOLCOMB, TODD ROKITA. (Ridlen, Aaron) (Entered: 03/02/2023) |
| 03/02/2023 | 18 | BRIEF/MEMORANDUM in Support re 17 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , filed by Defendants ERIC HOLCOMB, TODD ROKITA. (Ridlen, Aaron) (Entered: 03/02/2023) |

| 03/14/2023 | 19 | Consent MOTION to Vacate 11 Scheduling Order , filed by Plaintiff THE SATANIC TEMPLE. (Mac Naughton, William) (Entered: 03/14/2023) |
|---|---|---|
| 03/17/2023 | 20 | ORDER - granting 19 Consent MOTION to Vacate Initial Pretrial Conference. The telephonic Initial Pretrial Conference set for March 22, 2023 is continued to May 2, 2023 at 10:00 a.m. (Est). The parties should be prepared to proceed with setting case management plan dates and deadlines at that time given the age of the case. In the meantime, nothing prevents the parties from informally agreeing to exchange information that might fall under Rule 26's initial disclosures. Signed by Magistrate Judge Mario Garcia on 3/17/23.(NAD) (Entered: 03/17/2023) |
| 03/23/2023 | 21 | AMENDED COMPLAINT against TODD ROKITA, RYAN MEARS, filed by THE SATANIC TEMPLE, INC. (Attachments: # 1 Exhibit A-The Satanic Abortion Ritual)(Mac Naughton, William) Modified on 3/24/2023 - Updated dkt. text (JSR). (Entered: 03/23/2023) |
| 03/24/2023 | 22 | NOTICE of Appearance by Aaron M. Ridlen on behalf of Defendant RYAN MEARS. (Ridlen, Aaron) (Entered: 03/24/2023) |
| 03/24/2023 | 23 | NOTICE of Appearance by Rebekah Durham on behalf of Defendant RYAN MEARS. (Durham, Rebekah) (Entered: 03/24/2023) |
| 03/24/2023 | 24 | NOTICE of Appearance by Christopher Michael Anderson on behalf of Defendant RYAN MEARS. (Anderson, Christopher) (Entered: 03/24/2023) |
| 03/24/2023 | 25 | NOTICE of Appearance by James A. Barta on behalf of Defendants RYAN MEARS, TODD ROKITA. (Barta, James) (Entered: 03/24/2023) |
| 03/24/2023 | 26 | NOTICE of Appearance by Melinda Rebecca Holmes on behalf of Defendants RYAN MEARS, TODD ROKITA. (Holmes, Melinda) (Entered: 03/24/2023) |
| 03/29/2023 | 27 | ORDER - Presently pending before the Court is a Motion to Dismiss filed by Defendants. [Filing No. 17 .] In response, Plaintiff filed an Amended Complaint, [Filing No. 21 ], as it was entitled to do pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Plaintiff's Amended Complaint now controls this litigation and supersedes the pleading at which Defendants' Motion to Dismiss is directed. The pending Motion to Dismiss, 17 , is DENIED AS MOOT. Defendants must answer or otherwise respond to Plaintiff's Amended Complaint as contemplated by the Federal Rules of Civil Procedure. (See Order.) Signed by Judge Jane Magnus-Stinson on 3/29/2023. (JSR) (Entered: 03/29/2023) |
| 03/29/2023 | 28 | NOTICE of Appearance by Thomas M. Fisher on behalf of Defendants RYAN MEARS, TODD ROKITA. (Fisher, Thomas) (Entered: 03/29/2023) |
| 04/04/2023 | 29 | WAIVER OF SERVICE Returned Executed, filed by RYAN MEARS. RYAN MEARS waiver sent on 3/23/2023. (Ridlen, Aaron) (Entered: 04/04/2023) |
| 05/01/2023 | 31 | CASE MANAGEMENT PLAN TENDERED, filed by Plaintiff THE SATANIC TEMPLE, INC. . (Mac Naughton, William) (Entered: 05/01/2023) |
| 05/02/2023 | 32 | MINUTE ORDER for proceedings held before Magistrate Judge Mario Garcia: Initial Pretrial Conference held on 5/2/2023. The Court will approve the Case Management Plan, by separate order, with changes discussed during conference. Case Management Plan to be modified so that initial disclosures in section III(B) are now due June 9, 2023. This matter is scheduled for a telephonic status conference on Thursday, August 24, 2023 at 11:00 a.m. (Eastern) to discuss case status. Signed by Magistrate Judge Mario Garcia. (NAD) (Entered: 05/03/2023) |
| 05/02/2023 | 33 | ORDER: CASE MANAGEMENT PLAN APPROVED AS AMENDED - Dispositive Motions due by 3/23/2024. Discovery due by 1/23/2024. Signed by Magistrate Judge Mario Garcia on 5/2/2023.(TPS) (Entered: 05/03/2023) |

| 05/17/2023 | 34 | First MOTION for Extension of Time to July 6, 2023 in which to 21 Amended Complaint , filed by Defendants RYAN MEARS, TODD ROKITA. (Attachments: # 1 Text of Proposed Order)(Ridlen, Aaron) (Entered: 05/17/2023) |
|---|---|---|
| 05/18/2023 | 35 | RESPONSE in Opposition re 34 First MOTION for Extension of Time to July 6, 2023 in which to 21 Amended Complaint , filed by Plaintiff THE SATANIC TEMPLE, INC.. (Attachments: # 1 Exhibit A-Request for Admissions, # 2 Exhibit B-Interrogatories, # 3 Exhibit C-Production of Documents)(Mac Naughton, William) (Entered: 05/18/2023) |
| 05/22/2023 | 36 | First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's First Amended Complaint*, filed by Defendants RYAN MEARS, TODD ROKITA. (Ridlen, Aaron) (Entered: 05/22/2023) |
| 05/22/2023 | 37 | BRIEF/MEMORANDUM in Support re 36 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's First Amended Complaint* , filed by Defendants RYAN MEARS, TODD ROKITA. (Attachments: # 1 Exhibit 1 - Combined Discovery Requests, # 2 Exhibit 2 - Satanic Temple Website)(Ridlen, Aaron) (Entered: 05/22/2023) |
| 05/24/2023 | 38 | MOTION for Protective Order , filed by Plaintiff THE SATANIC TEMPLE, INC.. (Attachments: # 1 Text of Proposed Order)(Mac Naughton, William) (Entered: 05/24/2023) |
| 05/25/2023 | 39 | UNIFORM STIPULATED PROTECTIVE ORDER - SEE ORDER. Signed by Magistrate Judge Mario Garcia on 5/25/23.(JRB) (Entered: 05/25/2023) |
| 05/25/2023 | 40 | ORDER denying as moot 34 Motion for Extension of Time to File Respond to Plaintiff's Amended Complaint from May 22, 2023 to July 6, 2023. However, on May 22, 2023, before the Court could rule on the Motion for Extension, Defendants filed a Motion to Dismiss the Amended Complaint 36 . Court will hold a telephonic status conference to discuss whether Defendants' Motion to Dismiss should be held in abeyance so that the parties may conduct expedited and narrowly tailored discovery on the issue of standing under Fed. R. Civ. P. 12(b)(1). The Court will issue a separate scheduling order. Signed by Magistrate Judge Mario Garcia on 5/25/2023. (JDC) (Entered: 05/25/2023) |
| 05/25/2023 | 41 | SCHEDULING ORDER - This matter is scheduled for a telephonic status conference on Wednesday, June 7, 2023 at 9:30 a.m. (Eastern) to discuss case status. Counsel shall attend the status conference by calling the designated telephone number, to be provided by the Court via email generated by the Court's ECF system. Signed by Magistrate Judge Mario Garcia on 5/25/2023.(JDC) (Entered: 05/25/2023) |
| 06/08/2023 | 43 | MINUTE ORDER for proceedings held before Magistrate Judge Mario Garcia: Status Conference held on 6/7/2023. Parties discussed the possibility of holding the pending Motion to Dismiss in abeyance, but neither side requested such relief. Plaintiff sought a 7-day extension to file its response to the Motion to Dismiss with no opposition by defendant. Plaintiff's response will be due June 20, 2023, and defendant's reply in support of the Motion to Dismiss due by July 5, 2023. Signed by Magistrate Judge Mario Garcia. (NAD) (Entered: 06/09/2023) |
| 06/20/2023 | 44 | RESPONSE in Opposition re 36 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's First Amended Complaint* , filed by Plaintiff THE SATANIC TEMPLE, INC.. (Attachments: # 1 Affidavit ERIN HELIAN, # 2 Affidavit DR. J.D.)(Mac Naughton, William) (Entered: 06/20/2023) |
| 06/20/2023 | 45 | RESPONSE in Opposition re 36 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's First Amended Complaint Mac Naughton Declaration w/Exs*, filed by Plaintiff THE SATANIC TEMPLE, INC.. (Attachments: # 1 Exhibit A-Rokita Brief in ID Supreme Court, # 2 Exhibit B-Rokita Brief in IN Ct Appl, # 3 Exhibit C-Prelimin Inj Order in Anonymous Plaintiff #1 et al v. The Individual Members of The Medical Licensing Board of |

| | | |
|---|---|---|
| | | Indiana, # 4 Exhibit D-Rokita Letter to Walgreens, # 5 Exhibit E-DOJ Opinion re Comstock Act, # 6 Exhibit F- Order in Dr. Caitlin Bernard et al v. Todd Rokita)(Mac Naughton, William) (Entered: 06/20/2023) |
| 06/20/2023 | 46 | SEALED *Declaration of Dr. J.D.*, re 44 Response in Opposition to Motion, filed by Plaintiff THE SATANIC TEMPLE, INC.. (Mac Naughton, William) (Entered: 06/20/2023) |
| 06/20/2023 | 47 | MOTION to Maintain Document Under Seal 46 SEALED Document (Case Participants - doc) , filed by Plaintiff THE SATANIC TEMPLE, INC.. (Attachments: # 1 LR 5.11(d) Statement, # 2 Text of Proposed Order)(Mac Naughton, William) (Entered: 06/20/2023) |
| 06/27/2023 | 48 | ORDER denying 47 MOTION to Maintain Document Under Seal - The denial is WITHOUT PREJUDICE for Plaintiff to resubmit a motion to seal that complies fully with S.D. Ind. L.R. 5-11 within 7 days of this Order. In the meantime, the Clerk is DIRECTED to maintain 46 under Seal until further order of this Court. Signed by Magistrate Judge Mario Garcia on 6/27/2023. (JRB) (Entered: 06/27/2023) |
| 06/29/2023 | 49 | Second MOTION to Maintain Document Under Seal 46 SEALED Document (Case Participants - doc) , filed by Plaintiff THE SATANIC TEMPLE, INC.. (Attachments: # 1 LR 5-11(d) Statement, # 2 Mac Naughton Declaration, # 3 Memorandum of Law, # 4 Redacted Declaration of Dr. J.D., # 5 Text of Proposed Order)(Mac Naughton, William) (Entered: 06/29/2023) |
| 07/05/2023 | 50 | Appendix of Exhibits in Support of Reply in Support of Motion re 36 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's First Amended Complaint* , filed by Defendants RYAN MEARS, TODD ROKITA. (Attachments: # 1 Exhibit A - Plaintiffs Response to Defendants First Set of Requests for Admission, # 2 Exhibit B - Plaintiffs Non-Confidential Response to Defendants First Set of Interrogatories to Plaintiff)(Ridlen, Aaron) (Entered: 07/05/2023) |
| 07/05/2023 | 51 | REPLY in Support of Motion re 36 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's First Amended Complaint* , filed by Defendants RYAN MEARS, TODD ROKITA. (Ridlen, Aaron) (Entered: 07/05/2023) |
| 07/11/2023 | 52 | ORDER granting 49 Second MOTION to Maintain Document Under Seal 46 SEALED Document. (SEE ORDER.) Signed by Magistrate Judge Mario Garcia on 7/11/2023. (TPS) Modified on 7/13/2023 - Updated dkt text (JSR). (Entered: 07/12/2023) |
| 07/26/2023 | 53 | ORDER - The Court ORDERS additional briefing from the parties as follows: Defendants shall have until August 8, 2023 to address the Supreme Court's recent standing guidance. Defendants' brief is limited to no more than 10 pages. No issues outside the scope of this Order may be raised, and any extraneous material may be struck. The Satanic Temple shall have until August 22, 2023 and no more than 10pages to respond. Defendants shall have until August 29, 2023 and no more than 5 pages to reply. Defendants' Motion to Dismiss, 36 , REMAINS PENDING. SEE ORDER. Signed by Judge Jane Magnus-Stinson on 7/26/2023.(JRB) (Entered: 07/26/2023) |
| 08/04/2023 | 54 | Witness List *Preliminary*, filed by Defendants RYAN MEARS, TODD ROKITA, Exhibit List *Preliminary*, filed by Defendants RYAN MEARS, TODD ROKITA. (Ridlen, Aaron) (Entered: 08/04/2023) |
| 08/08/2023 | 55 | Witness and Exhibit List *(Preliminary)*, filed by Plaintiff THE SATANIC TEMPLE, INC.. (Mac Naughton, William) Modified on 8/9/2023 - Updated dkt text (JSR). (Entered: 08/08/2023) |
| 08/08/2023 | 56 | BRIEF/MEMORANDUM in Support re 36 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's First Amended Complaint* , filed by Defendants RYAN MEARS, TODD ROKITA. (Ridlen, Aaron) (Entered: 08/08/2023) |

| 08/21/2023 | 57 | RESPONSE in Opposition re 36 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's First Amended Complaint* , filed by Plaintiff THE SATANIC TEMPLE, INC.. (Mac Naughton, William) (Entered: 08/21/2023) |
| 08/28/2023 | 59 | MINUTE ORDER for proceedings held before Magistrate Judge Mario Garcia: Status Conference held on 8/24/2023. This matter is scheduled for a telephonic status conference on Wednesday, November 29, 2023 at 11:30 a.m. (Eastern) to discuss case status. Signed by Magistrate Judge Mario Garcia. (NAD) (Entered: 08/29/2023) |
| 08/29/2023 | 60 | REPLY in Support of Motion re 36 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's First Amended Complaint Supplemental Briefing Reply Brief*, filed by Defendants RYAN MEARS, TODD ROKITA. (Ridlen, Aaron) (Entered: 08/29/2023) |
| 08/31/2023 | 61 | ***STRICKEN PER ORDER 66 *** RESPONSE in Opposition re 36 First MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Plaintiff's First Amended Complaint* , filed by Plaintiff THE SATANIC TEMPLE, INC.. (Mac Naughton, William) Modified on 10/25/2023 (JSR). (Entered: 08/31/2023) |
| 09/06/2023 | 62 | MOTION for Leave to File *Response*, filed by Defendants RYAN MEARS, TODD ROKITA. (Ridlen, Aaron) (Entered: 09/06/2023) |
| 09/08/2023 | 63 | MOTION to Withdraw Attorney Appearance *of Thomas M. Fisher*, filed by Defendants RYAN MEARS, TODD ROKITA. (Attachments: # 1 Text of Proposed Order Granting Motion to Withdraw)(Fisher, Thomas) (Entered: 09/08/2023) |
| 09/11/2023 | 64 | ORDER granting 63 Motion to Withdraw Attorney Appearance. Attorney Thomas M. Fisher withdrawn. Signed by Magistrate Judge Mario Garcia on 9/11/2023. (SWM) (Entered: 09/11/2023) |
| 09/29/2023 | 65 | NOTICE of Substitution of Appearance by Blake Thomas Erickson replacing *Christopher M. Anderson* on behalf of All Defendants (Attachments: # 1 Text of Proposed Order) (Erickson, Blake) (Entered: 09/29/2023) |
| 10/25/2023 | 66 | ORDER - Based on the foregoing, the Court: GRANTS Defendants' Motion to Dismiss the First Amended Complaint, 36 ; DISMISSES the Satanic Temple's First Amended Complaint for lack of jurisdiction without leave to amend, 21 ; STRIKES the Satanic Temple's letter, 61 ; and DENIES Defendants' Motion for Leave to Respond to the Satanic Temple's letter as moot, 62 . Final judgment will enter accordingly. (See Order.) Signed by Judge Jane Magnus-Stinson on 10/25/2023. (JSR) (Entered: 10/25/2023) |
| 10/25/2023 | 67 | FINAL JUDGMENT PURSUANT TO FED. R. CIV. PRO. 58 - Pursuant to the Order granting Defendants' Motion to Dismiss the First Amended Complaint on October 25, 2023, the Court now enters FINAL JUDGMENT in favor of Defendants and against Plaintiff such that Plaintiff's claims against Defendants are DISMISSED for lack of jurisdiction without leave to amend, and Plaintiff shall take nothing by way of its First Amended Complaint. Signed by Judge Jane Magnus-Stinson on 10/25/2023. (JSR) (Entered: 10/25/2023) |
| 11/22/2023 | 68 | NOTICE OF APPEAL as to 66 Order on Motion to Dismiss for Failure to State a ClaimOrder on Motion for Leave to File, 67 Closed Judgment, filed by Plaintiff THE SATANIC TEMPLE, INC.. (Filing fee $505, receipt number AINSDC-7913304) (Mac Naughton, William) (Entered: 11/22/2023) |
| 11/22/2023 | 69 | DOCKETING STATEMENT by THE SATANIC TEMPLE, INC. re 68 Notice of Appeal (Mac Naughton, William) (Entered: 11/22/2023) |

**Case #: 1:22-cv-01859-JMS-MG**